IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

APPLERA CORPORATION, MDS INC.,
and APPLIED BIOSYSTEMS/MDS SCIEX
INSTRUMENTS,

       Plaintiffs/Counterclaim-Defendants,

vs

THERMO ELECTRON CORPORATION,

       Defendant/Counterclaim-Plaintiff

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No: 04-1230

**JURY TRIAL DEMANDED**

## THERMO ELECTRON CORPORATION'S MOTION AND OPENING ARGUMENT FOR LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 15 and District of Delaware Local Rule 15 1, as well as the Court's May 9, 2005 Scheduling Order, Defendant/Counterclaim-Plaintiff Thermo Electron Corporation ("Thermo") hereby moves for an order granting leave to file an Amended Answer and Counterclaims  A copy of the proposed amendment and a copy noting the proposed changes in redline are attached hereto as Exhibit A and Exhibit B, respectively

Thermo seeks to amend its Answer and Counterclaims primarily to add the affirmative defense that Plaintiffs' '736 patent is unenforceable under the equitable doctrine of patent misuse  AB/Sciex opposes the motion on the ground that the defense is allegedly not "legally cognizable "  For reasons explained below, the Court should allow the amendment.

### STATEMENT OF FACTS

1    On September 7, 2004, Applera Corporation, MDS Inc. and Applied Biosystems/MDS Sciex Instruments (collectively, "AB/Sciex") sued Thermo alleging infringement of United States Patent No. 4,963,736 (the "'736 patent")  (D I 1 )

1

2.      In lieu of answering the Complaint, Thermo filed a Motion for a More Definite Statement on October 25, 2004     (D.I. 7.)  In its Motion, Thermo argued that Applera's Complaint was too vague and did not sufficiently identify which Thermo products allegedly infringed the '736 patent.  (D.I. 8.)  On February 25, 2005, the Court denied Thermo's motion (D.I. 16.)

3.      On March 28, 2005, Thermo filed an Answer and Counterclaims and raised six affirmative defenses, including noninfringement and invalidity.  (D.I. 17.)  Thermo also asserted counterclaims seeking a determination that the '736 patent is invalid and that Thermo does not infringe the '736 patent.  (D.I. 17.)

4.      On February 23, 2005, Thermo Finnigan LLC, a subsidiary of Thermo Electron Corporation, sued Applera Corporation, MDS Inc. and Applied Biosystems/MDS Sciex Instruments alleging infringement of United States Patent No. 6,528,784 (the "'784 patent"). (Case No. 05-CV-110-GMS, D.I. 1.)

5.      The Court has consolidated the actions on the '736 patent and the '784 patent. The present motion and proposed amendment do not affect the claims brought by Thermo Finnigan LLC with respect to its '784 patent.    The only issues now presented concern AB/Sciex's '736 patent and the pleadings related to that patent.

6.      On May 9, 2005, the Court entered a Scheduling Order in the consolidated actions.   (D.I. 21.)  Pursuant to the Scheduling Order, the deadline to move to amend the pleadings is October 7, 2005.  Fact and expert discovery remain open until March 17, 2006 and May 22, 2006, respectively.  To date, the parties have exchanged documents and interrogatory answers, but there have been no depositions noticed or taken.

2

7.    By the present timely motion, Thermo seeks to amend the Answer and Counterclaims to add an affirmative defense for patent misuse, which is related to the defenses of res judicata, claim preclusion, issue preclusion, collateral estoppel and judicial estoppel already asserted by Thermo.    (D.I. 17, ¶ 25.)    Thermo also seeks to amend the Answer and Counterclaims to add related defenses and claims, specifically: (a) the additional affirmative defenses of equitable estoppel and unclean hands, and (b) an additional counterclaim seeking a declaratory judgment that the '736 patent is unenforceable.

8.    Thermo has provided a copy of the proposed amendment to AB/Sciex and has asked that it allow the amendment.  Counsel for AB/Sciex has stated that AB/Sciex opposes the amendment because it does not state a "legally cognizable defense."

## BACKGROUND LAW

9.    Pursuant to Fed. R. Civ. P. 15(a), leave to amend pleadings "shall be freely given when justice so requires."  The Third Circuit has explained that absent a clear reason such as delay, bad faith, or prejudice, it is an abuse of discretion for a district court to deny leave to amend.  *See Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

10.    The filing of a motion to amend on or before the court-ordered deadline (which is the case here) creates a "presumption of timeliness."  *Inline Corp. v. Tricon Restaurants Int'l*, No. Civ. A. 3:00-CV-0990, 2002 WL 1331885, at *1 (N.D. Tex. June 14, 2002) (citation omitted).

11.    Leave to amend may be denied, however, if an amendment would be futile, meaning the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted.  *See Alvin*, 227 F.3d at 121.

3

12. Patent misuse is an equitable defense to patent infringement. *U.S. Philips Corp. v. Int'l Trade Comm'n*, ___ F.3d ___, No. 04-1361, 2005 WL 2293081, at *3 (Fed. Cir. Sept. 21, 2005). The "key inquiry is whether, by imposing conditions that derive their force from the patent, the patentee has impermissibly broadened the scope of the patent grant with anticompetitive effect." *Id.* (citation omitted).

13. A defendant properly pleads patent misuse, for example, by alleging that the suit is brought in bad faith in an attempt to gain anticompetitive strength. *See McKesson Info. Solutions, LLC v. The Trizetto Group, Inc.*, No. Civ. 04-1258-SLR, 2005 WL 914776, at *2 (D. Del. Apr. 20, 2005) (denying motion to strike); *Cummins-Allison Corp. v. Glory Ltd.*, No. 02 C 7008, 2003 WL 22169756, at *1-2 (N.D. Ill. Sept. 18, 2003) (denying motion to dismiss).

## SUMMARY OF PROPOSED AMENDMENT

14. As noted, the proposed amendment is attached as Exhibit A, with a redline attached as Exhibit B.

15. The crux of Thermo's new claim is that AB/Sciex has previously—both in an earlier litigation against its competitor Micromass and before the U.S. Patent Office—made specific and unambiguous statements as to what it considers the proper scope of its '736 patent. These statements were not idly made, but rather were made by AB/Sciex to overcome prior art and to bring (and ultimately win) an infringement claim against Micromass. Both before the Patent Office and this Court, AB/Sciex prevailed based upon its statements, as reflected in actions and rulings of the Patent Office and this Court.

16. However, in its suit against Thermo, AB/Sciex is now attempting to broaden the scope of its patent by evading its prior statements and the Court's rulings. AB/Sciex now contends that machines with the features that it previously <u>disclaimed</u> are nevertheless covered

4

by the scope of the patent. The effect is to communicate to Thermo, and the industry as a whole, that essentially any mass spectrometer is at risk of being sued for infringement, even those with designs that AB/Sciex has previously and specifically stated fall outside the patent scope. Put another way, AB/Sciex is misusing its patent by saying in one forum that the patent does <u>not</u> cover a certain design, but then saying in another forum that it does. Thermo seeks to amend its Answer and Counterclaims to seek redress for this patent misuse.

17.    Thermo alleges that AB/Sciex has engaged in patent misuse by "pervasively tak[ing] inconsistent positions—including with this Court and the U.S. Patent Office—with respect to the scope of the patent right." (Proposed Amendment ¶ 28.) Thermo alleges that AB/Sciex has "used the '736 patent to attempt to impermissibly expand the scope of the patent right, with anticompetitive effects." (*Id.* ¶ 27.) Additionally, Thermo has alleged bad faith. (*Id.* ¶ 29.)

18.    Thermo further identifies at least <u>nine</u> prior statements by AB/Sciex, plus one prior ruling by Judge McKelvie in the earlier *Micromass* litigation, that are incompatible with the claims that AB/Sciex has brought against Thermo.

19.    Specifically, Thermo alleges: (1) AB/Sciex previously conceded (and Judge McKelvie previously ruled) that the '736 patent does not cover devices called "ion traps," yet AB/Sciex has now accused Thermo's ion trap devices of infringing, (2) AB/Sciex previously conceded (as the patent claims plainly state) that the '736 patent does <u>not</u> cover mass analyzers that lack a DC voltage between their "rods," yet has now accused Thermo devices that lack exactly that same feature, and (3) AB/Sciex previously conceded that the '736 patent does not cover "low pressure" devices, yet has now accused Thermo devices that have a pressure <u>below</u>

5

the pressure that AB/Sciex previously declared to constitute "low pressure." (Proposed Amendment ¶¶ 31-53.)

20.    As just one example of the above, AB/Sciex stated to the Patent Office, in order to distinguish the Vedel prior art and argue in favor of patentability: "Vedel differs from the invention in that it relates to an ion trap. The ion trap, as described above, operates on a fundamentally different principle than the mass spectrometer system according to the invention." (Request for Reexamination at 9.) Notwithstanding this representation that ion traps are fundamentally different, AB/Sciex now asserts that the Thermo ion trap is part of the patented invention and infringes its patent.

21.    There is simply no way to square the present litigation with AB/Sciex's binding representations (and the Court's rulings based upon them) as to the scope of its '736 patent.

22.    Consequently, Thermo alleges: "AB/Sciex's positions have created significant uncertainty as to what AB/Sciex considers the '736 patent to mean. AB/Sciex's purpose and effect is to stifle competition in the mass spectrometry market by creating the apprehension among competitors in this field (including without limitation Thermo) that any mass spectrometer is at risk of being sued for infringement, regardless of its operating features and regardless of prior statements by AB/Sciex and/or its representatives that machines with those features fall outside the patent scope. This apprehension has had and continues to have anticompetitive effect by preventing competitors from designing and selling mass spectrometers in an open and fair market place." (Proposed Amendment ¶ 30.)

23.    Relatedly, the proposed amendment seeks to add the additional affirmative defenses of equitable estoppel and unclean hands (Proposed Amendment ¶ 25) as well as a

6

counterclaim seeking a declaratory judgment that the '736 patent is unenforceable (Proposed Amendment, Counterclaim III)

## ARGUMENT:  LEAVE TO AMEND SHOULD BE GRANTED.

24      This motion is timely made.  There is no delay, let alone bad faith or prejudicial delay.  AB/Sciex appears to agree.

25.     AB/Sciex's counsel has suggested that AB/Sciex opposes the motion on the sole ground that the allegations do not create a "legally cognizable defense."  Thus, AB/Sciex opposes on the ground of futility, i.e., that the Proposed Amendment does not plead a valid defense.  AB/Sciex is incorrect.

26      As described above, the Proposed Amendment not only properly pleads all of the legal requirements for patent misuse, but also provides substantial factual support for those conclusions.  Pleadings substantially <u>less</u> detailed than Thermo's have been held to be pleaded with enough specificity to defeat a motion to dismiss or strike.  *See Cummins-Allison Corp*, 2003 WL 22169756, at *1-2 (defendant alleged conclusorily that plaintiff brought the suit knowing there was no infringement in an attempt to gain anticompetitive strength); *McKesson Info. Solutions*, 2005 WL 914776, at *2 (defendant alleged merely, "Plaintiff has committed patent misuse by attempting to enforce a patent it should reasonably know is invalid and not infringed.")

27      The issue before the Court is merely whether the pleading states a defense.  The cited authority confirms that it does.  Accordingly, the Court should permit Thermo to amend its pleading.

7

## CONCLUSION

For the foregoing reasons, Defendant/Counterclaim-Plaintiff Thermo Electron Corporation respectfully requests that this Court enter an order granting leave to file the Amended Answer and Counterclaims attached hereto as Exhibit A.

*Kelly E. Farnan*

Frederick L. Cottrell, III (#2555)
Cottrell@RLF.com
Kelly E. Farnan (#4395)
Farnan@RLF.com
Richards, Layton & Finger
One Rodney Square
920 N. King Street
P.O. Box 551
Wilmington, DE 19899
Telephone: (302) 651-7700
Attorneys for Thermo Election Corp.

OF COUNSEL:
William F. Lee
Wayne L. Stoner
Stephen M. Muller
Lauren B. Fletcher
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000

October 7, 2005

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

APPLERA CORPORATION, MDS INC., )
and APPLIED BIOSYSTEMS/MDS SCIEX )
INSTRUMENTS, )
            Plaintiffs, )
                        )         Civil Action No: 04-1230
vs. )
                        )
THERMO ELECTRON CORPORATION, )    **JURY TRIAL DEMANDED**
           Defendant. )

## AMENDED ANSWER AND COUNTERCLAIMS
## OF THERMO ELECTRON CORPORATION

Thermo Electron Corporation ("Thermo") answers the allegations of the Complaint as follows:

### THE PARTIES

1.     Thermo is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the Complaint.

2.     Thermo is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2 of the Complaint.

3.     Thermo is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 of the Complaint

4     Thermo admits the allegations in Paragraph 4 of the Complaint.

5.     Thermo admits the allegations in Paragraph 5 of the Complaint.

1

## JURISDICTION

6      No answer is required to the allegations contained in Paragraph 6 of the Complaint, which merely state conclusions of law.

## BACKGROUND

7.     Thermo admits that United States Patent No. 4,963,736 ("the '736 Patent"), entitled "Mass Spectrometer and Method and Improved Ion Transmission," was issued by the United States Patent and Trademark Office ("USPTO") on October 16, 1990 to Donald J. Douglas and John B. French. Thermo further admits that a copy of the '736 patent is attached to the Complaint as Exhibit A. Thermo denies that the '736 patent was duly and legally issued.

8.     Thermo admits that on May 25, 1999, the USPTO issued Re-Examination Certificate B1 4,963,736, which Certificate purports to confirm the validity of all of the claims of the '736 patent. Thermo denies that the claims of the '736 patent are valid. Thermo admits that a copy of the Re-Examination Certificate B1 4,963,736 is attached to the Complaint as Exhibit B.

9.     Thermo is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 of the Complaint.

10.    Thermo admits the allegations in Paragraph 10 of the Complaint.

11.    Thermo admits the allegations in Paragraph 11 of the Complaint.

12.    Thermo is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 of the Complaint.

13.    Thermo is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 of the Complaint.

2

14.    Thermo is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of the Complaint

## CLAIM FOR PATENT INFRINGEMENT

15.    Thermo is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint.

16.    Thermo is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint.

17.    Thermo admits the allegations in Paragraph 17 of the Complaint

18.    Thermo denies the allegations in Paragraph 18 of the Complaint.

19.    Thermo denies the allegations in Paragraph 19 of the Complaint

20.    Thermo denies the allegations in Paragraph 20 of the Complaint.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

21.    Applera Corporation, MDS Inc., and Applied Biosystems/MDS Sciex Instruments ("Plaintiffs") are not entitled to any relief against Thermo because Thermo is not infringing and has not infringed any of the claims of the '736 patent

## SECOND AFFIRMATIVE DEFENSE

22.    One or more of the claims of the '736 patent are invalid under one or more sections of Title 35 of the U S. Code, including without limitation, 35 U.S.C §§ 102, 103 and 112

## THIRD AFFIRMATIVE DEFENSE

23.    The '736 patent is unenforceable against Thermo because of waiver, estoppel, laches, or other applicable equitable doctrines

3

## FOURTH AFFIRMATIVE DEFENSE

24.     Thermo, pursuant to 28 U.S.C. § 1498(a), is exempt from liability because and to the extent that an alleged invention described in and allegedly covered by the '736 patent is used or manufactured by or for the United States.

## FIFTH AFFIRMATIVE DEFENSE

25.     Plaintiffs' claims are barred in whole or part by the doctrines of res judicata, claim preclusion, issue preclusion, collateral estoppel, equitable estoppel, unclean hands, and/or judicial estoppel.

## SIXTH AFFIRMATIVE DEFENSE

26.     Plaintiffs are not entitled to recovery for any infringement committed more than six years prior to the filing of the Complaint in this Action, pursuant to 35 U.S.C. § 286.

## SEVENTH AFFIRMATIVE DEFENSE

27.     As detailed in the paragraphs that follow, Applera Corp., MDS Inc., and Applied Biosystems/MDS Sciex Instruments (collectively "AB/Sciex") have used the '736 patent to attempt to impermissibly expand the scope of the patent right, with anticompetitive effects. As detailed in the paragraphs that follow, AB/Sciex is using the patent to try to obtain market benefit beyond that which inheres in the statutory patent right. As detailed in the paragraphs that follow, AB/Sciex is using the patent's leverage to attempt to extend the monopoly of its patent to derive a benefit not attributable to the use of the patent's teachings, including without limitation obtaining damages for sales of, and/or obtaining a license and royalty on, products that do not use the teaching of the patent. AB/Sciex's conduct has no purpose except unjustly to enrich AB/Sciex and to stifle competition including by threatening competing products premised on a baseless legal claim. As a result, the '736 patent is unenforceable.

4

28      As detailed below, AB/Sciex and/or its representatives have pervasively taken inconsistent positions—including with this Court and the U.S. Patent Office—with respect to the scope of the patent right.  AB/Sciex's present position contradicts positions taken in this Court and in the U.S. Patent Office.  The purpose and effect of AB/Sciex's present positions is to expand the scope of the patent far beyond what AB/Sciex previously represented (and the Court held), without regard to the '736 patent's plain meaning or its alleged inventive features.  As a result, AB/Sciex is attempting to obtain damages for sales of, and/or obtain a license and royalty on, products that do not use the teaching of the patent.

29      As detailed below, AB/Sciex has accused Thermo products of infringement in a bad faith attempt to expand the patent beyond its lawful scope.

30      Additionally, AB/Sciex's positions have created significant uncertainty as to what AB/Sciex considers the '736 patent to mean.  AB/Sciex's purpose and effect is to stifle competition in the mass spectrometry market by creating the apprehension among competitors in this field (including without limitation Thermo) that any mass spectrometer is at risk of being sued for infringement, regardless of its operating features and regardless of prior statements by AB/Sciex and/or its representatives that machines with those features fall outside the patent scope.  This apprehension has had and continues to have anticompetitive effect by preventing competitors from designing and selling mass spectrometers in an open and fair market place.

31.      AB/Sciex has previously represented to this Court that "The inventors disclosed all prior art that they considered relevant to their invention . . . . [R]eferences relating to 'ion traps' . . . were not relevant."

5

32.     AB/Sciex has previously represented to this Court that, "An 'ion trap' is a device that consists of a chamber that is capable of storing ions for a relatively long period of time before ejecting the ions out of the device."

33.     The named inventor of the '736 patent (Dr. Douglas) testified under oath that "there's no ion storage in the '736 patent."

34.     Dr. Douglas testified under oath that an ion trap is "a very different device."

35.     The Court ruled in prior litigation that "AB/Sciex should be estopped from claiming that the claims of the '736 patent cover ion traps under the doctrine of equivalents . . . . [A] competitor would reasonably conclude that ion traps would not infringe the claimed mass spectrometer system."

36.     Repeatedly in reexamination, AB/Sciex represented to the Patent Office that the '736 patent was not invalidated by prior art because that prior art related to ion traps.

37.     For example, AB/Sciex repeatedly represented to the Patent Office that prior art ion traps "operate[] on a fundamentally different principle than the mass spectrometer system according to the invention."

38.     Nevertheless, AB/Sciex has now accused Thermo's LTQ ion trap of infringing the '736 patent.

39.     The independent claims of the '736 patent require that a rod set in the mass analyzer include a "means for applying both AC and DC voltages" (Claim 1(f)) and "placing AC and DC voltages between the rod means" (Claim 14(d)) (emphasis added).

40.     During re-examination of the '736 patent, AB/Sciex and/or its representatives and/or the patent applicants specifically distinguished a prior art French reference on a number of

6

grounds including that "the French application receives <u>an AC only</u> voltage    " (emphasis added).

41.    No version of any LTQ ion trap ever manufactured, sold, or offered for sale by Thermo has any DC voltage applied between the "rods" in its mass analyzer.

42.    Every version of every LTQ ion trap ever manufactured, sold, or offered for sale by Thermo receives an AC only voltage between the "rods" in its mass analyzer.

43.    Nevertheless, AB/Sciex has now accused Thermo's LTQ ion trap of infringing the '736 patent.

44.    The independent claims of the '736 claims require that the PxL (i.e., pressure times length) ratio in a "first chamber" equal or exceed $2.25 \times 10^{-2}$ torr cm.

45.    Prior art experiments by Dr. Smith showed use of a PxL value in a first chamber of $1.76 \times 10^{-2}$ torr cm.

46.    The specification of the '736 patent refers to this as "[t]he traditional use of low pressure    ."

47.    AB/Sciex and/or its representatives have stated that "the '736 patent was not claiming the range of PL values disclosed by Smith."

48.    Before the '736 patent issued, Dr. Douglas performed at least one so-called "low pressure" experiment.

49.    Neither Dr. Douglas nor anyone else disclosed this experiment to the Patent Office during prosecution of the '736 patent.

50.    AB/Sciex and/or its representatives have stated that "Dr. Douglas had no reason to think that the experiment was material."

7

51.    AB/Sciex's allegations in this lawsuit are predicated on the Q00 chamber in Thermo's TSQ Quantum mass analyzer corresponding to the "first chamber" claimed by the '736 patent.

52    Every version of every TSQ Quantum being manufactured, sold, or offered for sale by Thermo has a PxL ratio in its Q00 chamber that is substantially below the so-called "low pressure" experiments of Dr. Douglas and Dr. Smith.

53.    Nevertheless, AB/Sciex has now accused Thermo's TSQ Quantum of infringing the '736 patent.

## COUNTERCLAIMS

Counterclaim plaintiff Thermo Electron Corp. ("Thermo"), for its counterclaims against Applera Corporation ("Applera"), MDS Inc. ("MDS"), and Applied Biosystems/MDS Sciex Instruments ("Applied Biosystems/MDS Sciex") (collectively "counterclaim defendants"), alleges as follows:

## PARTIES

1    Thermo Electron is a Delaware corporation having a place of business at 81 Wyman Street, Waltham, MA 02454.

2.    On information and belief, Applera is a Delaware corporation having a principal place of business at 301 Merritt 7, Norwalk, CT 06851.

3    On information and belief, MDS Inc. is a Canadian corporation having its principal place of business at 100 International Boulevard, Toronto, Ontario, Canada MNW 6J6.

4    On information and belief, Applera, through its subsidiary Applied Biosystems (Canada) Limited, and MDS, through its MDS Sciex Division, are general partners of Applied Biosystems/MDS Sciex Instruments.

8

5.     On information and belief, Applied Biosystems/MDS Sciex Instruments is a Canadian partnership formed under the laws of the Province of Ontario, Canada and having a place of business at 71 Four Valley Drive, Ontario, Canada L4K 4V8.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and 2201.

7.     The counterclaim defendants are subject to personal jurisdiction in this District.

8.     Venue for this action is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## FACTS

9.     Upon information and belief, MDS claims to be the owner of United States Patent No. 4,963,736 ("the '736 patent").

10.     Upon information and belief, Applera and Applied Biosystems/MDS Sciex Instruments claim to be co-exclusive licensees of the '736 patent, and Applera claims to be, through its Applied Biosystems Group, the exclusive worldwide distributor of products manufactured by MDS that embody the invention of the '736 patent.

11.     The counterclaim defendants have accused Thermo of infringement of the '736 patent.

12.     The counterclaim defendants' accusations give rise to a case of actual controversy within the jurisdiction of this Court, pursuant to 28 U.S.C. § 2201 and 2202.

## COUNT ONE
(Non-infringement of the '736 Patent)

13.     Thermo repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

9

14    Thermo is not infringing and has not infringed, directly, by inducement or contributorily, on any claim of the '736 patent

15    To resolve the legal and factual questions raised by the counterclaim defendants and to afford relief from the uncertainty and controversy which the counterclaim defendants' accusations have precipitated, Thermo is entitled to a declaratory judgment that it does not infringe on any claim of the '736 patent

### COUNT TWO
(Invalidity of the '736 patent)

16    Thermo repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein

17    One or more claims of the '736 patent are invalid under one or more sections of Title 35 of the United States Code, including without limitation, 35 U.S.C. §§ 102, 103, and 112

18    To resolve the legal and factual questions raised by the counterclaim defendants and to afford relief from the uncertainty and controversy which the counterclaim defendants' accusations have precipitated, Thermo is entitled to a declaratory judgment that one or more claims of the '736 patent are invalid

### COUNT THREE
(Unenforceability of the '736 patent)

19    Thermo repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein

20    The '736 patent is unenforceable

21    To resolve legal and factual questions raised by the counterclaim defendants and to afford relief from the uncertainty and controversy which the counterclaim defendants'

10

accusations have precipitated, Thermo is entitled to a declaratory judgment that the '736 patent is unenforceable

## **PRAYER FOR RELIEF**

WHEREFORE, Thermo Electron Corp ("Thermo") requests entry of judgment in its favor and against Applera Corp ("Applera"), MDS Inc ("MDS"), Applied Biosystems/MDS Sciex Instruments ("Applied Biosystems/MDS Sciex") as follows:

A     Adjudge that Thermo has not infringed the '736 patent and/or that the '736 patent is invalid and/or unenforceable, and enter a declaratory judgment to that effect;

B     Dismiss the Complaint of Applera, MDS, and Applied Biosystems/MDS Sciex with prejudice, denying them all relief;

C     Enter an Order finding that this is an exceptional case and award Thermo its reasonable attorneys' fees pursuant to 35 U S C. § 285; and

D     Award Thermo such other relief, including costs, as the Court may deem appropriate and just under the circumstances

11

## DEMAND FOR JURY TRIAL

Defendant Thermo Electron Corporation demands a trial by jury on all issues so triable

*Kelly E. Farnan*

Frederick L. Cottrell, III  (#2555)
(Cottrell@RLF.com)
Kelly E. Farnan  (#4395)
(Farnan@RLF.com)
 Richard, Layton & Finger
One Rodney Square
920 N. King Street
P.O. Box 551
Wilmington, DE  19899
(302) 651-7700
Attorneys for Thermo Electron Corporation

OF COUNSEL:

William F. Lee
Wayne L. Stoner
Stephen M. Muller
Michael R. Dube
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Dated:  October 7, 2005

12

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| APPLERA CORPORATION, MDS INC., and APPLIED BIOSYSTEMS/MDS SCIEX INSTRUMENTS,<br><br>          Plaintiffs,<br><br>vs.<br><br>THERMO ELECTRON CORPORATION,<br>          Defendant. | ) ) ) ) ) ) ) ) ) ) ) | Civil Action No: 04-1230<br><br>**JURY TRIAL DEMANDED** |

## <u>AMENDED ANSWER AND COUNTERCLAIMS</u> <u>OF THERMO ELECTRON CORPORATION</u>

Thermo Electron Corporation ("Thermo") answers the allegations of the Complaint as follows:

### <u>THE PARTIES</u>

1.    Thermo is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the Complaint.

2.    Thermo is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2 of the Complaint.

3.    Thermo is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 of the Complaint.

4.    Thermo admits the allegations in Paragraph 4 of the Complaint.

5.    Thermo admits the allegations in Paragraph 5 of the Complaint.

1

## JURISDICTION

6    No answer is required to the allegations contained in Paragraph 6 of the Complaint, which merely state conclusions of law

## BACKGROUND

7    Thermo admits that United States Patent No. 4,963,736 ("the '736 Patent"), entitled "Mass Spectrometer and Method and Improved Ion Transmission," was issued by the United States Patent and Trademark Office ("USPTO") on October 16, 1990 to Donald J Douglas and John B French  Thermo further admits that a copy of the '736 patent is attached to the Complaint as Exhibit A  Thermo denies that the '736 patent was duly and legally issued

8    Thermo admits that on May 25, 1999, the USPTO issued Re-Examination Certificate B1 4,963,736, which Certificate purports to confirm the validity of all of the claims of the '736 patent.  Thermo denies that the claims of the '736 patent are valid.  Thermo admits that a copy of the Re-Examination Certificate B1 4,963,736 is attached to the Complaint as Exhibit B

9    Thermo is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 of the Complaint

10    Thermo admits the allegations in Paragraph 10 of the Complaint

11    Thermo admits the allegations in Paragraph 11 of the Complaint

12    Thermo is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 of the Complaint

13    Thermo is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 of the Complaint

2

14      Thermo is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of the Complaint.

## CLAIM FOR PATENT INFRINGEMENT

15      Thermo is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint

16      Thermo is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint.

17.     Thermo admits the allegations in Paragraph 17 of the Complaint.

18.     Thermo denies the allegations in Paragraph 18 of the Complaint.

19.     Thermo denies the allegations in Paragraph 19 of the Complaint

20.     Thermo denies the allegations in Paragraph 20 of the Complaint

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

21.     Applera Corporation, MDS Inc , and Applied Biosystems/MDS Sciex Instruments ("Plaintiffs") are not entitled to any relief against Thermo because Thermo is not infringing and has not infringed any of the claims of the '736 patent.

### SECOND AFFIRMATIVE DEFENSE

22.     One or more of the claims of the '736 patent are invalid under one or more sections of Title 35 of the U S. Code, including without limitation, 35 U S C. §§ 102, 103 and 112

### THIRD AFFIRMATIVE DEFENSE

23      The '736 patent is unenforceable against Thermo because of waiver, estoppel, laches, or other applicable equitable doctrines

3

## FOURTH AFFIRMATIVE DEFENSE

24      Thermo, pursuant to 28 U.S.C. § 1498(a), is exempt from liability because and to the extent that an alleged invention described in and allegedly covered by the '736 patent is used or manufactured by or for the United States

## FIFTH AFFIRMATIVE DEFENSE

25      Plaintiffs' claims are barred in whole or part by the doctrines of res judicata, claim preclusion, issue preclusion, collateral estoppel, equitable estoppel, unclean hands, and/or judicial estoppel

## SIXTH AFFIRMATIVE DEFENSE

26      Plaintiffs are not entitled to recovery for any infringement committed more than six years prior to the filing of the Complaint in this Action, pursuant to 35 U.S.C. § 286

## SEVENTH AFFIRMATIVE DEFENSE

27.     As detailed in the paragraphs that follow, Applera Corp., MDS Inc., and Applied Biosystems/MDS Sciex Instruments (collectively "AB/Sciex") have used the '736 patent to attempt to impermissibly expand the scope of the patent right, with anticompetitive effects. As detailed in the paragraphs that follow, AB/Sciex is using the patent to try to obtain market benefit beyond that which inheres in the statutory patent right. As detailed in the paragraphs that follow, AB/Sciex is using the patent's leverage to attempt to extend the monopoly of its patent to derive a benefit not attributable to the use of the patent's teachings, including without limitation obtaining damages for sales of, and/or obtaining a license and royalty on, products that do not use the teaching of the patent. AB/Sciex's conduct has no purpose except unjustly to enrich AB/Sciex and to stifle competition including by threatening competing products premised on a baseless legal claim. As a result, the '736 patent is unenforceable.

4

28.     As detailed below, AB/Sciex and/or its representatives have pervasively taken inconsistent positions—including with this Court and the U.S. Patent Office—with respect to the scope of the patent right. AB/Sciex's present position contradicts positions taken in this Court and in the U.S. Patent Office. The purpose and effect of AB/Sciex's present positions is to expand the scope of the patent far beyond what AB/Sciex previously represented (and the Court held), without regard to the '736 patent's plain meaning or its alleged inventive features. As a result, AB/Sciex is attempting to obtain damages for sales of, and/or obtain a license and royalty on, products that do not use the teaching of the patent.

29.     As detailed below, AB/Sciex has accused Thermo products of infringement in a bad faith attempt to expand the patent beyond its lawful scope.

30.     Additionally, AB/Sciex's positions have created significant uncertainty as to what AB/Sciex considers the '736 patent to mean. AB/Sciex's purpose and effect is to stifle competition in the mass spectrometry market by creating the apprehension among competitors in this field (including without limitation Thermo) that any mass spectrometer is at risk of being sued for infringement, regardless of its operating features and regardless of prior statements by AB/Sciex and/or its representatives that machines with those features fall outside the patent scope. This apprehension has had and continues to have anticompetitive effect by preventing competitors from designing and selling mass spectrometers in an open and fair market place.

31.     AB/Sciex has previously represented to this Court that "The inventors disclosed all prior art that they considered relevant to their invention. . . . . . [R]eferences relating to 'ion traps' . . . were not relevant."

5

32.    AB/Sciex has previously represented to this Court that, "An 'ion trap' is a device that consists of a chamber that is capable of storing ions for a relatively long period of time before ejecting the ions out of the device."

33.    The named inventor of the '736 patent (Dr. Douglas) testified under oath that "there's no ion storage in the '736 patent."

34.    Dr. Douglas testified under oath that an ion trap is "a very different device."

35.    The Court ruled in prior litigation that "AB/Sciex should be estopped from claiming that the claims of the '736 patent cover ion traps under the doctrine of equivalents. ..... [A] competitor would reasonably conclude that ion traps would not infringe the claimed mass spectrometer system."

36.    Repeatedly in reexamination, AB/Sciex represented to the Patent Office that the '736 patent was not invalidated by prior art because that prior art related to ion traps.

37.    For example, AB/Sciex repeatedly represented to the Patent Office that prior art ion traps "operate[] on a fundamentally different principle than the mass spectrometer system according to the invention."

38.    Nevertheless, AB/Sciex has now accused Thermo's LTQ ion trap of infringing the '736 patent.

39.    The independent claims of the '736 patent require that a rod set in the mass analyzer include a "means for applying both AC and DC voltages" (Claim 1(f)) and "placing AC and DC voltages between the rod means" (Claim 14(d)) (emphasis added).

40.    During re-examination of the '736 patent, AB/Sciex and/or its representatives and/or the patent applicants specifically distinguished a prior art French reference on a number of

6

grounds including that "the French application receives an AC only voltage . . . ." (emphasis added).

41.    No version of any LTQ ion trap ever manufactured, sold, or offered for sale by Thermo has any DC voltage applied between the "rods" in its mass analyzer.

42.    Every version of every LTQ ion trap ever manufactured, sold, or offered for sale by Thermo receives an AC only voltage between the "rods" in its mass analyzer.

43.    Nevertheless, AB/Sciex has now accused Thermo's LTQ ion trap of infringing the '736 patent.

44.    The independent claims of the '736 claims require that the PxL (i.e., pressure times length) ratio in a "first chamber" equal or exceed $2.25 \times 10^{-2}$ torr cm.

45.    Prior art experiments by Dr. Smith showed use of a PxL value in a first chamber of $1.76 \times 10^{-2}$ torr cm.

46.    The specification of the '736 patent refers to this as "[t]he traditional use of low pressure . . . ."

47.    AB/Sciex and/or its representatives have stated that "the '736 patent was not claiming the range of PL values disclosed by Smith."

48.    Before the '736 patent issued, Dr. Douglas performed at least one so-called "low pressure" experiment.

49.    Neither Dr. Douglas nor anyone else disclosed this experiment to the Patent Office during prosecution of the '736 patent.

50.    AB/Sciex and/or its representatives have stated that "Dr. Douglas had no reason to think that the experiment was material."

7

51.     AB/Sciex's allegations in this lawsuit are predicated on the Q00 chamber in Thermo's TSQ Quantum mass analyzer corresponding to the "first chamber" claimed by the '736 patent.

52.     Every version of every TSQ Quantum being manufactured, sold, or offered for sale by Thermo has a PxL ratio in its Q00 chamber that is substantially below the so-called "low pressure" experiments of Dr. Douglas and Dr. Smith.

53.     Nevertheless, AB/Sciex has now accused Thermo's TSQ Quantum of infringing the '736 patent.

## COUNTERCLAIMS

Counterclaim plaintiff Thermo Electron Corp ("Thermo"), for its counterclaims against Applera Corporation ("Applera"), MDS Inc ("MDS"), and Applied Biosystems/MDS Sciex Instruments ("Applied Biosystems/MDS Sciex") (collectively "counterclaim defendants"), alleges as follows:

## PARTIES

1     Thermo Electron is a Delaware corporation having a place of business at 81 Wyman Street, Waltham, MA 02454

2     On information and belief, Applera is a Delaware corporation having a principal place of business at 301 Merritt 7, Norwalk, CT 06851

3     On information and belief, MDS Inc is a Canadian corporation having its principal place of business at 100 International Boulevard, Toronto, Ontario, Canada MNW 6J6

4     On information and belief, Applera, through its subsidiary Applied Biosystems (Canada) Limited, and MDS, through its MDS Sciex Division, are general partners of Applied Biosystems/MDS Sciex Instruments

8

5.     On information and belief, Applied Biosystems/MDS Sciex Instruments is a Canadian partnership formed under the laws of the Province of Ontario, Canada and having a place of business at 71 Four Valley Drive, Ontario, Canada L4K 4V8.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and 2201.

7.     The counterclaim defendants are subject to personal jurisdiction in this District.

8.     Venue for this action is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## FACTS

9.     Upon information and belief, MDS claims to be the owner of United States Patent No. 4,963,736 ("the '736 patent").

10.     Upon information and belief, Applera and Applied Biosystems/MDS Sciex Instruments claim to be co-exclusive licensees of the '736 patent, and Applera claims to be, through its Applied Biosystems Group, the exclusive worldwide distributor of products manufactured by MDS that embody the invention of the '736 patent.

11.     The counterclaim defendants have accused Thermo of infringement of the '736 patent.

12.     The counterclaim defendants' accusations give rise to a case of actual controversy within the jurisdiction of this Court, pursuant to 28 U.S.C. § 2201 and 2202.

## COUNT ONE
(Non-infringement of the '736 Patent)

9

13.    Thermo repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein

14.    Thermo is not infringing and has not infringed, directly, by inducement or contributorily, on any claim of the '736 patent

15.    To resolve the legal and factual questions raised by the counterclaim defendants and to afford relief from the uncertainty and controversy which the counterclaim defendants' accusations have precipitated, Thermo is entitled to a declaratory judgment that it does not infringe on any claim of the '736 patent.

### COUNT TWO
(Invalidity of the '736 patent)

16.    Thermo repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein

17.    One or more claims of the '736 patent are invalid under one or more sections of Title 35 of the United States Code, including without limitation, 35 U.S.C. §§ 102, 103, and 112.

18.    To resolve the legal and factual questions raised by the counterclaim defendants and to afford relief from the uncertainty and controversy which the counterclaim defendants' accusations have precipitated, Thermo is entitled to a declaratory judgment that one or more claims of the '736 patent are invalid

### COUNT THREE
(Unenforceability of the '736 patent)

19.    Thermo repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

20.    The '736 patent is unenforceable.

10

21.    To resolve legal and factual questions raised by the counterclaim defendants and to afford relief from the uncertainty and controversy which the counterclaim defendants' accusations have precipitated, Thermo is entitled to a declaratory judgment that the '736 patent is unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Thermo Electron Corp. ("Thermo") requests entry of judgment in its favor and against Applera Corp ("Applera"), MDS Inc ("MDS"), Applied Biosystems/MDS Sciex Instruments ("Applied Biosystems/MDS Sciex") as follows:

A.    Adjudge that Thermo has not infringed the '736 patent and/or that the '736 patent is invalid and/or unenforceable, and enter a declaratory judgment to that effect;

B.    Dismiss the Complaint of Applera, MDS, and Applied Biosystems/MDS Sciex with prejudice, denying them all relief;

C.    Enter an Order finding that this is an exceptional case and award Thermo its reasonable attorneys' fees pursuant to 35 U.S.C. § 285, and

D.    Award Thermo such other relief, including costs, as the Court may deem appropriate and just under the circumstances

11

## DEMAND FOR JURY TRIAL

Defendant Thermo Electron Corporation demands a trial by jury on all issues so triable

_____
Frederick L. Cottrell, III  (#2555)
(Cottrell@RLF com)
Kelly E  Farnan  (#4395)
(Farnan@RLF com)
 Richard, Layton & Finger

OF COUNSEL:

William F  Lee
Wayne L  Stoner
Stephen M  Muller
Michael R  Dube
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000

One Rodney Square
920 N  King Street
P O  Box 551
Wilmington, DE  19899
(302) 651-7700
Attorneys for Thermo Electron Corporation

Dated:  ~~March 28,~~October 7, 2005

12

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1.1

The undersigned certifies that counsel for Thermo Electron Corporation has contacted counsel for Applera Corporation, MDS Inc  and Applied Biosystems/MDS Sciex Instruments (collectively, "Plaintiffs") about the attached Motion and proposed Amended Answer and Counterclaim, and supplied counsel with a draft of the proposed Amended Answer and Counterclaim, and Plaintiffs are opposed to the relief sought in the Motion

*Kelly E  Farnan*

Kelly E  Farnan (#4395)
farnan@rlf com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APPLERA CORPORATION, MDS INC., and APPLIED BIOSYSTEMS/MDS SCIEX INSTRUMENTS,<br>　　　　Plaintiffs/Counterclaim-Defendants,<br><br>vs.<br><br>THERMO ELECTRON CORPORATION,<br>　　　　Defendant/Counterclaim-Plaintiff. | ）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>） |

Civil Action No: 04-1230

**JURY TRIAL DEMANDED**

## ORDER

IT IS HEREBY ORDERED this ___ day of _____, 2005 that Defendant Thermo Electron Corporation's Motion to Amend is GRANTED.  The Amended Answer and Counterclaim is deemed served and filed as of the date of this Order.


_____
United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2005, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing, and hand delivered, to the following:

>Josy W. Ingersoll
>Adam W. Poff
>Young, Conaway, Stargatt & Taylor, LLP
>The Brandywine Building, 17th Floor
>1000 West Street
>Wilmington, DE  19899

I hereby certify that on October 7, 2005, I sent the foregoing document by Federal Express to the following non-registered participant:

>Walter E. Hanley, Jr.
>James Galbraith
>Huiya Wu
>Kenyon & Kenyon
>One Broadway
>New York, NY   10004
>
>William G. James, II
>Fred T. Grasso
>Kenyon & Kenyon
>1500 K Street N.W., Suite 700
>Washington, DC  20036

_Kelly E. Farnan_
Kelly E. Farnan  (#4395)
(Farnan@RLF.com)

DATED:   October 7, 2005