# UNREPORTED CASES

# EXHIBIT A

Westlaw.

Slip Copy                                                               Page 1
Slip Copy, 2005 WL 914776 (D.Del.)
**(Cite as: 2005 WL 914776 (D.Del.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
MCKESSON INFORMATION SOLUTIONS, LLC,
Plaintiff,
v.
THE TRIZETTO GROUP, INC., Defendant.
**No. Civ.04-1258-SLR.**

April 20, 2005.
Thomas J. Allingham, II, Wilmington, DE, for
Plaintiff.

Rodger Dallery Smith, II, Wilmington, DE, for
Defendant.

MEMORANDUM ORDER

ROBINSON, J.

I. INTRODUCTION

*1 On September 13, 2004, plaintiff filed this action
alleging infringement of its United States Patent No.
5,253,164 ("the '164 patent") by defendant.
Defendant answered the complaint, denied' any
infringement and asserted that the '164 patent was
invalid and unenforceable. (D.I.10)

Pending before the court are plaintiff's motions to
strike defendant's affirmative defenses, dismiss
defendant's counterclaims or, in the alternative, for a
more definitive statement of such defenses and
counterclaims. (D.I.13) This court has jurisdiction
over this suit pursuant to 28 U.S.C. § 1338.

II. BACKGROUND

Plaintiff is a Delaware limited liability corporation
with its principal place of business in Alpharetta,
Georgia. (D.I.10) Defendant is a Delaware
corporation with its principal place of business in
Newport Beach, California. (D.I.10) The parties
create and distribute software for reviewing the
accuracy of healthcare claims and/or charges. (*Id.* at ¶

¶ 25-26)

III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8 requires a party to
set forth affirmative defenses in a responsive
pleading with a "short and plain statement." Federal
Rule of Civil Procedure 12(f), in turn, states:
  Upon motion by a party before responding to a
  pleading or, if no responsive pleading is permitted
  by these rules, upon motion made by a party within
  20 days after the service of the pleading upon the
  party or upon the court's own initiative at any time,
  the court may order stricken from any pleading any
  insufficient defense or any redundant, immaterial,
  impertinent, or scandalous matter.
  Motions to strike affirmative defenses, however, are
disfavored. *See Proctor & Gamble Co. v. Nabisco
Brands, Inc.,* 697 F.Supp. 1360, 1362 (D.Del.1988).
When ruling on such a motion, "the court must
construe all facts in favor of the nonmoving party ...
and deny the motion if the defense is sufficient under
the law." *Id.* Furthermore, courts prefer not to grant a
motion to strike "unless it appears to a certainty that
... [the movant] would succeed despite any state of
the facts, which could be proved in support of the
defense." *Salcer v. Envicon Equities, Corp.,* 744 F.2d
935, 939 (2d Cir.1984).

IV. DISCUSSION [FN1]

  FN1. Because plaintiff's motion to dismiss,
  or in the alternative for a more definite
  statement, depends solely on its motion to
  strike, the motion is dismissed without
  prejudice to renew.

Defendant's answer to the complaint asserts eight
affirmative defenses and counter-claims for
declaratory judgment of noninfringement,
unenforceability and invalidity. (D.I.10) Plaintiff has
moved to strike defendant's second, sixth and seventh
affirmative defenses. (*Id.* at ¶¶ 11, 15, 16-18)

A. Second And Sixth Affirmative Defenses--
Invalidity & Misuse

Defendant's second affirmative defense argues that
the '164 patent is invalid "for failure to comply with
one or more of the conditions for patentability set
forth in Title 35 of the United States Code, including

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 914776 (D.Del.)
**(Cite as: 2005 WL 914776 (D.Del.))**

but not limited to 35 U.S.C. § § 102, 103 and 112."
(*Id.* at ¶ 11) Plaintiff argues that this defense is too
broad because it includes any and all of title 35, and
it is repetitive of defendant's third, fourth and fifth
affirmative defenses, which asserts specific violations
of § § 102, 103 and 112. (*Id.*)

*2 Defendant's sixth affirmative defense asserts that
"[t]he '164 patent is unenforceable because [plaintiff]
comes into Court with unclean hands. Plaintiff has
committed patent misuse by attempting to enforce a
patent it should reasonably know is invalid and not
infringed." (D.I. 10 at ¶ 15) Plaintiff asserts that this
defense does not meet pleading requirements because
it does not allege bad faith or anti-competitive effect.
[FN2]

> FN2. The basic allegation of patent misuse
> is that the patentee has "extend[ed] the
> economic benefit beyond the scope of the
> patent grant." *C.R. Bard, Inc. v. M3 Sys.,
> Inc.,* 157 F.3d 1340, 1372 (Fed.Cir.1998).
> Patent misuse "requires that the alleged
> infringer show that the patentee has
> impermissibly broadened the physical or
> temporal scope of the patent grant with
> anticompetitive effect." *Virginia Panel
> Corp. v. MAC Panel Co.,* 133 F.3d 860, 868-
> 71 (Fed.Cir.1997). There is a two part test
> for patent misuse that requires the party
> alleging misuse to show a patentee's bad
> faith in alleging infringement and an
> anticompetitive effect or purpose behind the
> allegation. *See e.g., Glaverbell Societe
> Anonyme v. Northlake Mktg. & Supply. Inc.,*
> 45 F.3d 1550, 1558 (Fed.Cir.1995);
> *Advanced Cardiovascular Systems. Inc. v.
> Scimed Systems, Inc.,* C-96-0950, 1996 WL
> 467277 at *4 (N.D.Cal.1996).

In complex litigation, such as cases involving patent
infringement, it is through the discovery process that
the parties refine and focus their claims. At this stage
in the litigation, the court declines to strike
defendant's affirmative defenses until adequate
discovery has been completed.

B.  Seventh Affirmative Defense--Inequitable
Conduct

Defendant's seventh affirmative defense states:
  The patent-in-suit is invalid and unenforceable
  because it was obtained through the intentional
  failure of the inventors, and/or their agents, to
  disclose to the Patent Office, during prosecution of

the patent-in-suit, information material to the
patentability of the patent-in-suit, in violation of 37
C.F.R. § 1.56.
To the extent now known, and subject to further
amplification as to the full extent of the
withholding and misrepresentation of information,
the inventors and/or their agents made a number of
misrepresentations or omissions of material fact to
the Patent Office, including but not limited to, false
statements and omissions regarding prior art. In
particular, and without limitation, the following
intentional and material false statements or
omissions were made by the inventors and/or their
agents, including:
a) the failure by applicants to disclose to the
Examiner one of the inventors' own material prior
art publications, including "An Access-oriented
Negotiated  Fee  Schedule--The  Caterpillar
Experience," ... and a presentation at the 107th
Annual Meeting of The American Surgical
Association ...;
b) the failure to disclose to the Examiner the fact
that the claimed software to review claims was
obvious and disclosed in commonly available
books on expert systems as admitted by Marcia
Radosevich, President of HPR, the assignee of the
patent-in-suit, in a case study at the Harvard
Business School in 1989;
c) the failure to disclose to the Patent Office that
four programming and code review consultants
participated in the development of the claimed
software as described by Marcia Radosevich to the
Harvard Business School; and
d) the failure to disclose to the Patent office that
the invention was conceived by some individuals
who were employed by Boston University's Health
Policy Institute, and that the work was funded by
the U.S. Government sponsored research.
The above false statements and omitted references
and funding information would have been
considered by a reasonable examiner to be material
to a determination of allowability of the patent
claims, and on information and belief, said
statements and omissions were made with intent to
deceive the Patent Office. Had the inventors and/or
their agents made accurate representations to the
Patent Office, the '164 patent would not have
issued. Hence, the patent-in-suit is unenforceable
for inequitable conduct.
*3 (D.I. 10 at ¶ ¶ 16-18)

Fraud is a clear exception to the otherwise broad
notice-pleading standards under Fed.R.Civ.P. 9. A
claim of patent unenforceability is premised upon
inequitable conduct before the Patent & Trademark

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 914776 (D.Del.)
**(Cite as: 2005 WL 914776 (D.Del.))**

Office ("PTO"), which is a claim sounding in fraud.
A plaintiff alleging unenforceability, therefore, must
plead with particularity those facts which support the
claim the patent holder acted fraudulently before the
PTO. *See e.g., Ferguson Beauregard/Logic Controls
v. Mega Sys., LLC, 350 F.3d 1327, 1343-44
(Fed.Cir.2003).*

  This court has previously found that pleadings that
"disclose the name of the relevant prior art and
disclose the acts of the alleged fraud fulfill the
requirements of Rule 9(b)." *See, e.g., EMC Corp. v.
Storage Tech. Corp., 921 F.Supp. 1261, 1263
(D.Del.1996).* In this case, defendant has satisfied the
pleading requirements of Rule 9(b), as it states, with
reasonable particularity, the prior art references and
instances of fraud to which it is referring. Plaintiff is
on notice of the misconduct alleged.

  IV. CONCLUSION

  Therefore, at Wilmington this 20th day of April,
2005;

  IT IS ORDERED that:

  1. Plaintiff's motion to strike certain of defendant's
affirmative defenses (D.I.13) is denied without
prejudice.

  2. Plaintiff's motion to dismiss, or for a more
definitive statement (D.I.13), is denied without
prejudice.

  Slip Copy, 2005 WL 914776 (D.Del.)

  **Motions, Pleadings and Filings (Back to top)**

•              1:04cv01258_____(Docket)
(Sep. 13, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

1996 U.S. Dist. LEXIS 11702, *; 40 U.S.P.Q.2D (BNA) 1291

**ADVANCED CARDIOVASCULAR SYSTEMS, INC., Plaintiff, v. SCIMED SYSTEMS, INC., Defendant. SCIMED SYSTEMS, INC., Counter-Claimant, v. ADVANCED CARDIOVASCULAR SYSTEMS, INC., Counter-Defendant.**

**No. C-96-0950 DLJ**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*1996 U.S. Dist. LEXIS 11702; 40 U.S.P.Q.2D (BNA) 1291*

**July 24, 1996, Decided**
**July 24, 1996, FILED**

**DISPOSITION:** [*1] Defendant's affirmative defense of invalidity STRICKEN WITHOUT PREJUDICE and defendant's affirmative defense of patent misuse STRICKEN WITH PREJUDICE. All references to the patent misuse defense STRICKEN from the counter-claim.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff moved to strike affirmative defenses of patent invalidity and misuse from defendant's counterclaim in a patent infringement action. Defendant moved to amend its answer and counterclaim.

**OVERVIEW:** Plaintiff argued that defendant's invalidity defense was not pled with the specificity necessary under Fed. R. Civ. P. 8(a). The court agreed, finding that defendant's general reference to a series of statutes did not give plaintiff fair notice of the defense, but the court also granted defendant leave to amend the defense. Plaintiff also argued that under *35 U.S.C.S. § 271*(d), it could not be found guilty of patent misuse for seeking to enforce its patent. The court found that defendant did not state how plaintiff had attempted to impermissibly construe its patent so as to cause an anticompetitive effect and that defendant did not provide a factual basis for allegations that plaintiff knew the patent was invalid when filing the action. The court noted that the laches and estoppel defenses were not appropriate because there was no improper delay in prosecuting the patent.

**OUTCOME:** The court ordered the defenses stricken, but the court granted leave to amend the invalidity defense. The court held that a general reference to statutes did not give fair notice of the invalidity defense and that the proposed amended answer did not state claims of patent misuse, estoppel, or laches.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
[HN1] Under Fed. R. Civ. P. 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether a plaintiff will prevail in the action, but whether she is entitled to offer evidence in support of her claim.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
*Civil Procedure > Pleading & Practice > Pleadings > Interpretation*
[HN2] In ruling on a motion to dismiss, the court must assume that plaintiff's allegations are true and must draw all reasonable inferences in plaintiff's favor. Even if the face of the pleadings suggests that the chance of recovery is remote, the court must allow plaintiff to develop her case.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings*
[HN3] If the court chooses to dismiss a complaint, it must then decide whether to grant leave to amend. In general, leave to amend is only denied if it is clear that amendment would be futile and that the deficiencies of the complaint could not be cured by amendment.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Strike*
[HN4] See Fed. R. Civ. P. 12(f).

*Civil Procedure > Pleading & Practice > Pleadings*
[HN5] See Fed. R. Civ. P. 8(a).

*Civil Procedure > Pleading & Practice > Pleadings*
*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Affirmative Defenses*

1996 U.S. Dist. LEXIS 11702, *; 40 U.S.P.Q.2D (BNA) 1291

[HN6] The key to determining the sufficiency of pleading an affirmative defense under Fed. R. Civ. P. 8(a) is whether it gives plaintiff fair notice of the defense.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements*
[HN7] See Fed. R. Civ. P. 9(b).

*Patent Law > Infringement Actions > Defenses > Misuse*
[HN8] Under *35 U.S.C.S. § 271*(d), a patent owner cannot be denied relief or found guilty of misuse simply by reason of seeking to enforce his or her patent.

*Patent Law > Infringement Actions > Defenses > Misuse*
*Patent Law > Inequitable Conduct > Burdens of Proof*
*Patent Law > Infringement Actions > Burdens of Proof*
[HN9] A party asserting a defense of patent misuse must show that the patentee has impermissibly broadened the "physical or temporal scope" of the patent with anticompetitive effect.

*Patent Law > Ownership > Conveyances > Licenses*
*Patent Law > Infringement Actions > Infringing Acts > Contributory, Indirect & Induced Infringement*
*Patent Law > Infringement Actions > Defenses > General Overview*
[HN10] See *35 U.S.C.S. § 271*(d).

*Patent Law > Infringement Actions > Defenses > Misuse*
*Patent Law > Inequitable Conduct > General Overview*
*Patent Law > Infringement Actions > Burdens of Proof*
[HN11] Given the specific exceptions to patent misuse in *35 U.S.C.S. § 271*(d), a defendant must plead more than a conclusory allegation of patent misuse in order to provide fair notice of the nature of the defense. The defendant must state how the plaintiff has attempted to overbroadly and impermissibly construe its patent such as to cause an anticompetitive effect, and the defendant must provide some factual basis for the allegation that the plaintiff knew the patent was invalid or unenforceable when the plaintiff filed the present action.

*Patent Law > Infringement Actions > Burdens of Proof*
*Patent Law > Infringement Actions > Defenses > Estoppel & Laches > General Overview*
[HN12] To invoke a defense of laches, a defendant must allege neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar. In the context of patent litigation, the period of delay is measured from the time the plaintiff knew or reasonably should have known

of the defendant's alleged infringing activities to the date of the suit. The period of delay does not begin prior to issuance of the patent.

*Patent Law > Infringement Actions > Burdens of Proof*
*Patent Law > Infringement Actions > Defenses > Estoppel & Laches > General Overview*
[HN13] To invoke a defense of equitable estoppel, a defendant must allege three essential elements: (1) the plaintiff, who usually must have had knowledge of the true facts, communicated something in a misleading way, either by words, conduct or silence; (2) the defendant relied upon that communication; and (3) the defendant would be harmed materially if the plaintiff is permitted to assert any claim inconsistent with his earlier conduct.

COUNSEL: PLAINTIFF ATTYS: Timothy J. Malloy, Edward A. Mas II, David D. Headrick, McAndrews, Held & Malloy, Chicago, IL. Richard H. Abramson, Hope L. Hudson, Heller, Ehrman, White & McAuliffe, Palo Alto, CA.

DEFENDANT ATTYS: Philip S. Johnson, Steven J. Rocci, Woodcock, Washburn, Kurtz, Mackiewicz & Norris, Philadelphia, PA. David Eiseman, Bronson, Bronson & McKinnon LLP, San Francisco, CA.

JUDGES: D. Lowell Jensen, United States District Judge

OPINIONBY: D. Lowell Jensen

OPINION:

### ORDER

On July 10, 1996, the Court heard argument on plaintiff's motion to strike defendant's affirmative defenses and to dismiss the counterclaim. Timothy J. Malloy, David D. Headrick, and Edward A. Mas II of McAndrews, Held & Malloy and Hope L. Hudson of Heller, Ehrman, White & McAuliffe appeared on behalf of plaintiff Advanced Cardiovascular Systems, Inc.; Philip S. Johnson and Steven J. Rocci of Woodcock, Washburn, Kurtz, Mackiewicz & Norris appeared for defendant SciMed Systems, Inc. Having [*2] considered the arguments of counsel, the papers submitted, the applicable law, and the record in this case, the Court hereby strikes without prejudice defendant's affirmative defense of invalidity and strikes with prejudice defendant's affirmative defense of patent misuse.

I. BACKGROUND

A. Factual Background and Procedural History

1996 U.S. Dist. LEXIS 11702, *; 40 U.S.P.Q.2D (BNA) 1291

Advanced Cardiovascular Systems, Inc. ("ACS") and SciMed Systems, Inc. ("SciMed") are both companies engaged in developing, manufacturing, promoting, and selling interventional medical devices, including rapid exchange catheters used in percutaneous transluminal coronary angioplasty ("PTCA") for treating coronary artery disease. n1 These parties and others are currently involved in a complex series of patent infringement suits. The Court has ordered that all of the following cases be related pursuant to Civil Local Rule 3-12(e).

> n1 During a PTCA procedure, a balloon dilatation catheter is carried through the patient's vasculature over a guidewire to a point where deposits, or "lesions," in the coronary arteries have blocked or narrowed the arteries thereby restricting blood flow. Once the catheter is in place, the balloon is inflated to compress or break the material forming the lesion in order to open the restricted artery to improve blood flow.

[*3]

On October 10, 1995, ACS filed two similar patent infringement suits. The first, C-95-3577-DLJ, was brought against Medtronic, Inc. ("Medtronic") for infringement of Patent Nos. 5,040,548, 5,061,273, and 5,451,233 ("the '548 patent," "the '273 patent," and "the '233 patent," respectively). These patents relate to certain kinds of "rapid exchange" catheters that can be used for PTCA. The patents were issued to the inventor, Dr. Paul G. Yock, pursuant to continuation applications relating to an original patent application filed on April 15, 1986. The rights to these patents were subsequently licensed to ACS. ACS alleges that Medtronic's "Falcon" rapid exchange PTCA catheters infringe on one or more claims of the '548, '273, and '233 patents.

The second suit ACS filed on October 10, 1995, C-95-3580-DLJ, was brought against SciMed, for infringement of the '548, '273, and '233 patents, as well as for infringement of U.S. Patent No. 5,350,395 ("the '395 patent"), all of which were issued to Dr. Paul G. Yock between August 20, 1990 and September 19, 1995. Plaintiff alleges that SciMed's "Express Plus" and "Express Plus II" rapid exchange PTCA catheters infringe on the named patents. [*4]

On March 12, 1996, ACS filed the present action, C-96-0950-DLJ against SciMed for infringement of U.S. Patent No. 5,496,346 ("the '346 patent"), claiming that SciMed's "Express Plus II" and "Leap Express Plus" catheters infringe one or more claims of the '346 patent. The '346 patent, entitled "Reinforced Balloon Dilatation Catheter With Slitted Exchange Sleeve and Method," was issued on March 5, 1996 in the names of the inven-

tors, Michael J. Horzewski and Dr. Paul G. Yock. The '346 patent relates generally to rapid exchange balloon dilatation catheters which are used in PTCA for treating coronary artery disease.

On March 12, 1996, ACS also filed a suit, C-96-0942-DLJ, against Medtronic for infringement of the '346 patent. ACS claims that Medtronic's "Falcon" rapid exchange catheter infringes one or more claims of the '346 patent.

B. Legal Standard

1. Motion to Dismiss

[HN1] Under *Federal Rule of Civil Procedure 12(b)(6)*, a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether a plaintiff will prevail in the action, but whether she is entitled to offer evidence in [*5] support of her claim. *Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974).*

[HN2] In answering this question, the Court must assume that plaintiff's allegations are true and must draw all reasonable inferences in plaintiff's favor. *Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).* Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow plaintiff to develop her case at this stage of the proceedings. *United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).*

[HN3] If the Court chooses to dismiss the complaint, it must then decide whether to grant leave to amend. In general, leave to amend is only denied if it is clear that amendment would be futile and "that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987)* (quoting *Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980)* (per curiam)); see *Poling v. Morgan, 829 F.2d 882, 886 (9th Cir. 1987)* (citing *Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962))* (futility is basis for denying amendment under Rule 15).

2. Motion to [*6] Strike

*Federal Rule of Civil Procedure 12(f)* provides that [HN4] "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

3. Rule 8

Civil Rule 8(a) requires that a pleading contain [HN5] "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claims needs no new grounds of jurisdiction to support it, (2) a short and

1996 U.S. Dist. LEXIS 11702, *; 40 U.S.P.Q.2D (BNA) 1291

plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." [HN6] "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Wyshak v. City National Bank, 607 F.2d 824, 827 (9th Cir. 1979).*

### 4. Rule 9(b)

Civil Rule 9(b) requires that [HN7] "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

### II. ARGUMENTS

Plaintiff ACS has brought a motion in this suit, C-96-0950-DLJ, to strike SciMed's affirmative [*7] defenses contained in Paragraphs 14 and 15 of the Answer, to dismiss SciMed's counterclaim to the extent that it incorporates these insufficient affirmative defenses, and to strike from the counterclaim immaterial language that arises from the insufficient affirmative defenses. In response to ACS' motion, SciMed brings a counter-motion to amend the Answer and Counterclaim.

#### a. Affirmative Defenses

SciMed asserts three affirmative defenses in its Answer: (1) invalidity, (2) unenforceability under the doctrine of patent misuse, and (3) noninfringement. See Answer at PP 14-16. ACS only moves to strike defendant's allegations of invalidity and patent misuse.

##### 1. Invalidity

SciMed's invalidity defense alleges: "Each and every claim of the '346 patent is invalid for failure to meet the patentability standards of *35 U.S.C. § 1* et seq." Answer at P 14. Under *Rule 8 of the Federal Rules of Civil Procedure*, an affirmative defense must be pled with the minimal specificity necessary to give the plaintiff "fair notice" of the defense. *Wyshak, 607 F.2d at 827.* Defendant's general reference to a series of statutory provisions does not provide plaintiff with fair notice [*8] of the basis for this defense. Therefore, the Court hereby strikes defendant's invalidity defense with leave to amend.

In response to the present motion, SciMed has submitted a proposed amendment, alleging that the '346 patent is invalid

for failure to meet the "Conditions for Patentability" of *35 U.S.C. § § 102* and 103 because the alleged invention thereof is taught by, suggested by, and/or, obvi-

ous in view of, the prior art, and, no claim of the 346 patent can be validly construed to cover any SciMed catheter.

Proposed First Amended Answer at P 14. ACS complains that this amendment still is not specific enough. However, given the fact that ACS itself has not specified which of the 18 claims contained in the '346 patent are allegedly being infringed by SciMed's product, the Court shall not require any more factual specificity of SciMed. Therefore, the Court grants defendant leave to assert an invalidity defense as stated in the Proposed First Amended Answer.

##### 2. Patent Misuse

SciMed's affirmative defense of patent misuse alleges: "The '346 patent is unenforceable under the doctrine of patent misuse." Answer at P 15. [HN8] Under *35 U.S.C. § 271*(d), a patent owner cannot [*9] be denied relief or found guilty of misuse simply by reason of seeking to enforce his or her patent. Therefore, the crux of this defense is that ACS knew the patent was invalid or unenforceable at the time it filed this action. In addition, [HN9] a party asserting a defense of patent misuse must "show that the patentee has impermissibly broadened the 'physical or temporal scope' of the patent with anticompetitive effect." *Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995, 1001 (Fed. Cir. 1986)* (citations omitted), cert. denied, *477 U.S. 905, 91 L. Ed. 2d 565, 106 S. Ct. 3275 (1986).* Through amendments to the Patent Statute in 1988, Congress has precluded certain conduct from forming the basis of a patent misuse defense:

[HN10] (1) deriving revenue from acts which if performed by another without his consent would constitute contributory infringement of the patent; (2) licensing or authorizing another to perform acts which if performed without his consent would constitute contributory infringement of the patent; (3) [seeking] to enforce his patent rights against infringement or contributory infringement; (4) refusing to license or use any rights to the patent; or (5) conditioning [*10] the license of any rights to the patent or the sale of the patented product on the acquisition of a license to rights in another patent or purchase of a separate product, unless, in view of the circumstances, the patent owner has market power in the relevant market for the patent or patented product

1996 U.S. Dist. LEXIS 11702, *; 40 U.S.P.Q.2D (BNA) 1291

on which the license or sale is conditioned.

*35 U.S.C. § 271*(d). [HN11] Given the specific exceptions to patent misuse provided by Congress, defendant must plead more than a conclusory allegation of patent misuse in order to provide fair notice of the nature of the defense. Defendant must state how plaintiff has attempted to overbroadly and impermissibly construe its patent such as to cause an anticompetitive effect, and defendant must provide some factual basis for the allegation that plaintiff knew the patent was invalid or unenforceable when plaintiff filed the present action.

Defendant's proposed amended answer alters the patent misuse defense as follows:

> The 346 patent is unenforceable, and/or, ACS should be estopped from enforcing the 346 patent against SciMed, by reason of ACS' improper and/or dilatory conduct, including its actions taken in connection with its dealings [*11] with SciMed, and/or the actions taken and unreasonable delay in filing and prosecuting the various patent applications leading to the 346 patent, as well as belatedly presenting and procuring the claims now asserted by ACS against SciMed, all to the prejudice of SciMed, and to the public, which were entitled to rely on ACS' conduct, actions and/or delay, and upon which at least SciMed has reasonably relied. Such conduct, including ACS' conduct in procuring, and subsequently attempting to enforce, the 346 patent constitutes misuse of the patent laws and the legal process and renders the 346 patent unenforceable. Alternatively, as a consequence of ACS' conduct alleged herein, ACS should be estopped from asserting the 346 patent against SciMed.

Proposed First Amended Answer at P 15. This amendment adds estoppel and laches defenses based on plaintiff's delay in prosecuting the patent.

[HN12] To invoke a defense of laches, a defendant must allege "neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar." *A.C. Aukerman Co. v. R.L. Chaides Constr.* [*12] *Co., 960*

*F.2d 1020, 1028-29 (Fed. Cir. 1992)* (en banc). In the context of patent litigation, "the period of delay is measured from the time the plaintiff knew or reasonably should have known of the defendant's alleged infringing activities to the date of the suit." *Id. at 1032.* The Federal Circuit has explicitly stated that "the period [of delay] does not begin prior to issuance of the patent." Id.; see also *Stark v. Advanced Magnetics, Inc., 29 F.3d 1570, 1576 (Fed. Cir. 1994)* ("The laches period does not accrue until [the] patent issues . . . "). Since the only delay that can form the basis of a laches defense is delay between the issuance of the patent and the filing of the infringement action, defendant's theory of laches based on delay in prosecution of the patent is not cognizable.

Furthermore, since there is no allegation that plaintiff violated any of the statutory or regulatory rules for prosecuting patents, there was no improper delay in the prosecution of this patent to justify a laches or equitable estoppel defense. n2 The *'346* patent issued from a series of "continuation" applications relating back to the original application filed on January 6, 1987. Under [*13] *35 U.S.C. § 120,* the prosecution of this patent dates back to the filing of the original application. *Transco Prods., Inc. v. Performance Contracting, Inc., 38 F.3d 551, 556 (Fed. Cir. 1994).* By providing this relation back doctrine, Congress evidenced a clear intent to regulate the timing of continuation applications. Accordingly, only Congress can determine what constitutes unreasonable delay in the filing of such an application. It is not for this Court to decide that the prosecution of a patent according to the rules of the PTO is unreasonable and inequitable. Since defendant's laches and equitable estoppel defenses ask the Court to make precisely this determination, the Court does not grant defendant leave to assert these defenses.

> n2 [HN13] To invoke a defense of equitable estoppel, a defendant must allege three essential elements: (1) the plaintiff, who usually must have had knowledge of the true facts, communicated something in a misleading way, either by words, conduct or silence; (2) the defendant relied upon that communication; and (3) the defendant would be harmed materially if the plaintiff is permitted to assert any claim inconsistent with his earlier conduct. *Aukerman, 960 F.2d at 1041.*

[*14]

Given that defendant's proposed amendment of the patent misuse defense fails to state a cognizable claim of patent misuse, estoppel, or laches, the Court hereby strikes this defense with prejudice.

B. Counterclaim

1996 U.S. Dist. LEXIS 11702, *; 40 U.S.P.Q.2D (BNA) 1291

Plaintiff argues that SciMed's counterclaim should be dismissed pursuant to Rule 12(b)(6) to the extent that it incorporates insufficient affirmative defenses. Where an affirmative defense is stricken, a counterclaim cannot state a claim based on that defense. Therefore, in order to keep the law of this case clear, the Court hereby strikes from the counterclaim all references to defendant's affirmative defense of patent misuse.

III. CONCLUSION

The Court hereby STRIKES WITHOUT PREJUDICE defendant's affirmative defense of invalid-ity and STRIKES WITH PREJUDICE defendant's affirmative defense of patent misuse. In addition, the Court STRIKES from the counterclaim all references to the patent misuse defense. Any amended answer must be filed by August 16, 1996.

IT IS SO ORDERED.

Dated: July 24, 1996.

D. Lowell Jensen

United States District Judge

# EXHIBIT C

2000 U.S. Dist. LEXIS 8128, *

**HOFFMAN-LA ROCHE INC. and SYNTEX (U.S.A.) INC., Plaintiffs, v. GENPHARM INC., Defendant.**

**Civ. No. 98-1124 (WHW)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

*2000 U.S. Dist. LEXIS 8128*

**May 3, 2000, Decided**

**NOTICE:** [*1]  NOT FOR PUBLICATION

**DISPOSITION:** Plaintiffs' motion for summary judgment to dismiss Genpharm's counterclaims remaining after the Court's initial decision of June 8, 1999 granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs moved for summary judgment to dismiss defendant's counterclaims remaining after the court's initial decision of June 8, 1999, in a case alleging that the process by which ticlopidine hydrochloride was made for use in defendant's generic tablets infringed plaintiff patent holder's patents.

**OVERVIEW:** Plaintiffs manufactured and distributed pharmaceutical products. Defendant was engaged primarily in the manufacture in Canada, and sale in various countries, of generic pharmaceutical products. In 1998, plaintiffs commenced this suit, alleging that the process by which a blood platelet inhibitor was made for use in defendant's generic tablets infringed one of the plaintiff's patents. Defendant filed a number of counterclaims. After discovery, the court allowed plaintiffs to drop their case and dismissed all but two of defendant's counterclaims--the fourth counterclaim for patent misuse and the fifth for unfair competition. Plaintiffs moved for summary judgment on these claims. The motion was granted because the court concluded that defendant had not raised any issue of material fact as to whether plaintiffs conducted a reasonable pre-suit investigation. The court further concluded that defendant's fourth counterclaim was barred by Noerr-Pennington immunity because plaintiffs' infringement suit was not objectively baseless. It followed that defendant's fifth counterclaim under state unfair competition law was also barred.

**OUTCOME:** Plaintiffs' motion was granted because, regarding the sham litigation claim, defendant did not raise any issue of material fact as to whether plaintiffs conducted a reasonable pre-suit investigation. The state law unfair competition claim was barred by Noerr-Pennington immunity.

LexisNexis(R) Headnotes

*Civil Procedure > Summary Judgment*
*Patent Law > Jurisdiction & Review > General Overview*
[HN1] Patent cases are not immune to summary judgment motions. The Federal Circuit has repeatedly emphasized that summary judgment is as appropriate in a patent case as any other.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*
*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN2] Summary judgment is appropriate where the moving party establishes that there is no genuine issue of fact and that it is entitled to a judgment as a matter of law. *Fed. R. Civ. P. 56*. A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*
[HN3] The party opposing a motion for summary judgment must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings.

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN4] At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. And, the court must construe the

2000 U.S. Dist. LEXIS 8128, *

facts and inferences in the light most favorable to the non-moving party.

*Patent Law > Infringement Actions > Infringing Acts > Intent & Knowledge*
*Patent Law > Infringement Actions > Defenses > Misuse*
[HN5] A claim for patent misuse includes bringing suit to enforce a patent with knowledge that the patent is invalid or not infringed, and the litigation is conducted for anticompetitive purposes.

*Patent Law > Infringement Actions > General Overview*
[HN6] Some standards have developed for analysis of what degree of pre-suit investigation is required. For example, more investigation is warranted when the facts are publicly available as opposed to when they are under the exclusive control of the potential opposing party. Additionally, reasonable steps should be taken to conduct a chemical analysis of a patented product if conclusive results are practically obtainable without additional court-ordered discovery.

*Patent Law > Infringement Actions > General Overview*
[HN7] Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation.

*Torts > Business & Employment Torts > Unfair Business Practices*
[HN8] The tort of unfair competition consists of the misappropriation of one's property by another.

*Antitrust & Trade Law > Exemptions & Immunities > Noerr-Pennington Doctrine*
*Torts > Business & Employment Torts > Unfair Business Practices*
[HN9] Regardless of the scope of the state law claim, Noerr-Pennington immunity extends to state law unfair competition claims.

COUNSEL: John C. Vassil, Morgan & Finnegan, L.L.P., New York, New York, for Hoffman-La Roche Inc. and Syntex (U.S.A.) Inc., Plaintiffs.

David Fernandez, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, PC, Newark, New Jersey, for Hoffman-La Roche Inc. and Syntex (U.S.A.) Inc., Plaintiffs.

Edgar H. Huag, Frommer Lawrence & Haug LLP, New York, New York, for Genpharm Inc., Defendant.

Frederick L. Whitmer, Pitney, Hardin, Kipp & Szuch, Morristown, New Jersey, for Genpharm Inc., Defendant.

JUDGES: William H. Walls, U.S.D.J.

OPINIONBY: William H. Walls

OPINION: Walls, District Judge

Plaintiffs Hoffman-La Roche Inc. ("Roche" or "La Roche") and Syntex (U.S.A.), Inc. move for summary judgment to dismiss Genpharm's counterclaims remaining after the Court's initial decision of June 8, 1999. See *Hoffmann-La Roche v. Genpharm, Inc., 50 F. Supp. 2d 367, 378* (D.N.J. June 8, 1999).

FACTS

Plaintiffs Roche and Syntex manufacture and distribute pharmaceutical products. Genpharm is engaged primarily in the [*2] manufacture in Canada, and sale in various countries, of generic pharmaceutical products that sometimes have brand-name counterparts.

Syntex owns a number of patents pertaining to the composition and synthesis of ticlopidine hydrochloride, a blood platelet aggregation inhibitor. n1 Roche is the exclusive distributor of the TICLID brand of ticlopidine hydrochloride under the Syntex patents.

> n1 These Syntex patents include patent number 4,906,756 ("'756") issued March 6, 1990; patent number 4,997,945 ("'945") issued March 5, 1991; patent number 5,068,360 ("'360") issued November 26, 1991; patent number 5,191,090 ("'090") issued March 2, 1993; patent number 5,342,953 ("'953") issued August 30, 1994; and patent number 5,516,910 ("'910") issued May 14, 1996.

Genpharm and other manufacturers of generic pharmaceutical products each seeks, by filing an Abbreviated New Drug Application ("ANDA"), approval from the Food and Drug Administration ("FDA") to market tablets which contain ticlopidine hydrochloride. In its application, [*3] pursuant to statute, Genpharm certified that it would not infringe plaintiffs' patent number 4,591,592 ("'592 patent"), the patent pertaining to ticlopidine hydrochloride listed by plaintiffs in the FDA publication "Approved Drug Products with Therapeutic Equivalence Evaluations," commonly known as the "Orange Book." The Orange Book lists FDA-approved drug products and corresponding patent information supplied by a drug manufacturer upon filing a New Drug Application ("NDA"). See *21 U.S.C. § 355*(j)(7).

On March 18, 1998, Roche and Syntex commenced this action against Genpharm and seven other generic pharmaceutical manufacturers alleging that the process by which ticlopidine hydrochloride was made for use in their generic tablets infringed the '756, '945, '360, '090, '953, and '910 Syntex patents. See n.1. In particular, plaintiffs were concerned with the synthetic pathways used to make the chemical. On April 2, 1998, plaintiffs filed a first amended complaint which withdrew their claims related to the '756 and '945 patents. Before the seven generic pharmaceutical manufacturers, other than Genpharm, filed their answers, they provided informa-tion to plaintiffs [*4] which demonstrated that the ti-clopidine hydrochloride in their respective products was made by a process outside the scope of the Syntex pat-ents. Roche and Syntex voluntarily dismissed their amended complaint against those seven manufacturers without prejudice pursuant to *Fed. R. Civ. P. 41(a)(1)*.

On June 19, 1998, Genpharm filed an amended an-swer and counterclaims. Through its five counterclaims, Genpharm sought (1) a declaratory judgment of non-infringement with regard to the '360, '090, '953, and '910 Syntex patents, (2) a declaratory judgment of non-infringement as to two expired patents, the '756 and '945 patents, which had been asserted in plaintiffs' original complaint and withdrawn, (3) a declaratory judgment of non-infringement of the '592 patent, (4) a declaration of unenforceability of the six patents initially asserted in plaintiffs' original complaint due to plaintiffs' alleged bad faith and filing of sham litigation for anti-competitive purposes, and (5) treble damages for plaintiff's initiation of this litigation in bad faith and for anti-competitive purposes.

Through discovery, plaintiffs learned that Gen-pharm's process for producing ticlopidine hydrochloride is outside [*5] the scope of the '360, '090, '953, and '910 Syntex process patents. Plaintiffs moved to voluntarily dismiss their complaint without prejudice against Gen-pharm pursuant to *Fed. R. Civ. P. 41(a)(2)*. On June 8, 1999, the Court allowed plaintiffs to drop their case against Genpharm and dismissed all but two of Gen-pharm's counterclaims--the fourth counterclaim for pat-ent misuse and the fifth for unfair competition.

Specifically in its discussion of Genpharm's counter-claims, the Court addressed whether plaintiffs' suit against Genpharm was "objectively baseless." See *Hoff-mann-La Roche v. Genpharm, Inc., 50 F. Supp. 2d 367, 378* (D.N.J. June 8, 1999) ("Genpharm I"). The Court determined that if plaintiffs filed "sham litigation" in an attempt to "interfere directly with the business relation-ship of a competitor" they would not be immune from suit under the Noerr-Pennington doctrine. See *id. at 379-80:*

The resolution of the question whether plaintiffs' suit is objectively baseless as to Genpharm involves the determination of whether plaintiffs undertook a reasonable investigation before filing suit, whether plaintiffs knew or should have [*6] known that Genpharm had not infringed the Syntex process patents, and whether a reasonable litigant could have realistically expected success on the merits at the time the suit was filed. Reasonableness is a question of fact, and the Court cannot make such factual determinations on a factual controversy roiled by a motion to dismiss. Plaintiffs' motion to dismiss Genpharm's fourth and fifth counterclaims on the basis of Noerr-Pennington immu-nity is denied.

## ANALYSIS

### Standard

[HN1] Patent cases are not immune to summary judgment motions. The Federal Circuit has "repeatedly emphasized that 'summary judgment is as appropriate in a patent case as any other.'" *Avia Group Int'l, Inc. v. L.A. Gear California, 853 F.2d 1557, 1561 (Fed. Cir. 1988).* [HN2] Summary judgment is appropriate where the mov-ing party establishes that "there is no genuine issue of fact and that [it] is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56.* A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).* [*7] A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. See *id. at 248.* The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See *Celotex v. Catrett, 477 U.S. 317, 318, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).*

[HN3] The party opposing a motion for summary judgment must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. See *Sound Phillip Ship Bldg. Co. v. Bethlehem Steel Co., 533 F.2d 96, 99 (3d Cir. 1976),* cert. denied, *429 U.S. 860, 50 L. Ed. 2d 137, 97 S. Ct. 161 (1976).* [HN4] At the summary judgment stage the court's function is not to weigh the evidence and de-termine the truth of the matter, but rather to determine

2000 U.S. Dist. LEXIS 8128, *

whether there is a genuine issue for trial. See *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).* And, [*8] the court must construe the facts and inferences in the light most favorable to the non-moving party. See *Wahl v. Rexnord, Inc. 624 F.2d 1169, 1181 (3d Cir. 1980).*

Plaintiffs now move for summary judgment to dismiss Genpharm's fourth counterclaim for patent misuse on the ground that the patent infringement action was not "sham litigation" filed with an anticompetitive purpose. They also move for summary judgment on Genpharm's fifth counterclaim for state law unfair competition because there is no evidence that Genpharm's confidential information was misappropriated.

*Sham Litigation*

[HN5] A claim for patent misuse includes "bringing suit to enforce a patent with knowledge that the patent is invalid or not infringed, and the litigation is conducted for anticompetitive purposes." *Genpharm I, 50 F. Supp. 2d at 378.* Plaintiffs here repeat their argument that their suit was not "objectively baseless" and the claim for patent misuse is barred by the Noerr-Pennington doctrine. n2 See, e.g., *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60, 113 S. Ct. 1920, 1928, 123 L. Ed. 2d 611 (1993).* For [*9] support, plaintiffs say that they conducted reasonable pre-suit investigation by (a) asking Genpharm for tablet samples and a description of the synthetic pathway used to make their ticlopidine hydrochloride; (b) contacting foreign suppliers of the chemical for samples and other information; (c) analyzing tablets received by three other former defendants in an attempt to "reverse engineer" the medicine to discover the process of making ticlopidine hydrochloride. Only after these efforts proved unsuccessful did they file infringement suits.

n2 See *Genpharm I, 50 F. Supp. 2d at 379-81,* for a detailed discussion of the doctrine.

Genpharm disputes plaintiffs' contention that they conducted reasonable pre-suit investigation. Genpharm posits that: (1) plaintiffs did not reverse engineer Genpharm tablets, only those of other defendants; (2) Genpharm offered to provide plaintiffs with samples but plaintiffs "deliberately rejected" the offer; and (3) the chemical analyses of others' tablets was not [*10] detailed enough to reveal whether they potentially infringed plaintiffs' products. Genpharm adds that: (4) plaintiffs only sued Genpharm "for the sake of completeness" because it did not "look[] at Genpharm by itself" only "in combination with others;" (5) plaintiffs misidentified the nature of their request for samples in pre-suit communi-

cations so Genpharm could not effectively cooperate; (6) plaintiffs brought suit on two patents that they knew or should have known were invalid; and (7) plaintiffs have a habit of bringing baseless patent suits here and in Canada.

Plaintiffs respond that (a) their attempts to reverse engineer generic tablets were fruitless so there was no need to obtain samples from Genpharm; (b) Genpharm refused to disclose the synthesis method of ticlopidine hydrochloride; (c) Genpharm fails to mention that the suits on the two invalid patents were withdrawn within two weeks of filing the complaint (on plaintiffs' own initiative); (d) pre-suit communications consistently mentioned plaintiffs' need to know the method of synthesis of ticlopidine hydrochloride; (e) Genpharm did not plead, and the magistrate judge denied its request to add, any claims based on a [*11] purported pattern of bringing baseless suits; and (f) New Jersey unfair competition law covers only misappropriation of trade secrets and should not be expanded to include claims based on baseless and harassing suits.

*Pre-Suit Testing*

[HN6] Some standards have developed for analysis of what degree of pre-suit investigation is required. For example, more investigation is warranted when the facts are publicly available as opposed to when they are under the exclusive control of the potential opposing party. See *S.A. Auto Lube, Inc. v. Jiffy Lube Int'l, Inc., 842 F.2d 946, 949 (7th Cir.1988),* overruled in part on other grounds, *Mars Steel Corp. v. Continental Bank, N.A., 880 F.2d 928 (7th Cir.1989)* (en banc) (as to standard of review). Additionally, reasonable steps should be taken to conduct a chemical analysis of a patented product if conclusive results are "practically obtainable" without additional court-ordered discovery. See *Cambridge Prods., Ltd. v. Penn Nutrients, Inc., 962 F.2d 1048, 1050-51 (Fed. Cir. 1992).*

Here Genpharm first claims that plaintiff merely tested generics' tablets for purity, not to discover the synthetic pathway [*12] for ticlopidine hydrochloride. Plaintiffs answer that "no technology is known to Roche which can determine whether or not these process patents [for the synthesis of ticlopidine hydrochloride] are infringed merely by testing the product itself." Reply Brf. at 5; Reply Brf. at 7 n.4 (detailing sections of deposition testimony that synthetic pathways could not be discovered in tests).

Genpharm has presented no facts which counter the conclusion of plaintiffs' scientists that they could not find any chemical marker or impurity that revealed the synthetic pathway--nor does Genpharm present any tests that these scientists could or should have done that would have revealed this pathway. Because Genpharm does not

counter plaintiffs' testimony that testing of other generics' products did not and could not reveal the required pathway, Genpharm's assertion that its tablets should have been tested is questionable. It is undisputed that the synthetic pathways were undiscoverable by testing. Under these circumstances, the Court accepts plaintiffs' conclusion that further testing would be "fruitless" as reasonable.

Genpharm next argues that plaintiffs' concerns were misidentified in pre-suit [*13] communications so that it could not cooperate fully in any investigation: Plaintiffs did not identify the six patents in suit and only identified one patent--the '592 patent--as being of interest. Brf. at 5. Plaintiffs counter that they clearly informed Genpharm of their primary concern, the synthesis of the ticlopidine hydrochloride used in Genpharm's tablets. A review of the correspondence exchanged by the parties indicates that in response to Genpharm's ANDA certification regarding the '592 patent, plaintiffs wrote for "certain information so that we can evaluate whether Genpharm's [tablets] would infringe a Roche patent." Vassil Dec. Ex. 3 (Feb. 20, 1998). Plaintiffs requested "the synthetic pathway used to produce the Genpharm ticlopidine HCl" and "Genpharm's method of manufacturing" the chemical. Vassil Dec. Ex. 3. Genpharm replied that the '592 patent did not claim a method of synthesizing the chemical, so any request for the synthetic pathway of Genpharm's ticlopidine hydrochloride was "unreasonable." "We can think of no legitimate purpose that would be served by voluntarily providing this highly proprietary and irrelevant information." Vassil Dec. Ex. 5 (Mar. 6, 1998). [*14]

The Court concludes that it is undisputed that as of February 20, 1998, Genpharm was on notice that plaintiffs were concerned that Genpharm's method of manufacturing the tablets and synthesizing the ticlopidine hydrochloride potentially infringed "a Roche patent." Vassil Ex. 3. Plaintiffs' failure to identify which patents were potentially infringed is not fatal to this conclusion as their letter requested both the synthetic pathway and the methods of manufacture. Although defendant had every right to object to the request, as indicated in the letter, the information was necessary for plaintiffs to determine whether their process patents were infringed by the manufacture of Genpharm ticlopidine HCl.

From the above, the Court concludes that Genpharm has not raised any issue of material fact as to whether plaintiffs conducted a reasonable pre-suit investigation. The record indicates that (1) the synthetic pathways for manufacture of ticlopidine hydrochloride could not be discovered through plaintiffs' pre-suit testing and (2) plaintiffs contacted Genpharm for more information on the manufacture/synthesis of the chemical used in Genpharm's tablets. Thus, the information to prevent an

[*15] infringement suit was solely in Genpharm's hands and Genpharm refused to reveal it before being compelled to do so through this suit.

*Other Arguments*

Genpharm further argues that the suit was objectively baseless because plaintiffs sued for infringement of two patents it knew or should have known were invalid. Plaintiffs respond that as soon as the invalidity was discovered, they withdrew these patents from suit (within two weeks of the filing of the original complaint). The Court finds that this misfiling was promptly corrected by plaintiffs' counsel through their own investigation. Such mistake will not support a finding that plaintiffs' suit was objectively baseless.

Genpharm's final argument that the suit was objectively baseless is directed at plaintiffs' allegedly unfounded assumption that Genpharm's method of synthesis infringed Roche's patents. Genpharm reasons that there exist many ways of synthesizing the chemical, the most common being methods not under Roche patents, and adds that even Roche does not synthesize ticlopidine hydrochloride by its own patented methods. Brf. at 8. At oral argument, plaintiffs acknowledged that alternate methods of synthesis exist. Parise [*16] Dep. at 172-174. Plaintiffs, however, reasserted their argument that in the absence of other information indicating non-infringing methods were used by the generics, it had to act to protect its process patents. Plaintiffs added that the only reason that Roche does not currently use its patented processes for synthesis is because the chemical can be purchased from abroad for less than it would cost Roche to manufacture it.

The Court concludes that it was not unreasonable for Roche to act to protect its patented processes even though other methods of synthesis exist. As said, Genpharm has not presented any evidence which suggests that plaintiffs had the ability to discover through pre-suit analysis which method, patented or unpatented, was used to produce the generics' tablets. In the absence of such data, the existence of alternate methods does not support a finding that the infringement action was filed carelessly.

*Pattern of Suits*

Genpharm urges this Court to apply a "relaxed" analysis of Noerr-Pennington immunity because when a company files "a pattern of baseless, repetitive claims . . . which leads the factfinder to conclude that the administrative and judicial processes [*17] have been abused" the mere fact that one suit had a reasonable basis should not immunize the wrongdoer from suit. See Brf. at 20-21 (citing *USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Constr. Trades Council, 31 F.3d 800, 810-11 (9th Cir.*

2000 U.S. Dist. LEXIS 8128, *

1994)); see also *California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510, 30 L. Ed. 2d 642, 92 S. Ct. 609 (1972).* Genpharm cites Advanced Micro Devices, Inc. v. Intel Corp., No. C-91-20451, slip. op. (N.D. Cal. Aug. 29, 1994), where the court applied a subjective standard to a motion to dismiss and wrote "increased threat to competition justifies a less stringent, subjective standard where a defendant is accused of bringing multiple lawsuits against competitors." Id. (opinion published in 449 PLI/PAT 457, 501 (June & July 1996)).

Plaintiffs reply that Genpharm never plead the existence of any other lawsuits and that the magistrate judge denied its request to amend its cross-complaint. According to plaintiffs, this decision "barred Genpharm from introducing these assertions into this lawsuit." Genpharm's current counterclaims do not contain any allegations that plaintiffs followed [*18] a pattern of initiating baseless, repetitive suits. Plaintiff adds that the Third Circuit has never adopted the Ninth Circuit's reasoning that a pattern of baseless suits is sufficient to overcome immunity.

In Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., the Supreme Court held that "[HN7] only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *508 U.S. at 60.* Genpharm argues that this threshold showing that a suit is objectively baseless is unnecessary when the patentholder engages in a pattern of bringing lawsuits. The Ninth Circuit so holds: USS-POSCO Indus. determined that when a "defendant is accused of bringing a whole series of legal proceedings" the inquiry is "whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival." *31 F.3d at 811.* The USS-POSCO holding is derived from a pre-Professional Real Estate decision where the Supreme Court held that a series of cases brought without regard to their merits can overcome immunity. *California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510, 92 S. Ct. 609, 30 L. Ed. 2d 642 (1972).* [*19] According to defendant, California Motor was not explicitly overruled by Professional Real Estate.

The Third Circuit, however, has not held that Professional Real Estate's "objective" standard is inapplicable in cases where a policy or pattern of suits is alleged. Even assuming that the Ninth Circuit's conclusion that California Motor Transport survived Professional Real Estate is appropriate, the Court cannot now rely on Genpharm's allegations.

As said, the counterclaims do not plead that Roche "has developed a plan and practice of suing virtually every company that attempts to market" ticlopidine hydrochloride. See Advanced Micro Devices, Inc. v. Intel Corp., No. C-91-20451, slip. op. (N.D. Cal. Aug. 29, 1994) (449 PLI/PAT at 501). Genpharm's attempt to add such an allegation was rebuffed and the magistrate judge's decision was not appealed. The Court will not allow Genpharm to amend its complaint by its memorandum of law in opposition to this motion for summary judgment.

*State Law Unfair Competition Claims*

The parties dispute the scope of Genpharm's fifth counterclaim for unfair competition. This Court wrote previously: "[HN8] The tort of unfair competition [*20] 'consists of the misappropriation of one's property by another.'" *Genpharm I, 50 F. Supp. 2d at 380.* Genpharm now contends that the tort of unfair competition is not so limited and "should encompass subjection to baseless and harassing suits." Brf. at 23 (citing *Coast Cities Truck Sales, Inc. v. Navistar Intern. Tran. Co., 912 F. Supp. 747, 786 (D.N.J. 1995)).* Plaintiffs object on the grounds that Genpharm did not ask the Court to reconsider its definition of the claim and "Genpharm is asking the Court to create new precedent." Reply Brf. at 13. Plaintiffs add that there is no evidence that they ever misappropriated information learned through this suit. See Vassil Dec. Ex. 6, at 256-62 (deposition testimony that information gained from generics was stored by plaintiffs in a sealed envelope in a segregated file).

[HN9] Regardless of the scope of the state law claim, Noerr-Pennington immunity extends to state law unfair competition claims. See *Cheminor Drugs Ltd. v. Ethyl Corp., 168 F.3d 119, 128-129 (3d Cir. 1999)* (state tort law claims based on same activity as federal antitrust claims are barred by Noerr-Pennington); *Bristol-Myers Squibb Co. v. IVAX Corp., 77 F. Supp. 2d 606, 616 (D.N.J. 2000).* [*21] The Court concludes that Genpharm's fourth counterclaim is barred by Noerr-Pennington immunity because plaintiffs' infringement suit was not objectively baseless. It follows then that Genpharm's fifth counterclaim under state unfair competition law is also barred.

## CONCLUSION

For the reasons discussed, plaintiffs' motion is granted.

William H. Walls, U.S.D.J.

3 May 2000

Dated

# EXHIBIT D

1997 U.S. Dist. LEXIS 13621, *; 44 U.S.P.Q.2D (BNA) 1195

**MARK A. RAINES; GREGORY A. DEENEY; PRESTON BINDING COMPANY,
Plaintiffs, v. SWITCH MANUFACTURING, Defendant. AND RELATED THIRD-
PARTY CLAIMS**

**No. C-96-2648 DLJ**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA**

*1997 U.S. Dist. LEXIS 13621; 44 U.S.P.Q.2D (BNA) 1195*

**July 28, 1997, Decided
July 28, 1997, Filed**

**DISPOSITION:** [*1] Plaintiff's motion to dismiss defendant's counterclaims GRANTED and defendant's affirmative defenses stricken with leave to amend.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patent holders filed motions for the dismissal of defendant manufacturer's counterclaims, pursuant to Fed. R. Civ. P. 12(c), (b)(6), and to have the manufacturer's affirmative defenses stricken under Fed. R. Civ. P. 12(c), (f), in the patent holders' claim to enforce their patent.

**OVERVIEW:** The manufacturer asserted multiple grounds for counterclaims and affirmative defenses in the patent holders' claim to enforce a patent. The patent holders argued for the dismissal of the manufacturer's patent misuse affirmative defense and counterclaim. The court held that a claim to enforce patent rights could not give rise to an action for patent misuse and that the manufacturer failed to provide a factual basis for the allegation that the patent holders knew that the patent was invalid or unenforceable when they filed their action. Neither the manufacturer's affirmative defense nor its counterclaim listed any facts upon which the court could have concluded that the claims brought by the patent holders were filed in bad faith. The manufacturer's counterclaim for unfair competition under Cal. Civ. Code § 17200 et seq. was essentially identical to the patent misuse claim and failed for the same reason. The manufacturer's defenses, which alleged estoppel and unclean hands, were dismissed with leave to amend to conform to the Fed. R. Civ. P. 8 requirement of a short and plain statement of the defense sufficient to put the patent holders on notice of the allegations against them.

**OUTCOME:** The court dismissed the manufacturer's counterclaims for patent misuse and unfair competition, but granted leave to amend.. The court struck the manufacturer's affirmative defenses of patent misuse, promis-sory estoppel, and unclean hands, but granted leave to amend.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment*
*Civil Procedure > Early Pretrial Judgments > Judgment on the Pleadings*
[HN1] Under Fed. R. Civ. P.12 (c), after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Fed. R. Civ. P. 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
*Civil Procedure > Early Pretrial Judgments > Judgment on the Pleadings*
[HN2] Fed. R. Civ. P. 12(b)(6), 12(c) are virtually interchangeable. Under either provision, a court must determine whether the facts alleged in the complaint entitle the plaintiff to a legal remedy. In appraising the sufficiency of the complaint the court follows the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. If the complaint fails to articulate a legally sufficient claim, the complaint should be dismissed, or judgment granted on the pleadings. Generally, a court may consider only allegations made in the complaint; extrinsic factual material may not be taken into account. However, materials properly attached to a complaint as exhibits may be considered for purposes of Fed. R. Civ. P. 12(b)(6). If the attached docu-

1997 U.S. Dist. LEXIS 13621, *; 44 U.S.P.Q.2D (BNA) 1195

ments contradict the allegations in the complaint, a court may dismiss the claims under Rule 12(b)(6).

*Civil Procedure > Summary Judgment*
*Civil Procedure > Early Pretrial Judgments > Judgment on the Pleadings*
[HN3] Fed. R. Civ. P. 12(c) and supporting case law indicate that if matters outside the pleadings are presented to and not excluded by the court, the motion for judgment on the pleadings is converted into a Fed. R. Civ. P. 56 summary judgment motion. The fact that such extrinsic material was submitted to the court does not automatically convert a motion for judgment on the pleadings into one for summary judgment. It must appear that the court relied on the extrinsic evidence in reaching its conclusions before that conversion occurs.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Strike*
[HN4] Fed. R. Civ. P.12(f) provides that a court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

*Patent Law > Infringement Actions > Defenses > Misuse*
*Patent Law > Inequitable Conduct > Burdens of Proof*
[HN5] Under *35 U.S.C.S. § 271*(d), a patent owner cannot be denied relief or found guilty of misuse simply by reason of seeking to enforce his or her patent. Therefore, the crux of this defense is that a plaintiff knew the patent was invalid or unenforceable at the time it filed its action seeking enforcement. In addition, a party asserting a defense of patent misuse must show that the patentee has impermissibly broadened the physical or temporal scope of the patent with anticompetitive effect.

*Patent Law > Infringement Actions > Defenses > Misuse*
*Patent Law > Ownership > Conveyances > Licenses*
*Patent Law > Infringement Actions > Infringing Acts > Contributory, Indirect & Induced Infringement*
[HN6] Congress has precluded certain conduct from forming the basis of a patent misuse defense: 1) deriving revenue from acts which if performed by another without his consent would constitute contributory infringement of the patent; (2) licensing or authorizing another to perform acts which if performed without his consent would constitute contributory infringement of the patent; (3) seeking to enforce his patent rights against infringement or contributory infringement; (4) refusing to license or use any rights to the patent; or (5) conditioning the license of any rights to the patent or the sale of the patented product on the acquisition of a license to rights in another patent or purchase of a separate product, unless,

in view of the circumstances, the patent owner has market power in the relevant market for the patent or patented product on which the license or sale is conditioned. *35 U.S.C.S. § 271*(d).

*Patent Law > Inequitable Conduct > General Overview*
*Patent Law > Infringement Actions > Defenses > Misuse*
[HN7] Given the specific exceptions to patent misuse provided by Congress in *35 U.S.C.S. § 271*(d), a defendant must plead more than a conclusory allegation of patent misuse in order to provide fair notice of the nature of the defense. A defendant must state how the plaintiff has attempted to overbroadly and impermissibly construe its patent such as to cause an anticompetitive effect, and the defendant must provide some factual basis for the allegation that plaintiff knew the patent was invalid or unenforceable when plaintiff filed the action.

*Patent Law > Infringement Actions > Defenses > Misuse*
[HN8] A defendant alleging patent misuse in a suit brought to enforce a patent must provide some factual basis for the allegation that plaintiff knew the patent was invalid or unenforceable when plaintiff filed the present action.

*Torts > Intentional Torts > Abuse of Process & Malicious Prosecution*
[HN9] In order to prevail on a malicious prosecution action brought under California law, a plaintiff must show not only that the litigation was brought without probable cause, but also that the litigation concluded in plaintiff's favor.

**COUNSEL:** For MARK A. RAINES, GREGORY A. DEENEY, PRESTON BINDING COMPANY, Plaintiffs: John E. Daniel, Rogers & Wells, New York, NY. Katharine Livingston, Folger Levin & Kahn LLP, San Francisco, CA.

For SWITCH MANUFACTURING, defendant: Robert R. Riggs, Katzoff & Riggs, Berkeley, CA. Todd A. Lorenz, Haverstock Medler & Carroll, San Francisco, CA. David L. Just, Lucas & Just, New York, NY.

For SWITCH MANUFACTURING, Counter-claimant: David L. Just, Lucas & Just, New York, NY. Robert R. Riggs, Katzoff & Riggs, Berkeley, CA. Todd A. Lorenz, Haverstock Medler & Carroll, San Francisco, CA.

For GREGORY A. DEENEY, MARK A. RAINES, Counter-defendants: John E. Daniel, Rogers & Wells, New York, NY. For PRESTON BINDING COMPANY, Counter-defendant: John E. Daniel, Rogers & Wells,

1997 U.S. Dist. LEXIS 13621, *; 44 U.S.P.Q.2D (BNA) 1195

New York, NY. David L. Just, Lucas & Just, New York, NY.

**JUDGES:** D. Lowell Jensen, United States District Judge

**OPINIONBY:** D. Lowell Jensen

**OPINION:**

### ORDER

On June 11, 1997, the Court heard arguments on plaintiff's motion to dismiss defendant's counterclaims and to strike defendants' affirmative [*2] defenses. John E. Daniel appeared on behalf of plaintiff and counterdefendants Mark A. Raines, Gregory A. Deeney and third-party defendant Ride, Inc. Virginia S. Medlen appeared on behalf of defendant and counterclaimant Switch Manufacturing. Having considered the arguments of counsel, the papers submitted, the applicable law, and the record in this case, the Court hereby GRANTS plaintiff's motion to dismiss defendant's counterclaims and to strike defendant's affirmative defenses with leave to amend.

### I. BACKGROUND

A. Factual Background and Procedural History

This patent infringement action was originally filed by plaintiffs Mark A. Raines, Gregory A. Deeney, and Preston Binding Co. ("Preston") in the United States District Court for the Southern District of New York in April of 1996. Plaintiffs allege that defendant Switch Manufacturing ("Switch") is infringing United States Patent No. *4,973,073* (the " *'073* patent"), which was issued to Raines and Deeney on November 27, 1990. Plaintiffs further allege that at the time this suit was filed, an agreement existed by which Preston would acquire an interest in the patent at a future date upon the occurrence of conditions [*3] precedent. n1

> n1 Plaintiffs argue that because the agreement is not material to this suit, they need not present the Court with a copy of it.

Both Switch, and Preston's parent company Ride, Inc. ("Ride") are in the business of developing and producing snowboards, boots and bindings for snowboards, and related products. Plaintiffs maintain that defendant's product, Autolock, a "step-in binding system" for snowboards, infringes on the *'073* patent.

In response, Switch alleges in its answer that in May of 1995 "Ride approached Switch with a request for a licensing agreement, as well as boots and bindings for

testing." Amended Answer at P 10. Defendant further alleges that talks then ensued regarding a proposed merger between Ride and Switch, but that Switch eventually declined Ride's merger offer.

Following Switch's decision not to merge with Ride, Switch alleges, Ride's CEO, James Slater contacted Switch by telephone, asserting that Switch's Autolock product infringed on the *'073* patent. Defendant then responded [*4] to Ride in writing that Switch's patent counsel had reviewed Ride's allegations of infringement and found them to be unfounded. Switch alleges that on January 22, 1996 it "invited Ride to submit any analysis which might have been performed by Ride's patent counsel which reached a contrary conclusion." Id. at P 14. Switch apparently received no reply to this communication. Switch states in its amended answer that it then "engaged in a substantial private offering in an effort to raise sufficient capital to meet rapidly escalating production demands and to support further research and development to improve Switch's proprietary technology. Id. at 15. The instant infringement action was then filed by Raines, Deeney and Preston on April 2, 1996.

After plaintiffs filed their action in the Southern District of New York, defendant filed a declaratory judgment action against Preston and Ride in this district and requested that the New York action be transferred to this district. Defendant alleges that plaintiffs and Ride made inconsistent arguments to the New York and Northern California courts regarding the ownership of the *'073* patent. According to the defendant, Preston maintained [*5] in New York that it had a present interest in the *'073* patent while in San Francisco Ride and Preston "vigorously asserted that ownership of the *'073* patent was solely with Raines and Deeney, neither of whom had been named as parties." n2 Opposition to Motion to dismiss at 2: 18-19.

> n2 The Court is not currently in possession of the papers submitted to Judge Orrick in the previous Northern California litigation, and none of the parties has seen fit to provide them.

The Northern California action was stayed by Judge Orrick while the New York Court determined whether its case should be transferred to this district. When it was decided that the New York action would be transferred, it was agreed that defendant would dismiss its pending declaratory judgment action, amending its answer in the New York action to add Ride as a third-party defendant. n3 The transferred case was then assigned to this Court, and defendant amended its answer.

1997 U.S. Dist. LEXIS 13621, *; 44 U.S.P.Q.2D (BNA) 1195

n3 The parties refer to Ride as a counterde-fendant. However, as Ride was not a party to the original action against Switch, it is more properly termed a third-party defendant.

[*6]

In its amended Answer, defendant raised a number of affirmative defenses and brought a number of counterclaims against plaintiffs and third-party claims against Ride. On April 22, 1997, plaintiffs and third-party defendant Ride moved to dismiss a number of defendant's counterclaims under *Federal Rules of Civil Procedure 12(c)* and *12(b)(6)* and to strike several of defendant's affirmative defenses under Federal Rules 12(c) and 12(f).

B. Legal Standard

1. Motions for Judgment on the Pleadings

[HN1]
Under *Federal Rule of Civil Procedure 12 (c)*,

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

[HN2] Rules 12(b)(6) and 12(c) are virtually interchangeable. See William W. Schwarzer et al., California Practice Guide; Federal Civil Procedure, [*7] § 9:319. Under either provision, a court must determine whether the facts alleged in the complaint entitle the plaintiff to a legal remedy:

In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).* If the complaint fails to articulate a le-

gally sufficient claim, the complaint should be dismissed, or judgment granted on the pleadings.

Generally, a court may consider only allegations made in the complaint; extrinsic factual material may not be taken into account. *Powe v. Chicago, 664 F.2d 639, 642 (7th Cir. 1981).* However, materials properly attached to a complaint as exhibits may be considered for purposes of Rule 12(b)(6). *Amfac Mortg. Corp. v. Arizona Mall of Tempe, Inc., 583 F.2d 426, 429 & n.2 (9th Cir. 1978); see Fed. R. Civ. P. 10(c)* ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.")

If the attached documents contradict [*8] the allegations in the complaint, a court may dismiss the claims under Rule 12(b)(6). See *Durning v. First Boston Corp., 815 F.2d 1265 (9th Cir.), cert. denied, 484 U.S. 944 (1987)* ("[Attached] documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim."); see also *Nishimatsu Constr. Co. Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)* (dismissing claim under Rule 12(b)(6) where plaintiffs alleged in complaint that corporate officer signed agreement in personal capacity and the attached agreement revealed signature was made in corporate capacity).

[HN3] Rule 12(c) itself and supporting case law indicate that if matters outside the pleadings are presented to and not excluded by the court, the motion for judgment on the pleadings is converted into a Rule 56 summary judgment motion. See Schwarzer, supra, § 9:339; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).* The fact that such extrinsic material was submitted to the court does not automatically convert a motion for judgment on the pleadings into one for summary judgment. [*9] It must appear that the court relied on the extrinsic evidence in reaching its conclusions before that conversion occurs. *Homart Dev. Co. v. Sigman, 868 F.2d 1556 (11th Cir. 1989).*

2. Motion to Strike

[HN4] *Federal Rule of Civil Procedure 12(f)* provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

**II. ARGUMENTS**

A. Patent Misuse

Plaintiffs and third-party defendant Ride (collectively, "the moving parties") argue that defendant's patent misuse affirmative defense must be stricken and that defendant's patent misuse counter-claim must be dis-

1997 U.S. Dist. LEXIS 13621, *; 44 U.S.P.Q.2D (BNA) 1195

missed. Because plaintiffs are merely bringing suit to enforce a valid patent, they argue, defendant is not permitted to allege patent misuse.

In *Advanced Cardiovascular Systems Inc. v. Sci Med Systems, Inc., 1996 U.S. Dist. LEXIS 11702, 40 U.S.P.Q.2D (BNA) 1291, 1294 (N.D. Cal. 1996)* (Jensen, J.) this Court held the following:

> . . . [HN5] Under *35 U.S.C. § 271*(d), a patent owner cannot be denied relief or found guilty of misuse simply by reason of seeking to enforce his or her patent. Therefore, the crux of this defense is that [plaintiff] knew the patent was [*10] invalid or unenforceable at the time it filed this action. In addition, a party asserting a defense of patent misuse must "show that the patentee has impermissibly broadened the 'physical or temporal scope' of the patent with anticompetitive effect." *Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995, 1001* (Fed. Cir. 1986 (citations omitted), cert. denied, *477 U.S. 905, 91 L. Ed. 2d 565, 106 S. Ct. 3275 (1986)*. Through amendments to the Patent Statute in 1988, [HN6] Congress has precluded certain conduct from forming the basis of a patent misuse defense:

> > (1) deriving revenue from acts which if performed by another without his consent would constitute contributory infringement of the patent; (2) licensing or authorizing another to perform acts which if performed without his consent would constitute contributory infringement of the patent; (3) [seeking] to enforce his patent rights against infringement or contributory infringement; (4) refusing to license or use any rights to the patent; or (5) conditioning the license of any rights to the patent or the sale of the patented product on the acquisition of a license to rights in another patent or purchase of a separate product, unless, in view of the circumstances, [*11]

> > the patent owner has market power in the relevant market for the patent or patented product on which the license or sale is conditioned.

> *35 U.S.C. § 271*(d). [HN7] Given the specific exceptions to patent misuse provided by Congress, defendant must plead more than a conclusory allegation of patent misuse in order to provide fair notice of the nature of the defense. Defendant must state how plaintiff has attempted to overbroadly and impermissibly construe its patent such as to cause an anticompetitive effect, and defendant must provide some factual basis for the allegation that plaintiff knew the patent was invalid or unenforceable when plaintiff filed the present action.

The moving parties argue that this decision should govern their current motion to dismiss. Because this Court has found that a suit to enforce patent rights cannot give rise to an action for misuse of patent, they argue, the patent misuse affirmative defense must be stricken and the patent misuse counterclaim dismissed.

Switch admits that "[a] patent owner who merely seeks to enforce its patent rights against infringement or contributory infringement does not commit patent misuse." Opposition at 5: 3-4. [*12] However, Switch argues that where a patent infringement suit is brought in bad faith, it may give rise to a patent misuse claim: "the bringing of a lawsuit to enforce legal rights does not of itself constitute violation of the antitrust laws or patent misuse; there must be bad faith and improper purpose in bringing the suit, in implementation of an illegal restraint of trade." *Glaverbel Societe Anonyme v. Northlake Marketing & Supply Inc., 45 F.3d 1550, 33 U.S.P.Q.2D (BNA) 1496, 1501 (Fed. Cir. 1995)* citing *American Tobacco Co. v. United States, 328 U.S. 781, 809, 90 L. Ed. 1575, 66 S. Ct. 1125 (1946)* (holding that otherwise lawful acts, when done to give effect to conspiracy to restrain trade, are forbidden).

What defendant fails to acknowledge, however, is what this Court held in Advanced Cardiovascular, namely that [HN8] "defendant must provide some factual basis for the allegation that plaintiff knew the patent was invalid or unenforceable when plaintiff filed the present action." The Court finds that defendant has failed to meet that standard. Defendant's Fourth Affirmative Defense states in its entirety:

1997 U.S. Dist. LEXIS 13621, *; 44 U.S.P.Q.2D (BNA) 1195

On information and belief, Preston and its parent Ride, Inc. . . . have sought to acquire and enforce [the '073 patent] [*13] for the sole and improper purpose of forcing defendant to sell its business and/or novel and commercially successful technology to Preston and/or Ride. The conduct of both Preston and Ride constitutes an impermissible broadening of the physical scope of [the '073 patent] with anticompetitive effect, is an improper exercise of a patent owner's statutory rights, and constitutes patent misuse.

Similarly, at paragraph 23 of its patent misuse counterclaim, defendant states:

The assertions of patent infringement by Plaintiff Preston and Conterdefendant Ride against Defendant Switch are without justification, and constitute a bad faith attempt to harass and intimidate a smaller competitor having a superior product, to interfere with the sales of its products, and were strategically timed so as to disrupt Switch's ongoing private offering and to impede their efforts to raise additional capital for increased production and development. The conduct of Preston and Ride constitutes an impermissible broadening of the physical scope of patent rights with anticompetitive effect, is an improper exercise of a patent owner's statutory rights, and constitutes patent misuse.

Needless [*14] to say, neither the affirmative defense nor the counterclaim lists any facts upon which the Court could conclude that the claims brought by the plaintiff were in fact brought in bad faith.

Therefore, defendant's patent misuse counterclaim is hereby dismissed with leave to amend. Because, "the same rules governing pleading complaints generally apply to pleading affirmative defenses in the answer," the patent misuse affirmative defense is also stricken. William W. Schwarzer, et al., California Practice Guide, Federal Civil Procedure Before Trial, P8:237 (citations omitted). Defendant is granted leave to amend in order to establish a factual basis for its allegation that plaintiffs brought this action in bad faith, knowing that the patent

upon which they were suing was unenforceable as a matter of law. With regard to third-party defendant Ride, which did not join in the patent infringement suit against Switch and does not assert an ownership interest in the '073 patent, Switch must establish what conduct it believes gives rise to a patent misuse cause of action.

B. Unfair Competition

Defendant also brings a counterclaim for Unfair Competition under California Civil [*15] Code Section 17200, et seq. Plaintiffs and counterdefendant argue that this claim is deficient for a number of reasons.

1. Duplication

The moving parties argue that, because the Unfair Competition cause of action defendant brings is essentially identical to its patent misuse claim, it too should be dismissed for failure to establish a factual basis for the allegations of bad faith. Examining the two counterclaims, it appears to the Court that they are virtually identical, differing only in that they state the elements of different causes of action. However, defendant argues that the Unfair Competition claim is based on facts not alleged in the patent misuse counterclaim. For example, defendant argues that the former claim is based on the fact that at the time the instant action was filed, neither Preston nor Ride owned the patent sued on, and that the moving parties "rushed to Court after almost four months of silence to disrupt Switch's private offering and deplete Switch's financial resources." Opposition at 10: 8-10. However, as they are currently pled, the two counterclaims are essentially identical and the Unfair Competition claim fails for the same reason the patent [*16] misuse claim fails.

2. Noerr-Pennington

The moving parties also argue that under Federal law, a litigant is protected from liability based on the fact of litigation, unless his opponent can establish that the litigant's case is a sham. See, e.g., *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 5 L. Ed. 2d 464, 81 S. Ct. 523 (1961); United Mine Workers v. Pennington, 381 U.S. 657, 14 L. Ed. 2d 626, 85 S. Ct. 1585 (1965); California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 30 L. Ed. 2d 642, 92 S. Ct. 609 (1972).*

Although it was originally applied only to federal causes of action, federal courts have applied the so-called Noerr-Pennington doctrine to state law causes of action as well. See, e.g., *Gen-Probe, Inc. v. Amoco Corp., 926 F. Supp. 948, 956 (S.D. Cal. 1996)* (agreeing with "the majority of courts who have considered the is sue . . . that Noerr immunity bars any claim, federal or state,

1997 U.S. Dist. LEXIS 13621, *; 44 U.S.P.Q.2D (BNA) 1195

common law or statutory, that has as its gravamen constitutionally-protected petitioning activity.").

Defendant argues that Noerr-Pennington does not apply to bad faith litigation or pre-litigation threats to sue. As discussed above, however, plaintiff has alleged no facts to show that this suit was brought [*17] in bad faith. Furthermore, if a bare allegation of bad faith litigation were sufficient to defeat the Noerr-Pennington bar, every claimant would be able to avoid the intent of the Supreme Court merely by alleging bad faith on the part of the party seeking to enforce the patent.

3. California Law

Finally, plaintiffs argue that under California law the only civil action which may be brought against a litigant for conduct during litigation is malicious prosecution. See *Silberg v. Anderson, 50 Cal. 3d 205, 215-16, 266 Cal. Rptr. 638, 786 P.2d 365* (finding that "the only exception to application of [the Civil Code Section providing immunity from suits based on litigation] to tort suits has been for malicious prosecution actions."). Furthermore, [HN9] in order to prevail on a malicious prosecution action brought under California law, a plaintiff must show not only that "the litigation was brought without probable cause," but also that the litigation concluded in plaintiff's favor. Id. Needless to say, malicious prosecution cannot be pled in an answer, either as an affirmative defense or as a counterclaim, as the result of the litigation will not have been decided at the time for the filing of an answer. [*18]

4. Conclusion

It appears to the Court that defendant's Unfair Competition claim must be dismissed with leave to amend. As it is currently pled, the Unfair Competition cause of action is identical to the patent misuse counterclaim and therefore fails for the same reason the patent misuse claim fails. In addition, to the degree that the Unfair Competition cause of action is based on the bringing of the current suit to enforce the '073 patent, the claim is barred by both state and federal law. Therefore, defendant's claim is dismissed with leave to amend. If defendant wishes to replead this claim, it must state a claim which is both not identical to patent misuse claim and is not based on the bringing of this litigation.

C. Unclean Hands and Estoppel Affirmative Defenses

Plaintiffs and third-party defendant argue that the estoppel and unclean hands affirmative defenses asserted in the answer are duplicative of the patent misuse and Unfair Business Practice claims and fail to give fair notice of the conduct complained of. As defendant points out in its opposition, the moving parties are attempting to have

it both ways; they are arguing both that they have not been [*19] informed of what conduct is alleged and that the conduct alleged is the same conduct charged in defendant's other claims.

Nonetheless, it appears to the Court that defendant is correct with regard to notice. Reading the answer, it is difficult to comprehend what conduct of the plaintiffs or third-party defendant might bow estop or otherwise foreclose their current action. Although in its opposition to the motion to dismiss defendant argues that its estoppel claim is based on plaintiffs' silence regarding the alleged infringement and defendant's subsequent decision to initiate a private offering, this is not at all clear from the pleadings. Therefore, the fifth and sixth affirmative defenses, alleging estoppel and unclean hands, are hereby dismissed with leave to amend in order to permit defendant to conform with *F.R.C.P. 8*'s requirement of a "short and plain statement" of the defense sufficient to put plaintiffs and third-party defendant on notice of defendant's allegations.

D. Remaining Claims Against Ride

Third-Party defendant Ride argues that the remaining claims against it, for declaratory judgment of patent non-infringement and for patent invalidity and unenforceability [*20] should also be dismissed. Because the underlying infringement action is brought not by Ride but by Ride's subsidiary, Preston, Ride argues, defendant's patent-based claims are improperly brought against third-party defendant.

Ride responds that it is not at all clear who owns the patent and that Ride and Preston have argued conflicting versions of the patent's ownership. However, the Court concludes that as there has been no allegation that Ride owns the patent in question and because Ride has not brought a patent-infringement action Ride is immune to defendant's patent-based claims brought. Therefore, those claims are hereby DISMISSED with leave to amend as to third-party defendant Ride. Defendant may replead these claims against Ride only if it can allege that Ride has an ownership interest in the '073 patent.

E. Bifurcation

Plaintiffs and third-party defendant argue that, if defendant's patent misuse and unfair competition counterclaims survive this motion to dismiss, the Court should bifurcate the proceedings, staying discovery on defendant's claims until the patent infringement and validity issues are resolved. While defendant does not object to the bifurcation of [*21] the proceedings, it argues that staying discovery on its claims would unnecessarily delay the proceedings.

1997 U.S. Dist. LEXIS 13621, *; 44 U.S.P.Q.2D (BNA) 1195

However, as defendant's patent misuse claims have been dismissed with leave to amend, the Court determines that any decision regarding bifurcation would be premature. The Court therefore defers ruling on the moving parties motion for bifurcation, pending receipt of defendants' amended answer.

### III. CONCLUSION

For the reasons discussed above, the Court hereby rules as follows:

a) Defendants' patent misuse counter-claim is hereby dismissed and defendants' patent misuse affirmative defense is hereby stricken. However, defendant is given leave to amend its answer in order to allege a factual basis for its claim of bad faith litigation.

b) Defendants' Unfair Competition counterclaim is hereby dismissed with leave to amend. Defendant is given leave to amend its answer in order to plead an Unfair Competition claim not based on the process of litigation.

c) Defendants' promissory estoppel and unclean hands claims are hereby dismissed with leave to amend. Defendant is given leave to amend in order to indicate what conduct of plaintiffs and counter-defendant forms the basis of [*22] defendant's claims.

d) The other patent-based claims brought by defendant are hereby dismissed with leave to amend as to third-party defendant Ride. Defendant is given leave to amend its answer in order to allege that Ride has an ownership interest in the *'073* patent.

e) Defendant shall file an amended answer no later than August 27, 1997.

IT IS SO ORDERED.

Dated: July 28, 1997

D. Lowell Jensen

United States District Judge