IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APPLERA CORPORATION, MDS INC., and APPLIED BIOSYSTEMS/MDS SCIEX INSTRUMENTS,<br><br>    Plaintiffs/Counterclaim-Defendants,<br><br>vs.<br><br>THERMO ELECTRON CORPORATION,<br><br>    Defendant/Counterclaim-Plaintiff. | Civil Action No: 04-1230 -- GMS<br><br>**JURY TRIAL DEMANDED** |

**THERMO ELECTRON CORPORATION'S REPLY
IN FURTHER SUPPORT OF ITS MOTION
FOR LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIMS**

Defendant and Counterclaim-Plaintiff Thermo Electron Corporation ("Thermo") submits this Reply in further support of its motion for an order granting leave to file an Amended Answer and Counterclaims ("Motion").

AB/Sciex's Opposition implicitly concedes that Thermo's Motion was timely and that AB/Sciex will sustain no prejudice if the Motion is granted. The sole ground for opposition is purported futility. However, Thermo has plead all of the necessary elements of patent misuse, its allegations will if proven at trial support that defense, and AB/Sciex is merely attempting to argue prematurely its rebuttal to the defense. Thermo respectfully suggests that a decision regarding the merits of these arguments must be left for trial, and that the present Motion should be granted.

1

### 1. The Proposed Amendment Properly Pleads Patent Misuse.

As pleaded in Thermo's proposed amended pleading ("Proposed Amendment"), much of AB/Sciex's infringement case against Thermo is openly and obviously meritless. Those infringement claims depend on a patent scope that AB/Sciex itself has expressly, repeatedly, and unequivocally disclaimed, and that another judge from this Court has held does not exist. As such, those claims are brought by AB/Sciex in bad faith and with knowledge that they are without merit. AB/Sciex has had ample opportunity to drop these aspects of its claims, but has elected to pursue them with the anticompetitive goal of interfering with Thermo's mass spectrometer product lines. These circumstances give rise to a patent misuse claim.

In its Proposed Amendment, Thermo pleads all of the following facts with particularity (see Exhibit A, ¶¶ 27-55): in previous court and Patent Office proceedings, AB/Sciex represented unambiguously that the '736 patent does not cover mass spectrometer devices with certain features, including: (a) ion traps, (b) DC voltages between the rod means in the mass analyzer, and (c) PxL values of 1.76 or less. Additionally, Judge McKelvie ruled in a prior action involving the same patent that the '736 patent does not cover ion traps. Now, AB/Sciex has accused Thermo devices which undisputedly have these very same features. These accusations are thus made in bad faith and with knowledge that they are meritless. AB/Sciex's actions also have an anticompetitive effect because AB/Sciex is attempting to stifle competitors (including Thermo) from designing products. By accusing products that are obviously outside the conceded scope of its patent, AB/Sciex improperly creates the apprehension that non-infringing designs are nevertheless at risk of a lawsuit.

AB/Sciex argues that these pleaded facts fail to state a claim for patent misuse because "Thermo has not pled any facts which if proven true could establish that AB/Sciex sought to

enforce the '736 patent <u>with knowledge that Thermo does not infringe</u>." (Opposition, D.I. 48 at p. 6, emphasis added.) This contention is incorrect. As explained above (and pleaded in the Proposed Amendment), AB/Sciex has accused devices of infringing that contain the key features that AB/Sciex has previously disclaimed, and that the Court previously ruled are not covered by AB/Sciex's patent. AB/Sciex thus knows that these accused devices do not infringe.

While it is true that the Proposed Amendment does not expressly refer to AB/Sciex's "knowledge," the law does not elevate the phrase "knowledge that Thermo does not infringe" to the status of a magic incantation that must appear in a patent misuse claim. There is no substantive difference between alleging that AB/Sciex is bringing infringement claims against Thermo products which are of the type that AB/Sciex has disclaimed and that the Court has ruled are not infringing (which the Proposed Amendment does), and alleging that AB/Sciex "knows" that Thermo does not infringe. AB/Sciex knows what products it disclaimed, it knows what products the Court ruled are non-infringing, and it knows that Thermo's products are those kinds of products.

Indeed, Chief Judge Robinson's recent decision in <u>McKesson</u> suggests that pleading "bad faith" plus "anti-competitive effect" is interchangeable with pleading "knowledge"; in other words, the two methods of pleading are two ways of saying the same thing. <u>See McKesson Information Solutions LLC v. The Trizetto Group, Inc.</u>, 2005 WL 914776, at *2 & n.2 (D. Del. April 20, 2005) (claim pleaded that plaintiff "should reasonably know [the patent-in-suit] is invalid and not infringed"; court denied motion to strike that was premised on the argument that the claim was insufficient because it did not plead bad faith or anticompetitive effect).

AB/Sciex argues that a patentee may take inconsistent positions about the scope of its patent without necessarily committing patent misuse. (Opposition, D.I. 48 at pp. 10-11.) This

3

argument is essentially an academic one that the Court need not decide. AB/Sciex's positions are not merely "inconsistent," but instead are flatly contradictory of each other. Additionally, the "positions" at issue here are not those of AB/Sciex alone, but also relate to binding rulings of the Court. Moreover, Thermo does not contend that the contradictory positions are, by themselves, "patent misuse." It is AB/Sciex's decision to pursue claims in a lawsuit in bad faith that constitutes patent misuse. In other words, AB/Sciex is bringing infringement claims against products that it knows do not infringe its patent; AB/Sciex's contradictory positions are the evidence that prove this bad faith.

### 2. AB/Sciex has incorrectly stated the law.

a. Patent Misuse.

AB/Sciex cites two cases in support of its position: Advanced Cardiovascular and Raines. (Opposition, D.I. 48 at p. 6.) AB/Sciex has misinterpreted both cases.

In Advanced Cardiovascular, the plaintiff alleged that the patent-in-suit was "unenforceable under the doctrine of patent misuse" because plaintiff's delay in "procuring, and subsequently attempting to enforce, the '346 patent constitutes misuse of the patent laws and the legal process." Advanced Cardiovascular, Inc. v. Scimed Systems, Inc., 1996 U.S. Dist. LEXIS 11702, at *7-14 (N.D. Cal. July 24, 1996). Thus, the defendant in that case did not allege either prong of a patent misuse claim. To the contrary, the pleading was essentially a laches defense that defendant had mis-labeled as "patent misuse." Advanced Cardiovascular thus has nothing to do with the present case.

In Raines, the defendant alleged that the plaintiff committed patent misuse by enforcing the patent-in-suit "for the sole and improper purpose of forcing defendant to sell its business . . . [and in] a bad faith attempt to harass and intimidate a smaller competitor having a superior

product." Raines v. Switch Manufacturing, 1997 U.S. Dist. LEXIS 13621, at *12-14 (N.D. Cal. July 28, 1997). However, the defendant in Raines never alleged that the plaintiff was pursuing that alleged goal through a knowingly meritless infringement claim. Thus, Raines is also inapplicable to this case.

Finally, AB/Sciex's attempts to distinguish the two cases cited by Thermo (McKesson and Cummins) are unavailing. As in those cases, Thermo has pleaded that claims have been brought in bad faith; in fact, Thermo's Proposed Amendment contains substantially more detail and supporting facts than the pleadings in either McKesson or Cummins. The only differences are that McKesson used the term "know," Cummins used the term "belief," and Thermo has used the term "bad faith." Contrary to AB/Sciex's argument, these are not meaningful distinctions.

b. Notice Pleading.

Necessary to AB/Sciex's Opposition is its contention that notice pleading is insufficient to state a claim for patent misuse. AB/Sciex cites no authority for this proposition beyond dicta in Advanced Cardiovascular that was then quoted in Raines. By contrast, Chief Judge Robinson of this Court has specifically held that notice pleading is sufficient for a claim of patent misuse and that, "[i]n complex litigation, such as cases involving patent infringement, it is through the discovery process that the parties refine and focus their claims." McKesson, 2005 WL 914776, at *2 (denying motion to strike a patent misuse claim that was pleaded conclusorily).

Thermo has pleaded ample supporting facts in its Proposed Amendment, but this level of detail is optional. Thermo should not be "punished" because it went beyond the notice pleading requirements to include details of AB/Sciex's patent misuse.

c. Equitable Estoppel

AB/Sciex contends that the Proposed Amendment does not properly plead equitable estoppel because the element of reliance is not pleaded with particularity. (Opposition, D.I. 48 at pp. 12-13.) Initially, Thermo is aware of no requirement that this defense be pleaded with particularity, and AB/Sciex cites no authority for that proposition. Notably, AB/Sciex has not moved to strike any of the other equitable defenses that Thermo has pleaded in accordance with the standards of notice pleading. In any event, the Proposed Amendment does plead reliance with particularity. See Proposed Amendment ¶ 30 (alleging that patent misuse "has had and continues to have anticompetitive effect by preventing competitors from designing and selling mass spectrometers in an open and fair market place").[1]

### 3. AB/Sciex's attempt to argue the merits of the case is legally improper and factually wrong.

AB/Sciex admits that, for the purpose of Thermo's Motion, "the Court must accept as true all of the factual allegations in the [pleading] as well as the reasonable inferences that can be drawn from them." (Opposition, D.I. 48 at p. 3, internal quotation omitted.) Nevertheless AB/Sciex proceeds to argue against the Proposed Amendment on the ground that allegations in the Proposed Amendment are (allegedly) factually incorrect. The crux of AB/Sciex's argument is that its "inconsistent" positions are not as bad as they look. AB/Sciex's argument is a defense on the merits, but is not relevant to the Court's analysis at this stage of the proceedings. However, since AB/Sciex has improperly broached the subject, a brief rebuttal is warranted.

---

[1] With respect to the defense of unclean hands, AB/Sciex does not have an argument that is separate from its patent misuse argument. Hence, Thermo does not separately address its defense of unclean hands.

6

RLF1-2940224-1

a. Ion Traps.

AB/Sciex now asserts that it "only" disclaimed "3D" ion traps, whereas Thermo's accused device is a "linear" ion trap. (Opposition, D.I. 48 at p. 9.) This distinction between "3D" and "linear" ion traps is invented for the purposes of this lawsuit; AB/Sciex knows that it made no such distinction at the time of its numerous disclaimers. Indeed, AB/Sciex did not disclaim a particular type of ion trap; it disclaimed ion traps generally. Moreover, Judge McKelvie specifically ruled in the prior litigation that AB/Sciex had disclaimed ion traps, a fact that AB/Sciex omits from its argument. AB/Sciex's current argument is an attempt to revise history.

b. DC voltage "between the rod means."

The '736 patent requires a DC voltage "between the rod means" of the mass analyzer. Thermo's LTQ does not have a DC voltage "between the rod means." See Proposed Amendment ¶¶ 39-42.

AB/Sciex now contends that Thermo's LTQ "manuals" confirm AB/Sciex's "belief" that the LTQ does have a DC voltage "between the rod means." AB/Sciex's "belief" is a fabrication. Thermo's LTQ does not, and never has had, a DC voltage "between the rod means" and Thermo's manuals do not indicate to the contrary.

c. PxL value below that taught in the prior art.

The '736 patent requires that the PxL (pressure times length) value in a "first chamber" equal or exceed $2.25 \times 10^{-2}$ torr cm. The current version of the TSQ Quantum has a PxL value lower than the values that existed in the prior art which AB/Sciex expressly disclaimed. See Proposed Amendment ¶¶ 44-52.

AB/Sciex does not and cannot dispute any of these facts. Instead AB/Sciex argues that the "<u>first instrument</u> in the TSQ Quantum series" allegedly has an infringing PxL product. (Opposition, D.I. 48 at p. 9, emphasis added.) AB/Sciex's parsing is telling. Thermo would certainly accept AB/Sciex's stipulation that the current design of the TSQ Quantum does not infringe the '736 patent and is not at issue in this lawsuit. Such a stipulation would save substantial Court and party resources; however, AB/Sciex has made no such concession. Thus, AB/Sciex's allegation against the entire "TSQ Quantum series" is in bad faith.

d. <u>The breadth of the disclaimers.</u>

As a general "catch-all," AB/Sciex appears to argue that the Proposed Amendment fails to state a claim because AB/Sciex's disclaimers were not, in fact, as broad as characterized in the Proposed Amendment. (E.g., Opposition, D.I. 48 at p. 10, "AB/Sciex has not taken any positions which are inconsistent with any statements during prosecution or rulings during the Micromass litigation.") This is untrue. The disclaimers are listed in the Proposed Amendment and speak for themselves; it is patently evident that they are broad and unqualified.

Finally, AB/Sciex also attempts to dilute the allegations of the Proposed Amendment by asserting that the allegations merely "demonstrate that Thermo disagrees with AB/Sciex about the scope of the '736 patent." (Opposition, D.I. 48 at p. 9.)[2] AB/Sciex is, again, incorrect. The question is not the scope of the '736 patent per se, or Thermo's "belief" about that scope. Nor is the issue the precise meaning of "statements made by the patentee in the patent specification or during prosecution," as AB/Sciex contends. (Opposition, D.I. 48 at p. 11.) Rather the issue is

---

[2] See also Opposition, D.I. 48 at p. 2 ("The fact that Thermo contends that its products do not infringe because it disagrees with AB/Sciex about the scope of the patent does not differentiate this case from any other patent case.").

the bad faith of AB/Sciex in asserting a current scope of the patent that contradicts unqualified disclaimers by AB/Sciex to the Court and the Patent Office, and rulings by Judge McKelvie to which AB/Sciex is bound. The Proposed Amendment pleads these facts with particularity, and discovery and trial will bear out the truth of Thermo's allegations.

### 4. AB/Sciex's objections are cosmetic, and are easily cured by Thermo if the Court requires correction.

Even if the Court is inclined to agree with AB/Sciex's objection that the patent misuse is not pleaded with sufficient particularity, it should still permit Thermo to add a patent misuse claim. AB/Sciex's objections are cosmetic, and can be "cured" easily with only minor additions to the Proposed Amendment, which Thermo is perfectly prepared to allege. Attached as Exhibit B to this Reply Brief is a <u>Revised</u> Proposed Amendment which addresses AB/Sciex's objections by expressly including the language that AB/Sciex says (incorrectly) must be included. A pleading at this level of repetitive detail seems unnecessary, but Thermo will plead this additional language if the Court requires it. Notably, before filing the Motion, Thermo provided a copy of the Proposed Amendment to AB/Sciex's counsel. During the meet-and-confer process, AB/Sciex did not specify the nature of its opposition, other than to state conclusorily that the Proposed Amendment did not state a claim. Had AB/Sciex explained why it objected, Thermo could have made these "corrections" without involving the Court.

Specifically, Thermo proposes to add:

> a. language to the end of paragraph 29 of the Proposed Amendment expressly to allege that AB/Sciex is asserting the '736 patent against products that it "knows" do not infringe.

> b. language to the end of paragraph 30 expressly to allege "reliance," so as to address AB/Sciex's purported concern with respect to equitable estoppel.

  c. new paragraphs 43 and 54 expressly to allege that AB/Sciex has "actual knowledge" that Thermo's LTQ and TSQ Quantum products do not infringe.

See Exhibit B, Revised Proposed Amendment. These extra allegations provide the detail that AB/Sciex complains is missing from the current Proposed Amendment.[3]

### 5. Conclusion

For the reasons stated here and in its Opening Brief, Thermo respectfully requests that this Court enter an order granting leave to file the Amended Answer and Counterclaims attached hereto as Exhibit A (Proposed Amendment) or, alternatively in the Court's discretion, Exhibit B (Revised Proposed Amendment).

                 *Kelly E. Farnan*
                 Frederick L. Cottrell, III (#2555)
                 Cottrell@RLF.com

OF COUNSEL:           Kelly E. Farnan (#4395)
William F. Lee           Farnan@RLF.com
Wayne L. Stoner          Richards, Layton & Finger
Stephen M. Muller         One Rodney Square
Lauren B. Fletcher         920 N. King Street
Wilmer Cutler Pickering Hale and Dorr LLP  P.O. Box 551
60 State Street          Wilmington, DE 19899
Boston, MA 02109         Telephone (302) 651-7700
Telephone: (617) 526-6000       Attorneys for Thermo Election Corp.

October 31, 2005

---

[3] Notably, in the Raines case cited by AB/Sciex, the Court denied the motion to amend without prejudice, and granted the defendant leave to re-plead the omitted facts. Raines, 1997 U.S. Dist. LEXIS 13621, at *14.

10

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2005, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing, and hand delivered, to the following:

> Josy W. Ingersoll
> Adam W. Poff
> Young, Conaway, Stargatt & Taylor, LLP
> The Brandywine Building, 17th Floor
> 1000 West Street
> Wilmington, DE 19899

I hereby certify that on October 31, 2005, I sent the foregoing document by Federal Express to the following non-registered participant:

> Walter E. Hanley, Jr.
> James Galbraith
> Huiya Wu
> Kenyon & Kenyon
> One Broadway
> New York, NY 10004
>
> William G. James, II
> Fred T. Grasso
> Kenyon & Kenyon
> 1500 K Street N.W., Suite 700
> Washington, DC 20036

*Kelly E. Farnan*
Kelly E. Farnan (#4395)
(Farnan@RLF.com)

DATED: October 31, 2005