IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| APPLERA CORPORATION, MDS INC., and APPLIED BIOSYSTEMS/MDS SCIEX INSTRUMENTS,<br>　　　　Plaintiffs,<br><br>v.<br><br>THERMO ELECTRON CORP.,<br>　　　　Defendant. | ) ) ) ) ) ) ) ) ) ) | Civil Action No.: 04-1230 GMS |
| THERMO FINNIGAN LLC,<br>　　　　Plaintiff,<br><br>v.<br><br>APPLERA CORPORATION, MDS INC., and APPLIED BIOSYSTEMS/MDS SCIEX INSTRUMENTS,<br>　　　　Defendants. | ) ) ) ) ) ) ) ) ) ) ) | Civil Action No.: 05-110 GMS<br>**[Consolidated]** |

## NOTICE OF TAKING DEPOSITION OF DEFENDANTS PURSUANT TO RULE 30(B)(6)

PLEASE TAKE NOTICE that Plaintiff Thermo Finnegan LLC will take the oral

deposition of Defendants Applera Corp., MDS Inc., and Applied Biosystems/MDS Sciex

Instruments under Rule 30(b)(6) of the Federal Rules of Civil Procedure, on the topics set forth

in the attached Schedule A at a mutually agreeable date, time, and location to be determined.

The deposition will be conducted before an officer authorized by law to administer oaths,

and the testimony will be recorded stenographically and by videotape. The deposition shall

continue day to day until completed.

-1-

Pursuant to Rule 30(b)(6), each Defendant is required to designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf concerning the subject matters described in Schedule A, attached hereto.

*Kelly E. Farnan*

Frederick L. Cottrell, III (#2555)
Cottrell@RLF.com
Kelly E. Farnan (#4395)
Farnan@RLF.com
Richards, Layton & Finger
One Rodney Square
920 N. King Street
P.O. Box 551
Wilmington, DE 19899
Telephone (302) 651-7700
Attorneys for Thermo Election Corp.

OF COUNSEL:
William F. Lee
Wayne L. Stoner
Stephen M. Muller
Lauren B. Fletcher
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000

Date:  November 7, 2005

5364840-1
RLF1-2942632-1

## SCHEDULE A

### Definitions

1.  "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.  "Concerning" means relating to, alluding to, referring to, constituting, describing, discussing, evidencing, or regarding.

3.  "Document" is synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a) and shall be construed to mean, without limitation any written, printed, typed, stored, photostated, photographed, recorded or otherwise reproduced communication, compilation or reproduction including computer or electronically generated or stored information or data, whether assertedly privileged or not.  "Document" specifically includes all forms of electronic data.  A draft or nonidentical copy is a separate document within the meaning of this term.

4.  "Identify" when referring to a document, means to give, to the extent known, the (a) type of document; (b) general subject matter; (c) date of this document; and (d) author(s), addressee(s), and recipient(s).

5.  "Identify" when referring to a Person, means to give, to the extent known, the person's full name, present or last known address, country of citizenship, and, when referring to a natural person, the present or last known place of employment.  Once a Person has been identified in accordance with this subparagraph, only the name of that Person need be listed in response to subsequent discovery requests.

-1-

6.  "Identify" as used herein to apply to an oral communication shall mean to state the date and place of the communication, the substance thereof, and to identify all persons who participated in or heard the communication.

7.  "Thermo" means Thermo Finnigan LLC, its past or present officers, directors, principals, agents, employees, attorneys, representatives, partners, consultants, corporate parents, predecessors, subsidiaries, affiliates, divisions, or departments. its past or present officers, directors, principals, agents, employees, attorneys, representatives, partners, consultants, predecessors, subsidiaries, affiliates, divisions, or departments. "Thermo" includes without limitation Thermo Electron Corp.

8.  "AB/Sciex," "Defendants," "You," and "Your" means, both individually and collectively, Applera Corporation, MDS Inc., Applied Biosystems/MDS Sciex Instruments, their past or present officers, directors, principals, agents, employees, attorneys, representatives, partners, consultants, corporate parents, predecessors, subsidiaries, affiliates, divisions, or departments, including without limitation Applied Biosystems. To the extent that one defendant might provide different information on a Topic than another defendant, then such Topic should be read as addressed to each defendant individually.

9.  "Person" means any natural person, business, legal, or governmental entity or association and the officers, directors, employees, agents, consultants and attorneys thereof.

10. The term "Tang Patent" refers to U.S. Patent No. 6,528,784.

11. "License" or licensee" means and includes each and every sub-licensee or sub-license.

-2-

12. The term "Defendants' Accused Products" refers to (a) all versions (past, present, and in-development) of the API 5000 (b) any and all products including or incorporating such versions, and (c) any additional AB/Sciex product or service constituting or incorporating the same technology. This applies to all new products and new versions, and to any product using the same or similar technology.

13. The term "Additional Defendants' Product(s)" means each additional product that is sold with, offered for sale with, bundled with, installed with, incorporated with, promoted with, distributed with, or marketed with a Defendants' Accused Product.

14. The term "Defendants' Service(s)" means any and all services (e.g., repair contract, service contracts) that are sold with, provided with, and/or offered for sale with a Defendants' Accused Product.

-3-

### Topics for Examination

#### A. Defendants' Accused Products

1. By name, model number, and any other relevant designation, the identity of each Defendants' Accused Product, including each version thereof. This includes any AB/Sciex product that itself incorporates or includes a Defendants' Accused Product, such as being sold with, incorporated within, or attached to a Defendants' Accused Product. This includes without limitation each any every separate product identified in response to Thermo Interrogatory No. 1.

2. Separately for each product identified under Topic 1, the conception, development, design, engineering, operation, and programming of such product, including without limitation its software.

3. Separately for each Defendants' Accused Product, a detailed description of any differences from the first version of such product to each and every later version. This includes without limitation a detailed description of each and every change made to any Defendants' Accused Product as compared to any other Defendants' Accused Product.

4. Separately for each Defendants' Accused product, a detailed description of any differences between such product and the API 4000.

5. Separately for each Defendants' Accused Product, any and all modification(s) or change(s) made to the operation of such Product by or for any customer.

6. Separately for each Defendants' Accused Product, the instances and ways in which Defendants' customers set up, test, and/or use such Product. This includes without limitation all communications between Defendants and customers concerning the same.

7. Separately for each Defendant and each Defendants' Accused Product, the instances and ways in which each Defendant set up, test, and/or use such Product.

8. To the extent not covered by previous Topics, and separately for each Defendants' Accused Product, a detailed description of:
   - i. any and all declustering, fragmentation, and/or dissociation of ions that occurs before ions reach Q1.
   - ii. any and all voltage offsets on elements (e.g., walls, lenses, quadrupoles, etc.) preceding Q1.
   - iii. the extent to which any customer can or does alter the operation a Defendants' Accused Product so as effect items (i) or (ii).

9. Separately for each version of each Defendants' Accused Product, the identity by Bates number of documents sufficient to corroborate the testimony on Topics 1-8.

10. Separately for each version of each Defendants' Accused Product, the identity and location of documents (including electronic documents) that relate to Topics 1-8.

-4-

11. Separately for each Defendants' Accused Product, the role and involvement in the design of such product by each Person identified in response to Thermo Interrogatory Nos. 4 and 10.

12. The identity by Bates number, and an explanation of, the organizational charts of AB/Sciex that relate to Topics 1-8.

13. The business or financial relationship between and/or among Applera Corp., MDS Inc., and Applied Biosystems/MDS Sciex Instruments as it relates to the design and development of each version of each Defendants' Accused Product.

14. Separately for each version of each Defendants' Accused Product, the identity by Bates number of documents sufficient to corroborate the testimony on Topic 8.

15. The business or financial relationship between Defendants and any non-employee Person with respect to any product or service provided by or on behalf of such Person that concerns the design, engineering, operation, or programming of any Defendants' Accused Product.

16. A detailed description of any and all efforts by Defendants to change the design of any Defendants' Accused Product after learning of the Tang Patent. This includes without limitation any changes to any Defendants' Accused Product that Defendants made, are making, or contemplated making, after Defendants learned of the Tang Patent.

17. Any design around and/or alternative technology or method that could be used as a commercially viable alternative to the patented technology.

18. Separately for each Defendants' Accused Product, a detailed description of any analysis conducted concerning differences between such product and any Thermo products, including without limitation Thermo's TSQ Quantum and/or LTQ ion trap.

19. Separately for each Additional Defendants' Product, a basic description of the product, its purpose, and its operation.

20. Separately for each Defendants' Service, a basic description of the service and its purpose.

21. Separately for each Topic and for each Defendant, the identity of 3 Defendants' employees or former employees most knowledgeable about Topics 1-20.

**B. Sales and Marketing**

22. Additional details and explanation concerning the response to Thermo Interrogatory No. 5, including without limitation (a) the method by which Defendants' identified the accused

5364840-1
RLF1-2942632-1

products, and (b) the policies, procedures, practices, and conclusions of Defendants in calculating and accounting for unit sales, revenue, costs, and profit.

23. To the extent not duplicative of Topic 22, any policy or method of accounting relevant to the sale of any Defendants' Accused Product.

24. A general history of the development, sales, and marketing of all Defendants' mass spectrometer products and product lines (whether accused or not).

25. A history of Defendants' conduct and analysis in marketing, promoting, distributing, and/or pricing any product that constitutes or incorporates a Defendants' Accused Product. This includes without limitation:

> a. The non-sale distribution of each Defendants' Accused Products, for examples as betas, demos, or evaluations.
>
> b. Pricing decisions for list price, retail price, preferential pricing, discounting structures or schedules, OEM prices, volume discounts, and bundled pricing.
>
> c. The history of how each Defendants' Accused Product was "brought to market" including beta testing, market and pricing analysis, determination of product operation and characteristics, and distribution.
>
> d. Naming and/or branding decisions, including the decision to re-brand and/or re-name the API 4000.
>
> f. Overall marketing plans and strategies of Defendants that in any way relate to the Defendants' Accused Products.
>
> g. Business plans and forecasts for Defendants' Accused Products in particular and AB/Sciex mass spectrometers generally.
>
> h. Any and all description or analysis of the market for Defendants' Accused Products.
>
> i. The content and meaning of organizational charts of Defendants sufficient to show the organizational structure for marketing, sales, and pricing decisions.

26. The business or financial relationship between and/or among Applera Corp., MDS Inc., and Applied Biosystems/MDS Sciex Instruments as it relates to the marketing and sale of each version of each Defendants' Accused Product. This includes without limitation any or all

arrangements concerning the distribution of costs, revenues, and profits between or among the Defendants.

27. The actual and forecasted market share from January 1, 2003 to present of the API 4000, plus any and all Defendants' Accused Products, including without limitation the method of determining such market share.

28. Separately for the API 4000 and each Defendants' Accused Product, any analysis undertaken concerning competition from or with any Thermo Product.

29. Separately for the API 4000 and each Defendants' Accused Product, Defendants' projected revenues, projected costs, and projected profits, from January 1, 2003, to present, including Defendants' methods of projecting.

30. The identity, by Bates number, of documents sufficient to corroborate the testimony on Topics 22-29.

31. Separately for each Additional Defendants' Product, how such product is sold, offered for sale, promoted, distributed, and/or marketed with a Defendants' Accused Product.

32. Separately for each Defendants' Service, how such Service is sold, offered for sale, promoted, distributed, and/or marketed with a Defendants' Accused Product.

33.    Separately for each Additional Defendants' Product, and Defendants' Service, how Defendants account for the unit sales, revenue, costs, and profits of such product/service in conjunction with the unit sales, revenue, cost, and profits of each Defendants' Accused Product.

34.    Separately for each Topic and for each Defendant, the identity of 3 Defendants' employees or former employees most knowledgeable about Topics 22-33.

## C. Licenses

35. Defendants' customs, practices, and policies (whether formal or informal) for negotiating and entering patent licenses and cross-licenses (both "licensing-in" and "licensing-out").

36. Defendants' customs, practices, and policies (whether formal or informal) for negotiating and entering licenses and cross-licenses concerning mass spectrometers or technology related to mass spectrometers.

37. The identity, by Bates number, of any Defendants' license (license in or license out) that constitutes or concerns mass spectrometers or technology related to mass spectrometers.

38. Separately by year, the royalties and royalty rates paid and/or received on each license identified in Topic 37.

-7-

39. The identity by Bates number of all Licenses entered into by any Defendant.

40. Separately by year, the royalties and royalty rates paid and/or received on each license identified in Topic 39.

41. Any industry customs, practices, or policies with respect to licensing that Defendants' contend are relevant to this lawsuit.

42. Any negotiations, discussions, agreements, or contracts concerning the indemnification of any Person that relate in any way to any claim, counterclaim, or defense in this lawsuit.

43. Separately for each Topic and for each Defendant, the identity of 3 Defendants' employees or former employees most knowledgeable about Topics 35-42.

**D.  Business Relationships**

44. The nature and details of any agreement, contract, relationship, venture, or similar endeavor between or among Defendants that relates to the API 4000 and/or any Defendants' Accused Product, or that Defendants' otherwise contend is relevant to the claims and defenses of the parties.

45. The nature and details of any negotiation between or among Defendants or any other Person concerning Topic 44.

46. Separately for each Topic and for each Defendant, the identity of 3 Defendants' employees or former employees most knowledgeable about Topics 44-45.

**F.  Willful Infringement**

47. The individuals at AB/Sciex who first became aware of the Tang patent, how such awareness came about, and any action taken in response.

48. Any and all analysis, investigation, or discussion undertaken to determine infringement, validity, or enforceability of the Tang patent.

49. Any and all advice of counsel sought or received with respect to infringement, validity, or enforceability of the Tang patent.

50. Any and all communications to, from, or about any counsel referenced in Topic 49.

51. Any communications within or between any Defendant and/or their respective counsels, concerning Topics 47-50.

-8-

5364840-1
RLF1-2942632-1

52. Any policy, practice, or custom of Defendants that concerns investigating allegations of patent infringement.

53. Any policy, practice, or custom of Defendants that concerns becoming and/or staying informed about patents that issue in the field of mass spectrometry.

54. Separately for each Topic and for each Defendant, the identity of 3 Defendants' employees or former employees most knowledgeable about Topics 47-53.

5364840-1
RLF1-2942632-1

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2005, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing, and hand delivered, to the following:

> Josy W. Ingersoll
> Adam W. Poff
> Young, Conaway, Stargatt & Taylor, LLP
> The Brandywine Building, 17th Floor
> 1000 West Street
> Wilmington, DE 19899

I hereby certify that on November 7, 2005, I sent the foregoing document by Federal Express to the following non-registered participants:

> Walter E. Hanley, Jr.
> James Galbraith
> Huiya Wu
> Kenyon & Kenyon
> One Broadway
> New York, NY 10004
>
> William G. James, II
> Fred T. Grasso
> Kenyon & Kenyon
> 1500 K Street N.W., Suite 700
> Washington, DC 20036

*Kelly E. Farnan*

Kelly E. Farnan (#4395)
(Farnan@RLF.com)

DATED:    November 7, 2005