IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| APPLERA CORPORATION, MDS INC., and APPLIED BIOSYSTEMS/MDS SCIEX INSTRUMENTS, Plaintiffs, | ) ) ) ) ) | |
| v. | ) | Civil Action No.: 04-1230 GMS |
| THERMO ELECTRON CORPORATION, Defendant. | ) ) ) ) | |
| THERMO FINNIGAN LLC, Plaintiff, | ) ) ) ) | |
| v. | ) | Civil Action No.: 05-110 GMS |
| APPLERA CORPORATION, MDS INC., and APPLIED BIOSYSTEMS/MDS SCIEX INSTRUMENTS, Defendants. | ) ) ) ) ) ) | |

**THERMO'S ANSWERING BRIEF IN RESPONSE TO
AB/SCIEX'S MOTION TO STAY**

OF COUNSEL:

William F. Lee
Wayne L. Stoner
Richard Goldenberg
Stephen M. Muller
John M. Golden
Michael R. Dube
Lauren B. Fletcher
Wilmer Cutler Pickering Hale and Dorr
LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Dated: December 15, 2005

Frederick L. Cottrell, III  (#2555)
(Cottrell@RLF.com)
Kelly E. Farnan  (#4395)
(Farnan@RLF.com)
Richards, Layton & Finger
One Rodney Square
920 N. King Street
P.O. Box 551
Wilmington, DE  19899
(302) 651-7700

Attorneys for Thermo Finnigan, LLC
and Thermo Electron Corp.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

NATURE AND STAGE OF THE PROCEEDING ......................................................................1

SUMMARY OF THE ARGUMENT .......................................................................................1

STATEMENT OF FACTS ....................................................................................................1

ARGUMENT .....................................................................................................................2

    I.    AB/Sciex Has Only Moved For A Stay In Order To Gain A Tactical
        Advantage, Which Confirms That A Stay Is Not The Correct Or Efficient
        Outcome. .........................................................................................................2

    II.    AB/Sciex's Motion Ignores The Efficiencies That Would Be Lost If
        Thermo's Claim Is Stayed. ..............................................................................5

    III.    Reexamination and a Stay Are Not "Consequences" Of Thermo's
        Decision To Seek Reissue. ................................................................................7

    IV.    The PTO's Decision To Grant Reexamination Is Unremarkable And Not
        A Sign Of Invalidity. .......................................................................................9

    V.    Thermo Will Be Prejudiced If A Stay Is Granted. ..........................................12

    VI.    Under Settled Law, A Stay Is Not Warranted. ...............................................12

    VII.    At The Very Least, AB/Sciex's Motion Is Premature. ...................................14

CONCLUSION .................................................................................................................16

i

# TABLE OF AUTHORITIES

<u>Federal Cases</u>

*Agar Corp. v. Multi-Fluid, Inc.,*
  983 F.Supp. 1126 (S.D. Texas 1997).................................................................. 6

*Alloc, Inc. v. Unilin Décor N.V., Inc,*
  C.A. No. 03-253-GMS, 2003 U.S. Dist. LEXIS 11917 (D. Del. July 11, 2003)............... 12, 13

*Centillion Data Sys., LLC v. Convergys Corp.,*
  04-CV-0073-LJM-WTL, 2005 WL 2045786 (S.D. Ind. Aug. 24, 2005) .................................... 4

*Cognex Corp. v. Nat'l Instrums. Corp.,*
  C.A. 00-442-JJF, 2001 WL 34368283 (D. Del. June 29, 2001) ........................................... 4, 14

*Crown Ops. Int'l Inc. v. Solutia, Inc.,*
  289 F.3d 1367 (Fed. Cir. 2002)......................................................................... 11

*Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.,*
  3 U.S.P.Q. 2d 1889 (N.D. Ill. 1987) ................................................................... 14

*Freeman v. Minnesota Mining & Mfg. Co,*
  661 F.Supp. 886 (D. Del. 1987)....................................................................... 4, 5

*Gioello Enters, Ltd. V. Mattel, Inc.,*
  No. C.A. 99-375 GMS, 2001 WL 125340 (D. Del. Jan. 29, 2001) .................................... 12, 13

*Gladish v. Tyco Toys, Inc.,*
  Civ. No. S-92-1666WBS/JFM, 1993 WL 625509 (E.D. Cal. Sep. 15, 1993) ........................... 14

*Hamilton Indus., Inc. v. Midwest Folding Prods. Mfg. Corp.,*
  No. 89 C 8696, 1990 WL 37642 (N.D. Ill. Mar. 20, 1990) ................................................. 13, 14

*Imax Corp. v. In-Three, Inc.,*
  385 F.Supp.2d 1030 (C.D. Cal. 2005) ................................................................ 12, 14

*In re Fine,*
  837 F.2d 1071 (Fed. Cir. 1988)........................................................................ 11

*In re Jones,*
  958 F.2d 347 (Fed. Cir. 1992).......................................................................... 11

*In re Kotzab,*
  717 F.3d 1365 (Fed. Cir. 2000)........................................................................ 11

ii

*In re Laughlin Prods., Inc. Patent Litig.*,
   265 F.Supp.2d 525 (E.D. Pa. 2003) .................................................................... 9, 13

*Jain v. Trimas Corp.*,
   No. Civ. S-04-0889, 2005 WL 2397041 (E.D. Cal. Sep. 27, 2005) ........................................ 14

*Pegasus Dev. Corp. v. DirecTV, Inc.*,
   No. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003) ...................... 12, 13

*Remington Arms Co. v. Modern Muzzleloading, Inc.*,
   No. 2:97CV00660, 1998 WL 1037920 (M.D. N.C. Dec. 17, 1998)...................................... 4, 12

*Rosco, Inc. v. Mirror Lite Co.*,
   304 F.3d 1373 (Fed. Cir. 2002).................................................................... 10, 11

*Soverain Software, LLC v. Amazon.com, Inc.*,
   356 F.Supp.2d 660 (E.D. Texas 2005).................................................................... 7

*Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*,
   No. C-94-20775 RPA (EAI), 1995 WL 20470 (N.D. Cal. Jan. 13, 1995)................................. 13

*United Sweetner USA, Inc. v. Nutrasweet Co.*,
   766 F. Supp. 212 (D. Del. 1991) .................................................................... 13

*Xerox Corp. v. 3Com Corp.*,
   69 F.Supp.2d 404 (W.D.N.Y. 1999).................................................................... 4

Federal Statutes

35 U.S.C. § 251 .................................................................... 8

35 U.S.C. § 301 .................................................................... 8

35 U.S.C. § 303.................................................................... 8

35 U.S.C. § 305 .................................................................... 14

Other Authorities

United States Patent & Trademark Office, *Manual of Patent Examining Procedure*,
   § 2286 (8th ed. 2005) .................................................................... 15

RLF1-2958184-2

## NATURE AND STAGE OF THE PROCEEDING

Plaintiff Thermo Finnigan LLC ("Thermo") submits this Answering Brief in opposition to the motion by Defendants Applera Corporation, MDS Inc., and Applied Biosystems/MDS Sciex Instruments ("AB/Sciex") to stay one part of this consolidated patent infringement case ("Motion"). In the midst of the claim construction process for both patents-in-suit, AB/Sciex seeks to stay the infringement claim against it by Thermo, while the claim of infringement by AB/Sciex against Thermo's parent (Thermo Electron Corporation) proceeds.

## SUMMARY OF THE ARGUMENT

AB/Sciex's Motion to Stay should be denied because a stay would be inefficient for the Court and parties, and prejudicially unfair to Thermo. Litigation tactics appear to underlie the timing of the patent reexamination sought by AB/Sciex and this Motion, a fact which by itself is a basis to deny the Motion. Moreover, a stay would undo the very efficiencies the Court created by consolidation. At the very least, the Motion is premature, given that the reexamination will be conducted expeditiously and may well be over by the time of the consolidated trial.

## STATEMENT OF FACTS

On March 4, 2003, the United States Patent & Trademark Office ("PTO") issued United States Patent No. 6,528,784 ("the '784 patent") to Thermo. (D.I. 1, ¶ 9.) On February 23, 2005, Thermo responded to AB/Sciex's introduction of a new mass spectrometer that infringes the '784 patent, called the API 5000, by filing this action for infringement. (*Id.*, ¶ 10.) On March 4, 2005, Thermo filed a request with the PTO for a broadening reissue of the '784 patent, as permitted by statute, 35 U.S.C. § 251, within two years of issuance of the patent. (Attached as Exhibit A).

On April 13, 2005, AB/Sciex filed its Answer and Counterclaim, asserting that the '784 patent was invalid and seeking a declaratory judgment to that effect. (D.I. 9 ¶¶ 12, 22.) On April 27, 2005, the Court consolidated Thermo's claim against AB/Sciex with AB/Sciex's claim against Thermo's corporate parent, Thermo Electron Corporation. (Tr. of 4/17/05 Conference at 29.) On July 29, 2005, AB/Sciex filed a protest with the PTO regarding the reissue of the '784 patent. (Attached as Exhibit B.) In its Protest, AB/Sciex cited eight articles and four patents as alleged prior art over all claims of the '784 patent. (*Id.*) Later, on September 16, 2005, AB/Sciex filed a request for reexamination of the '784 patent with the PTO, suggesting that "substantial new questions of patentability" regarding the '784 patent were raised by some of the same prior art identified in its previously-filed Protest. (Attached as Exhibit C.) On November 4, 2005, the PTO granted AB/Sciex's request for reexamination, as the PTO does 91% of the time upon receiving such requests. (Attached as Exhibit D). On November 18, 2005, AB/Sciex filed its Motion to Stay Thermo's claim concerning the '784 patent. (D.I. 42.)

Substantial discovery and *Markman* briefing has already been completed. (*See* D.I. 44, 47.) A consolidated *Markman* hearing is scheduled for January 9, 2006. (D.I. 15, entered May 9, 2005.) Fact discovery is scheduled to close on March 17, 2006. (*Id.*) A trial is scheduled for December 4, 2006. (*Id.*)

## ARGUMENT

I.    **AB/Sciex Has Only Moved For A Stay In Order To Gain A Tactical Advantage, Which Confirms That A Stay Is Not The Correct Or Efficient Outcome.**

The timing of AB/Sciex's conduct suggests an attempt to gain tactical advantage. Most immediately, AB/Sciex appears to be trying to avoid the consolidated *Markman* hearing that has long been scheduled for the '784 patent (along with the patent asserted by AB/Sciex) on January

2

9, 2006, and in connection with which AB/Sciex has been taking inconsistent approaches to claim construction.[1]  Should AB/Sciex succeed in having Thermo's claim that it infringes the '784 patent stayed before claim construction, AB/Sciex will avoid having the Court confront such inconsistencies.

The chronology of events by itself demonstrates the tactical nature of this Motion. Thermo filed this suit on February 23, 2005.  AB/Sciex filed its Answer on April 13, 2005. AB/Sciex pleaded that the '784 patent was invalid, and sought a declaratory judgment to that effect.  (D.I. 9, ¶¶ 12, 22.)  Presuming that AB/Sciex pleaded in good faith, AB/Sciex thus had grounds to seek a reexamination no later than April 13, 2005.  However, AB/Sciex made no mention at the Initial Scheduling Conference on April 27, 2005, of any intent to seek reexamination or a stay.  Instead, AB/Sciex waited.  Indeed, AB/Sciex waited *five months* before it filed the reexamination request on September 16, 2005.

Meanwhile, on July 29, 2005, AB/Sciex filed a protest with the PTO regarding a reissue of the '784 patent that Thermo had earlier sought.  In the protest, AB/Sciex cited the *same art* that it would later cite in its request for reexamination (as well as two articles not cited in the reexamination request).[2]  As late as July 29, 2005, then, AB/Sciex was aware of the prior art in

---

[1]     For example, in its role as defendant, AB/Sciex seeks to construe the term "mass analyzer" from the '784 patent narrowly to require the inclusion of an ion detector on the grounds that a single figure in the specification shows a mass analyzer containing an ion detector.  (*See* AB/Sciex's Op. Claim Constr. Br., D.I. 44, at 60.)  In other words, it seeks to import a limitation from the specification into the claim in contravention of settled claim construction law.  As a plaintiff, on the other hand, AB/Sciex proposes a construction of the term "separated by a wall" in its patent that is contrary to its plain meaning and unlimited by the specification's clear and consistent drawings and descriptions of the separating wall as forming a common boundary between the mass spectrometer's two vacuum chambers.  (*Id.* at 14-17.)

[2]     On August 19, 2005, AB/Sciex also identified all of the references subsequently included in the reexamination request in response to interrogatories served by Thermo.  (Attached as Exhibit E.)

question and yet had still not decided to seek a reexamination or a stay. Indeed, it waited two full months after finally seeking the reexamination before moving for a stay.

This is not the behavior of a litigant that believes in its invalidity arguments. This is the behavior of a litigant that has, with the benefit of discovery and attention to claim construction issues, concluded that the claim of infringement it wants to present in its action on its patent plays better if it is not considered simultaneously with its defense on another patent.

An apparent motive of tactical delay is grounds for denying the requested stay. Courts are particularly wary of granting a stay where, as here, the movant delayed seeking reexamination even though it had identified the relevant prior art months earlier. *See Cognex Corp. v. Nat'l Instrums. Corp.*, C.A. 00-442-JJF, 2001 WL 34368283, * 2 (D. Del. June 29, 2001) (denying stay where party seeking stay had at least some of the documents it presented to the PTO in its request for reexamination for quite some time); *Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404, 407 (W.D.N.Y. 1999) (denying stay where fact that defendant was aware of the prior art it cited to the PTO in request for reexamination several months before filing that request was "evidence that the movant's request for a stay has at least some dilatory tactical motive behind it"); *Remington Arms Co. v. Modern Muzzleloading, Inc.*, No. 2:97CV00660, 1998 WL 1037920, *1, 3 (M.D. N.C. Dec. 17, 1998) (fact that defendant who sought stay was aware of prior art references cited in reexamination request three months before requesting reexamination was "most compelling reason for denying the stay"); *see also Centillion Data Sys., LLC v. Convergys Corp.*, 04-CV-0073-LJM-WTL, 2005 WL 2045786, *1 (S.D. Ind. Aug. 24, 2005) (denying stay where timing of defendant's request for reexamination "indicates that this request for a stay may be more of a dilatory tactic than one of necessity"); *Freeman v. Minnesota Mining & Mfg. Co.*, 661 F.Supp. 886, 888 (D. Del. 1987) ("To allow [defendant] to now use the

4

reexamination process to get this case stayed would be to allow a defendant to use the reexamination as a mere dilatory tactic."). It is just such improper tactical delay which is being attempted here.

## II. AB/Sciex's Motion Ignores The Efficiencies That Would Be Lost If Thermo's Claim Is Stayed.

AB/Sciex exaggerates the possible inefficiencies if Thermo's claim continues, but then ignores the efficiencies that are guaranteed to be lost if it is stayed. There was (and is) a reason for consolidation of the claims on Thermo's '784 patent and U.S. Patent No. 4,963,736 ("the '736 patent"), which AB/Sciex has asserted. The technologies at issue are the same, and the issues have a remarkable amount of overlap. There also is tremendous overlap in discovery. For example:

- The inventors of the '784 patent are also the designers of the TSQ Quantum series products that AB/Sciex accuses of infringing the '736 patent.

- The same documents that show the conception and reduction to practice of the '784 patent also show why the TSQ Quantum does not infringe the '736 patent.

- AB/Sciex's device accused of infringing the '784 patent is also a device that AB/Sciex contends embodies and performs the '736 invention.

- Each party created and produced a *single* document production that covered both patents.

Thus, there is substantial overlap of evidence, including witnesses, and documents. The legal issues currently briefed for the January 9, 2006 joint *Markman* hearing also overlap to a remarkable extent. The Court need only read the *Markman* briefs to observe this legal and

5

factual overlap. For example, Thermo's Opening Markman Brief devotes 15 pages to the common technology. (D.I. 47 at 1-15.)

The Court ordered consolidation so that the parties would have to engage in only one round of discovery, and so that the Court and jury would only have to learn this technology and this law once, not twice. Even AB/Sciex's counsel stated at the April 27, 2005 Initial Scheduling Conference that a purpose of a consolidated schedule was "to educate this jury only once on the technology." (Tr. of 4/27/05 Conference at 10).[3] However, if Thermo's '784 patent claim is stayed, it may well become permanently de-coupled from AB/Sciex's '736 patent claim, *guaranteeing* that the efficiencies described above will be lost. Where, as here, a reexamination would potentially invalidate only one of the patents at issue in a case, the most efficient course is to deny the stay. *See Agar Corp. v. Multi-Fluid, Inc.*, 983 F.Supp. 1126, 1127 (S.D. Texas 1997) (denying stay where PTO granted defendant's request for reexamination of only one of four asserted patents because even if the reexamined patent were found invalid, the remaining infringement claims might be unaffected).

Although AB/Sciex asserts that there will be inefficiency if the Motion is not granted since the PTO may do something in the reexamination that changes or moots an issue with respect to the '784 patent (AB/Sciex Br. at 2-3, 7-10), this alleged inefficiency is entirely uncertain and may never come to pass. Only the most unlikely of events – namely, a determination that the '784 patent is invalid (*see infra*, at 9-10) – would mean that, in retrospect,

---

[3]    The Court has not formally ordered a consolidated trial, but at the Initial Scheduling Conference indicated the inclination to do so absent a compelling reason to the contrary. (*See* Tr. of 4/17/05 Conference at 17 ("The way you should leave the room today is contemplating a joint trial . . . ."))

the Court and the parties had wasted some resources.[4] Assuming, *arguendo,* that the asserted claims merely undergo some alteration, the same documents regarding inventorship and the accused products still need to have been produced and reviewed; the inventors and the designers of the accused products still need to haven been deposed[5]; and damages issues still need to have been explored via document discovery and deposition. Any claim construction issues that might need to be revisited are likely to be discrete and require minimal resources, particularly in comparison to the work already expended by the parties and the Court.[6]

Thermo urges the Court to follow the course that has the best chance of maximizing efficiency and minimizing waste. *Cf. Soverain Software, LLC v. Amazon.com, Inc.,* 356 F.Supp.2d 660, 663 (E.D. Texas 2005) (denying defendant's motion for a stay and noting that, although some of the claims might change in the course of reexamination, "the interests of justice will be better served by dealing with that contingency when and if it occurs, rather than putting this case indefinitely on hold").

## III.    Reexamination and a Stay Are Not "Consequences" Of Thermo's Decision To Seek Reissue.

AB/Sciex argues that Thermo has no grounds to complain about a stay because Thermo somehow invited reexamination and a stay by seeking a reissue of the '784 patent, and that the

---

[4]    And, again, AB/Sciex's own conduct in delaying before seeking reexamination and stay evidences the unlikelihood that its invalidity arguments will be successful. *See supra,* at 2-4. Indeed, AB/Sciex's belated reexamination request is suggestive of a "nothing to lose" mentality with respect to its invalidity arguments as it is risking reaffirmation by the PTO of the validity of the '784 patent. Evidently AB/Sciex has determined that tactical delay is the most it can hope to accomplish with its invalidity arguments.

[5]    AB/Sciex's suggestion that the accused products might change is misleading. (*See* AB/Sciex Br. at 8.) There is only one product accused of infringing the '784 patent.

[6]    The vast majority of the parties' briefing to date has involved the '736 patent asserted by AB/Sciex. (*See* AB/Sciex Op. Claim Constr. Br. (D.I. 44) (40 pages on '736 patent terms; 21 pages on '784 patent terms); Thermo's Op. Markman Br. (D.I. 47) (15 pages on technology common to both patents; 38 pages on '736 patent terms; 11 pages on '784 patent terms).)

reexamination and stay are somehow the "consequence" of Thermo's decision to seek a reissue. AB/Sciex Br. at 10. This is not true; the reissue and the reexamination have nothing to do with each other.

Reissue is a proceeding for correcting a mistake in a patent, for example (as here) having claimed the invention too narrowly. For two years after the patent issues, patentees have a statutory right to seek a broadening reissue. 35 U.S.C. § 251. By contrast, a reexamination is a proceeding that allows the PTO to consider additional prior art. Anyone, including the patent owner or a third party, may seek a reexamination, which the PTO grants if it determines there is a "substantial new question of patentability." 35 U.S.C. §§ 301, 303.

A reissue does not "cause" or even suggest the need for a reexamination. The two are not logically or substantively related, let alone causally related as AB/Sciex suggests. One simply has nothing to do with the other. They are only connected by AB/Sciex's own conduct. Long after knowing about the reissue proceeding, AB/Sciex filed a protest in that proceeding but did not file a request for reexamination. Only later, did AB/Sciex file a request for reexamination.

AB/Sciex is also wrong that the reissue application for the '784 patent is connected to the present lawsuit. The filing of the suit was prompted by, and followed nearly immediately upon, AB/Sciex's introduction of the infringing product, the API 5000. The timing of Thermo's reissue filing was determined by the statutory deadline requiring that it do so for broadening of claims within two years of issuance of the patent – *i.e.*, by the very date it did file, March 4, 2005. The filing of the lawsuit and the reissue application at approximately the same time is a coincidence created by the timing of the introduction of AB/Sciex's infringing product. AB/Sciex's accusation that Thermo sought reissue "without notice" is also unfounded. Thermo notified AB/Sciex and asked for its permission to submit the pleadings and discovery responses

8

related to the validity of the '784 patent to the PTO as part of the reissue proceeding, given Thermo's duty to disclose material information it learns to the PTO. (*See* Letter from Muller to Ginsberg of July 5, 2005 (attached as Exhibit F).)

## IV.    The PTO's Decision To Grant Reexamination Is Unremarkable And Not A Sign Of Invalidity.

AB/Sciex greatly exaggerates the significance of the PTO's decision to grant a reexamination. The fact is that 91% of third-party reexamination requests are granted. *See* United States Patent & Trademark Office, *Ex Parte Reexamination Filing Data - March 31, 2005,* ¶ 5 (attached as Exhibit G). The order from the PTO, which AB/Sciex touts as "careful and detailed" (AB/Sciex Br. at 2) and "thorough . . . and soundly reasoned" (AB/Sciex Br. at 5), is not notably different from what the PTO issues in those 91% of cases. For example, in 1997, when AB/Sciex sought reexamination of the '736 patent, it received a very similar order from the PTO granting its request on the basis of a "substantial new question of patentability." (*See* Order Granting Request for Reexamination of '736 Patent (Attached as Exhibit H).) The PTO, however, affirmed the validity of the '736 Patent and permitted AB/Sciex to add new, dependent claims. (*See* Notice of Intent to Issue Reexamination Certificate) (attached as Exhibit I.)

Although a grant of reexamination occurs 91% of the time, the '784 patent is likely to emerge from reexamination unchanged in any respect material to this litigation. First, the grant of a reexamination does not "establish a likelihood of invalidity." *See, e.g., In re Laughlin Prods., Inc. Patent Litig.*, 265 F.Supp.2d 525, 534 (E.D. Pa. 2003) (cited in AB/Sciex Br. at 11). In only 10% of reexaminations are all claims of the patent cancelled. (Ex. G, ¶ 9b.) All claims of the patent are confirmed in 26% of reexaminations. (*Id.*, ¶ 9a.) In 64% of reexaminations, one or more claims change (*id.*, ¶ 9c), but this only means that *some* claim in the patent changes,

9

not that the entire patent or even most of its claims are affected, or that any change is material with respect to infringement claims in a co-pending lawsuit. Thermo has asserted only two of the patent's nine claims. Thermo has also elected not to assert the broadest claim of the patent, claim 3. In short, there is absolutely no basis to conclude that the two asserted claims of the '784 patent will be materially affected by the reexamination. AB/Sciex's prediction to the contrary (AB/Sciex Br. at 5, 9) is pure speculation that is at odds with the PTO's statistical record.

Second, although this is not the time to argue the validity of the '784 patent, AB/Sciex's repeated attempts to persuade the Court, erroneously, that the PTO examiner has already tentatively found for invalidity warrants a detailed response. First, AB/Sciex repeatedly asserts that the PTO found reasons to question the patentability of the '784 patent other than those raised by AB/Sciex in its request for reexamination. (*See* AB/Sciex Br. at 2, 4.) This is misleading. In its request for reexamination AB/Sciex listed various references that allegedly raise questions about the patentability of the '784 patent and then listed three references that it represented are "useful in so far as they provide a background for the technology at issue." (*See* Ex. C at 9.) The examiner then cited one of those "background" references, in combination with a patent that was before the examiner who allowed the '784 patent (Whitehouse '427), as raising a question of patentability. (*See* Ex. D at 3-4.) AB/Sciex's attempt to create a technical distinction between its asserted references and a proffered "background" reference should not mask the fact that the PTO's decision to grant reexamination is unremarkable. The examiner merely raised as a threshold question whether the element of the '784 patent not present in the Whitehouse '427 patent was, in fact, "inherent" in the Whitehouse '427 patent such that it would invalidate the '784 patent by anticipation. (*See id.*) Such an inherency argument is unlikely to lead to a finding that the '784 patent is invalid. *See, e.g. Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1380

10

(Fed. Cir. 2002) (inherency requires that the prior art "necessarily" and "inevitably" have all the limitations of the claim); *Crown Ops. Int'l Inc. v. Solutia, Inc.*, 289 F.3d 1367, 1377 (Fed. Cir. 2002) ("Inherency may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient."). The examiner then posited for examination whether a question of patentability was raised by the Whitehouse '427 patent in combination with the "background" reference, essentially an obviousness theory. (*See id.*) To establish obviousness, however, "there must be some motivation, suggestion or teaching of the desirability of making the specific combination" suggested. *See, e.g. In re Kotzab*, 717 F.3d 1365, 1370, 1371 (Fed. Cir. 2000) (reversing Board of Patent Appeals and Interferences' finding of obviousness in absence of such motivation); *In re Fine*, 837 F.2d 1071, 1074 (Fed. Cir. 1988) (same); *In re Jones*, 958 F.2d 347, 351 (Fed. Cir. 1992) (same). The examiner's order granting reexamination says nothing about whether such motivation – an essential finding for a determination of invalidity based on obviousness – exists.[7]

The difficulty in finding invalidity based on obviousness also affects virtually the entire remainder of the examiner's order. All of the questions of patentability discussed in the reexamination order are based on obviousness, save for those pertaining to Claim 3 (not asserted in this case) and the inherency theory discussed above. (*See* Ex. D at 4-6.)

This is not to say, of course, that Thermo is taking the reexamination lightly. The PTO has commenced a reexamination process, and Thermo intends to participate fully in explaining to the PTO why the '784 patent is entitled to emerge unchanged from the reexamination.

---

[7]    It bears noting that the Whitehouse '427 patent was reviewed extensively during the course of the prosecution of the '784 patent, as noted in the order granting reexamination. (*See* Ex. D at 2-3.)

11

**V.    Thermo Will Be Prejudiced If A Stay Is Granted.**

AB/Sciex repeatedly says that a stay would not prejudice Thermo, but this is not true. (*See* AB/Sciex Br. at 3, 10.) Thermo sued promptly upon the introduction of the AB/Sciex API 5000 and has a right to pursue its claim without undue delay. Any delay in its ability to stop AB/Sciex's infringement by definition prejudices Thermo. *See, e.g., Remington Arms*, 1998 WL 1037920 at * 2 (denying stay and noting that relief delayed by a stay may come at a time when an injunction "may no longer have value as technology or market conditions change").

If AB/Sciex were sincere in its assertion that a stay is not prejudicial to the patentholder, it would offer to stay its claim on the '736 patent until the reexamination of the '784 patent is over, so that the parties and the Court can continue to benefit from the efficiencies of consolidation. It has not done so, of course, because it wants to proceed on its own claim while stopping Thermo's claim against it. *Cf. Imax Corp. v. In-Three, Inc.*, 385 F.Supp.2d 1030, 1033 n.2 (C.D. Cal. 2005) (denying stay and declining "generous offer" by defendant to permit the court to stay only plaintiff's infringement claim and to let defendant's counterclaims go forward).

**VI.    Under Settled Law, A Stay Is Not Warranted.**

Thermo agrees that in some cases it makes sense to issue a stay pending a reexamination and that the matter rests in the Court's discretion. However, even under the case law cited by AB/Sciex, a stay is not warranted here. AB/Sciex correctly notes that prejudice and tactical disadvantage to the non-moving party weigh against granting a stay. (*See* AB/Sciex Br. at 6) (citing *Alloc, Inc. v. Unilin Décor N.V., Inc.*, No. 03-253-GMS, 2003 U.S. Dist. LEXIS 11917, *5 (D. Del. July 11, 2003); *Pegasus Dev. Corp. v. DirecTV, Inc.*, No. 00-1020-GMS, 2003 WL 21105073, *1 (D. Del. May 14, 2003); *Gioello Enters, Ltd. v. Mattel, Inc.*, No. C.A. 99-375

12

GMS, 2001 WL 125340, *1 (D. Del. Jan. 29, 2001); *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, No. C-94-20775 RPA (EAI), 1995 WL 20470, *1 (N.D. Cal. Jan. 13, 1995); *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991).)

None of the cases cited by AB/Sciex presents consolidated claims with substantial overlap of factual and legal issues involving competitors asserting competing patents against each other, where much discovery and *Markman* briefing have been completed yet the case also has a year to go until trial. The cases that AB/Sciex cites are readily distinguished on additional grounds as well. *See Alloc,* 2003 U.S. Dist. Lexis 11917 at * 3-6 (reexamination was initiated *before* infringement case and no discovery was scheduled); *In re Laughlin Prods.,* 265 F.Supp.2d at 527 ("unusual" case where plaintiff, not defendant, had initiated reexamination and had done so early in case before filing its first amended complaint)[8]; *Pegasus* 2003 WL 21105073 at * 1 ("extraordinary" context where plaintiffs had filed more than 300 related patents with an estimated 10,000 claims, all of which could become relevant to the litigation); *Gioello*, 2001 WL 125340 at * 1 & n.1 (defendant filed for stay prior to PTO's decision to grant reexamination and court had pending summary judgment motions before it that could be mooted by PTO); *Target Therapeutics,* 1995 WL 20470 at *1-2 (request for reexamination was granted before infringement suit was filed, case was only two months old, and there was no suggestion of dilatory tactics); *United Sweetener,* 766 F.Supp. at 216-218 (answers had not been filed on counts alleging inequitable conduct and invalidity related to patent-in-suit, patent had been rejected twice in reexamination already, and the party opposing the stay had initiated the reexamination); *Hamilton Indus., Inc. v. Midwest Folding Prods. Mfg. Corp.,* No. 89 C 8696,,

---

[8]    In *Laughlin,* the stay was of negligible significance because the court permitted limited discovery on infringement and validity to continue, allowing two depositions by each party and unlimited document discovery. *See* 265 F.Supp.2d at 538.

1990 WL 37642, *1 (N.D. Ill. Mar. 20, 1990). (defendant requested reexamination only two weeks after plaintiff filed suit); *Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, 3 U.S.P.Q. 2d 1889, 1891-92 (N.D. Ill. 1987) (granting stay where plaintiff's delay in scheduling depositions may have caused delay in defendant's filing of request for reexamination and defendant agreed not to contest issues decided by the PTO).

Finally, AB/Sciex has not made "a showing of a clear case of hardship or inequity [that would be caused by going forward]," which is required before courts will enter a stay. *See Jain v. Trimas Corp.*, No. Civ. S-04-0889, 2005 WL 2397041, * 3 (E.D. Cal. Sep. 27, 2005) (denying stay where plaintiff movant "presented no evidence of hardship or inequity in being required to go forward with the suit"); *Imax*, 385 F.Supp.2d at 1032 (denying stay and noting that movant must "make out a clear case of hardship or inequity"); *Cognex*, 2001 WL 34368283 at 1-2 (denying stay where movant failed to demonstrate a "clear case of hardship or inequity"); *Gladish v. Tyco Toys, Inc.*, Civ. No. S-92-1666WBS/JFM, 1993 WL 625509, * 3 (E.D. Cal. Sep. 15, 1993) (denying stay where movant had not set out a case of hardship). AB/Sciex has not even attempted to make such a showing, nor could it. In light of the numerous efficiencies to be gained by keeping these consolidated cases on the same track, hardship would only result if the Court *granted* AB/Sciex's motion for a stay, not if Thermo's claim goes forward.

## VII.   At The Very Least, AB/Sciex's Motion Is Premature.

Having waited this long to seek reexamination and a stay, AB/Sciex should be willing to wait longer. Trial is scheduled for December 4, 2006, approximately a year away. It is entirely conceivable that the reexamination will be over by the time of trial. By statute, reexaminations are to be conducted with "special dispatch." 35 U.S. § 305. Moreover, when the patent subject to reexamination is also the subject of litigation, reexamination is to be "expedited to the extent

possible." United States Patent & Trademark Office, *Manual of Patent Examining Procedure*, §
2286 (8th ed. 2005). Thermo has sought such treatment from the PTO. (*See* Communication of
Patent Owner in Response to Order Granting Ex Parte Reexamination of December 7, 2005
(attached as Exhibit J).) Further, Thermo has elected to forego its right to file a reply to
AB/Sciex's Request for Reexamination in an attempt to expedite the PTO proceedings. (*Id.*, ¶ 4.)
The PTO proceedings could be over before the scheduled trial; if so (and if there is no adverse
outcome that is material to this litigation as is likely), then a stay will have accomplished nothing
except to undo the efficient consolidation ordered by the Court.

  If the Court is not inclined to deny the Motion outright, Thermo requests that it deny the
motion without prejudice to renewal by AB/Sciex at a more appropriate time.

15

## CONCLUSION

The Court should neither condone AB/Sciex's litigation tactics nor forego the obvious efficiencies of the consolidation it has ordered. Thermo respectfully requests that the Court deny AB/Sciex's Motion to Stay Thermo's claim in this case.

*Kelly E. Farnan*

Frederick L. Cottrell, III (#2555)
Cottrell@RLF.com
Kelly E. Farnan (#4395)
Farnan@RLF.com
Richards, Layton & Finger
One Rodney Square
920 N. King Street
P.O. Box 551
Wilmington, DE 19899
Telephone (302) 651-7700
Attorney for Thermo Finnigan LLC
and Thermo Electron Corp.

OF COUNSEL:
William F. Lee
Wayne L. Stoner
Richard Goldenberg
John M. Golden
Stephen M. Muller
Michael R. Dube
Lauren B. Fletcher
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000

Dated: December 15, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2005, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing, and hand delivered, to the following:

> Josy W. Ingersoll
> Adam W. Poff
> Young, Conaway, Stargatt & Taylor, LLP
> The Brandywine Building, 17th Floor
> 1000 West Street
> Wilmington, DE  19899

I hereby certify that on December 15, 2005, I sent the foregoing document by Federal Express to the following non-registered participants:

> Walter E. Hanley, Jr.
> James Galbraith
> Huiya Wu
> Kenyon & Kenyon
> One Broadway
> New York, NY   10004
>
> William G. James, II
> Fred T. Grasso
> Kenyon & Kenyon
> 1500 K Street N.W., Suite 700
> Washington, DC  20036

_Kelly E. Farnan_
Kelly E. Farnan (#4395)
(Farnan@RLF.com)

DATED:   December 15, 2005