EXHIBIT A

LEXSEE 2005 US DIST LEXIS 22933

**HONEYWELL INTERNATIONAL INC., and HONEYWELL INTELLECTUAL PROPERTIES INC., Plaintiffs, v. AUDIOVOX COMMUNICATIONS CORP., AUDIOVOX ELECTRONICS CORPORATION, NIKON CORPORATION, NIKON, INC., NOKIA CORPORATION; NOKIA INC., SANYO ELECTRIC CO., LTD., and SANYO NORTH AMERICA CORPORATION, Defendants. HONEYWELL INTERNATIONAL INC., and HONEYWELL INTELLECTUAL PROPERTIES INC., Plaintiffs, v. APPLE COMPUTER, INC.: ARGUS A/K/A HARTFORD COMPUTER GROUP. INC.; CASIO COMPUTER CO., LTD.; CASIO, INC.; CONCORD CAMERAS: DELL INC.; EASTMAN KODAK COMPANY; FUJI PHOTO FILM CO., LTD.; FUJI PHOTO FILM U.S.A., INC.; FUJITSU LIMITED; FUJITSU AMERICA, INC.; FUJITSU COMPUTER PRODUCTS OF AMERICA, INC.; KYOCERA WIRELESS CORP.; MATSUSHITA ELECTRICAL INDUSTRIAL CO.; MATSUSHITA ELECTRICAL CORPORATION OF AMERICA; NAVMAN NZ LIMITED; NAVMAN U.S.A. INC.; OLYMPUS CORPORATION; OLYMPUS AMERICA, INC.; PENTAX CORPORATION; PENTAX U.S.A., INC.: SONY CORPORATION; SONY CORPORATION OF AMERICA; SONY ERICSSON MOBILE COMMUNICATIONS AB; SONY ERICSSON MOBILE COMMUNICATIONS (USA) INC.; TOSHIBA CORPORATION; and TOSHIBA AMERICA, INC., Defendants. OPTREX AMERICA, INC., Plaintiff, v. HONEYWELL INTERNATIONAL INC., and HONEYWELL INTELLECTUAL PROPERTIES INC., Defendants.**

**Civil Action No. 04–1337–KAJ, Civil Action No. 04–1338–KAJ, Civil Action No. 04–1536–KAJ**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2005 U.S. Dist. LEXIS 22933*

**May 18, 2005, Decided**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patent holders filed a patent infringement suit against defendants, manufacturers and their customers. The patent holders subsequently filed a motion for consolidation under *Fed. R. Civ. P. 42(a)*, a third party manufacturer filed a motion to intervene under *Fed. R. Civ. P. 24(a)*, a third party seller filed a motion to have its declaratory judgment suit against the patent holders tried first, and several defendants filed motions to stay.

**OVERVIEW:** The patent in question claimed a liquid crystal display (LCD) apparatus that provided enhanced brightness and clarity when compared to prior art LCDs. The patent holders' claims were brought against manufacturers of allegedly infringing LCDs and their customers who incorporated the LCDs into their consumer electronics. The court held: (1) the patent holders were entitled to consolidation with respect to their claims against defendant manufacturers because the claims involved common

questions of law and fact; (2) the third party manufacturer, which was the original manufacturer of allegedly infringing LCDs, was entitled to intervene because its interests would be affected by the disposition of the suit and were not adequately protected by existing parties; (3) the third party seller was entitled to proceed with its claims on a priority basis because the court had found that the dispute between the patent holders and defendant manufacturers should go forward first; and (4) the customers were entitled to a stay of the litigation, except with respect to certain limited discovery, because a stay would vastly simplify the issues and trial of the case against defendant manufacturers.

**OUTCOME:** The court granted the patent holders' motion for consolidation with respect to defendant manufacturers and with respect to pretrial activities concerning the customers, granted the seller's motion to intervene, granted the third party manufacturer's motion to proceed with its claims on a priority basis, and stayed the litigation against the customers except with respect to certain

Case 1:04-cv-01230-GMS    Document 84-2    Filed 01/12/2006    Page 3 of 35

Page 2
2005 U.S. Dist. LEXIS 22933, *

limited discovery.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Motion Practice Generally > Content & Format of Motions*
[HN1] See *Fed. R. Civ. P. 7(b)(1)*.

*Civil Procedure > Joinder of Claims & Parties > Intervention*
*Civil Procedure > Trials > Judicial Discretion*
[HN2] Motions to intervene are entrusted to the discretion of the court.

*Civil Procedure > Joinder of Claims & Parties > Intervention*
*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*
[HN3] An appeals court will reverse a district court's determination on a motion to intervene as of right if the court has abused its discretion by applying an improper legal standard or by reaching a conclusion that the appeals court is confident is incorrect.

*Civil Procedure > Joinder of Claims & Parties > Intervention*
[HN4] See *Fed. R. Civ. P. 24(a)*.

*Civil Procedure > Joinder of Claims & Parties > Intervention*
[HN5] *Fed. R. Civ. P. 24(a)* has been interpreted to require proof of four elements from an applicant seeking intervention as of right: (1) a timely application for leave to intervene; (2) a sufficient interest in the litigation; (3) a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action: and (4) inadequate representation of the prospective intervenor's interest by existing parties to the litigation.

*Civil Procedure > Trials > Consolidation of Actions*
*Civil Procedure > Trials > Judicial Discretion*
*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
[HN6] A district court generally has broad discretion when deciding whether to consolidate or stay proceedings.

*Civil Procedure > Trials > Consolidation of Actions*
[HN7] A trial judge, under *Fed. R. Civ. P. 42(a)*, is given the broad authority to make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

*Civil Procedure > Trials > Consolidation of Actions*
[HN8] See *Fed. R. Civ. P. 42(a)*.

*Civil Procedure > Trials > Judicial Discretion*
*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
[HN9] The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.

*Civil Procedure > Trials > Judicial Discretion*
*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
[HN10] When considering a motion to stay, a court considers the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set.

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
[HN11] The "customer suit exception" to the preference for allowing a first–filed action to proceed first is based on the manufacturer's presumed greater interest in defending its actions against charges of patent infringement.

**COUNSEL:** **[*1]** For Honeywell International Inc., Honeywell Intellectual Properties, Inc., Plaintiffs: Steven J. Balick, John G. Day, Ashby & Geddes, Wilmington, DE.

For Nikon Corporation, Defendant: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE; Barry M. Graham, Darren M. Jiron, Pro Hac Vice.

For Nikon Inc., Defendant: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE; William J. Marsden, Jr., Fish & Richardson, P.C., Wilmington, DE; Barry M. Graham, Darren M. Jiron, Pro Hac Vice.

For Nokia Corporation, Nokia Inc., Defendants: William J. Marsden, Jr., Tara D. Elliott, Fish & Richardson, P.C., Wilmington, DE.

For Sanyo Electric Co., Ltd, Sanyo North America, Defendants: Richard L. Horwitz, David Ellis Moore, Potter Anderson & Corroon, LLP, Wilmington, DE; Timothy J. Vezeau, Pro Hac Vice.

For Audiovox Electronics Corporation, Defendant: Paul A. Bradley, McCarter & English, LLP, Wilmington, DE.

2005 U.S. Dist. LEXIS 22933, *1

For Audiovox Communications Corp., Defendant: Matt Neiderman, Duane Morris LLP, Wilmington, DE.

For Seiko Epson Corporation, Defendant: Robert J. Katzenstein, Smith, Katzenstein, & Furlow, Wilmington, DE; Robert J. Benson, Pro Hac Vice.

For **[*2]** Audiovox Electronics Corporation, Counter Claimant: Paul A. Bradley, McCarter & English, LLP, Wilmington, DE.

For Audiovox Communications Corp., Counter Claimant: Matt Neiderman, Duane Morris LLP, Wilmington, DE.

For Honeywell Intellectual Properties, Inc., Counter Defendant: John G. Day, Ashby & Geddes, Wilmington, DE.

For Nokia Inc., Nokia Corporation, ThirdParty Plaintiffs: William J. Marsden, Jr., Fish & Richardson, P.C., Wilmington, DE.

For Audiovox Communications Corp., ThirdParty Plaintiff: Matt Neiderman, Duane Morris LLP, Wilmington, DE.

**JUDGES:** Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Kent A. Jordan

**OPINION:**

### MEMORANDUM ORDER

**Introduction & Background**

In these three actions, Honeywell International Inc., a Delaware corporation, and Honeywell Intellectual Properties Inc., an Arizona corporation, (collectively "Honeywell") have asserted that their rights under *U.S. Patent No. 5,280,371*, issued January 18, 1994, (the "*371 patent*) have been infringed. The '*371 patent* claims a liquid crystal display ("LCD") apparatus said to provide enhanced brightness and clarity when compared with prior art LCDs. (See '*371 patent*, attached to C.A. **[*3]** No. 04–1338-KAJ Docket Item ["D.I."] 1 at Ex. 1, col. 1 lines 48-61; col. 6, lines 1-42.) In Civil Action No. 04–1337-KAJ, Honeywell asserts the '*371 patent* against 8 defendants. (C.A. No. 04–1337-KAJ D.I. 39.) In Civil Action No. 04–1338-KAJ, it asserts the same patent against another 27 defendants. n1 In Civil Action No. 04–1536-KAJ, Optrex America, Inc., a New York corporation, ("Optrex") has sued for a declaratory judgment that it does not infringe Honeywell's rights under the '*371 patent* and

that the patent is invalid. (C.A.No. 04–1536-KAJ D.I. 1.)

n1 Honeywell chose to file two separate suits simultaneously because a conflict of interest of one of its law firms prevented that firm from representing Honeywell against certain of the defendants, but it now seeks consolidation of the actions. (See C.A. No. 04–1338-KAJ D.I. 135 at n. 1.)

Pending before me are several motions bearing on the management of these cases. n2 Honeywell seeks consolidation of the actions. (C.A. No. 04–1338-KAJ D.I. 134; C.A. No. 04–1536-KAJ **[*4]** D.I. 14) A third party, Seiko Epson Corporation, a Japanese company, ("Seiko Epson") seeks to intervene because it is the original manufacturer of LCDs said to be the infringing component in some of the defendants' consumer electronics. (See C.A No. 04–1337-KAJ D.I. 50; C.A. No. 04–1338-KAJ D.I. 136 at 7–9); Opirex, another seller of allegedly infringing LCDs to defendants in the suits filed by Honeywell, seeks to have its case tried first. n3 (C.A. No. 04–1536-KAJ D.I. 23.) And several of the defendants in the actions brought by Honeywell have filed motions to stay the litigation against them while Honeywell first tries its infringement claims against the manufacturers of the LCDs. (*See, e.g.,* C.A. No. 04–1337-KAJ D.I. 60, 63. 101, and 112; C.A. No. 04–1338-KAJ D.I. 95, 158. 161, 181, and 189.)

n2 A chart listing the motions filed by the parties is appended.

n3 [HN1] *Federal Rule of Civil Procedure 7(b)(1)* provides in pertinent part that, "an application to the court for an order shall be by motion ... ." It is the custom and expectation of this court that, unless otherwise ordered by the court, an application like Optrex's should be made by way of formal motion. That expectation was not met in this instance. Failure to abide by *Rule 7* necessarily brought with it a failure to abide by Local Rule 7.1.1, respecting the certification of counsel required with all non-dispositive motions. Solely because Optrex's request, which came by way of a letter, can be readily disposed of in light of my rulings on the motions properly made, I have considered it and address it herein.

**[*5]**

On May 16, 2005, I held a consolidated pretrial conference in these cases pursuant to *Federal Rule of Civil Procedure 16*. At that time, I heard argument on the various motions and issued preliminary rulings. This Order confirms those rulings and provides a further explication

for them. For the reasons staled herein, as well as those stated in open court at the *Rule 16* conference, Seiko Epson's motion to jntervene is granted. Honeywell's motion to consolidate is granted in part, Optrex's request is granted to the extent stated herein, and the motions to stay submitted by defendants in the Honeywell-filed cases are granted. In short, Honeywell would be required to litigate its infringement claims in the first instance against the manufacturers of the accused LCDs, not against the many customers of those manufacturers who incorporate the LCDs into their consumer electronics.

## Standard of Review

[HN2] Motions to intervene are entrusted to the discretion of the court. *See Kleissler v. U.S. Forest Service, 157 F.3d 964, 969 (3d Cir.1996)* [HN3] ("We will reverse a district court's determination on a motion to intervene as of right if **[\*6]** the court has abused its discretion by applying an improper legal standard or reaching a conclusion we are confident is incorrect.") Intervention as of right is governed by [HN4] *Federal Rule of Civil Procedure 24(a)*, which states in relevant part, "upon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." [HN5] That rule has been interpreted

> to require proof of four elements from the applicant seeking intervention as of right: first, a timely application for leave to intervene; second, a sufficient interest in the litigation; third, a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action: and fourth, inadequate representation of the prospective intervenor's interest by existing parties to the litigation.

*Kleissler, 157 F.3d at 969.* **[\*7]**

[HN6] A district court also generally has broad discretion when deciding whether to consolidate or stay proceedings. *See Bechtel Corp. v. Laborers' International Union, 544 F.2d 1207, 1215 (3d Cir. 1976)* ("A United States district court has broad power to stay proceedings."): *Blake v. Farrell Lines, Inc., 417 F.2d 264. 266 (3d Cir. 1969)* [HN7] ("the trial judge, under *Rule 42(a)*, is given the broad authority to 'make such orders concerning proceedings therein as may tend to avoid unnecessary

costs or delay'").

With respect to consolidation, [HN8] *Federal Rule of Civil Procedure 42(a)* provides that, "when actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."

[HN9] The power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants. **[\*8]** " *Cheyney State College Faculty v. Hufstedler, 703 F.2d 732, 738 (3d cir. 1983)* (quotation omitted). [HN10] When considering a motion to stay, the court considers the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set. *United Sweetener USA, Inc. v. Nutrasweet Co., 766 F. Supp. 212, 217 (D.Del. 1991).*

## Discussion

These cases are the second set of LCD technology cases to come before this court on a grand scale. The first set, in which the lead case is *Commissariat A L'Energie Atomique v. Samsung, et al.,* C.A. No. 03-464-KAJ (consolidated), involved the plaintiff ("CEA") suing a host of manufacturers, distributors, and retailers of LCDs or products containing them. After sorting through the various motions to stay and to consolidate, I concluded that consolidation of cases against the manufacturer defendants was appropriate because those cases involved common questions of law and fact pertaining to infringement. *See id.,* May 13, 2004 Mem. **[\*9]** Order at 5-6. However, I declined to consolidate the cases involving non-manufacturer defendants because no sound reason was given for immediately addressing what could only be the derivative liability of those defendants. *See id.* For that same reason, I stayed the cases against the non-manufacturer defendants, observing, "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Id.* at 7 (quoting *Katz v. Lear Siegler, Inc., 909 F.2d 1459. 1464 (Fed. Cir. 1990),*

I was persuaded then and remain persuaded that large-scale litigation like this requires the business and strategic legal interests of the plaintiff to cede some ground to case management imperatives. It is impracticable to try an infringement case against 40 some defendants or third-party

Case 1:04-cv-01230-GMS    Document 84-2    Filed 01/12/2006    Page 6 of 35

Page 5
2005 U.S. Dist. LEXIS 22933, *9

defendants with many different accused devices, and it is unwise to attempt any such thing when liability depends exclusively upon infringement being found as to an LCD component that the defendants do not manufacture and when at least some of the manufacturers of the LCDs are before the court and are willing to stand [*10] behind their products in this litigation. n4 *Cf. Kahn v. General Motors Corp., 889 F.2d 1078, 1081 (Fed. Cir. 1989)* (noting that [HN11] the "customer suit exception" to the preference for allowing a first–filed action to proceed first is based on "the manufacturer's presumed greater interest in defending its actions against charges of patent infringement").

> n4 Optrex and Seiko Epson are before the court already. Other LCD manufacturers identified as "Curitel, Philips, Wintek, and Samsung SDI" have been named in a third party complaint (*see* C.A. No. 04–1338–KAJ D.I. 167 at 5), and LCD manufacturers identified as "Arima Display, AU Optronics, CPT, Hannstar, Hitachi, Primeview, Quanta Display, Inc., ST–LCD, TM Display, and Tottori Sanyo" have not been named or appeared in any of the cases to date. (*See id.*)

Honeywell has been frank to say that it deliberately avoided suing the manufacturers to avoid "the complications faced by this Court in the French government's LCD action, C.A. No. 03–484 [i. [*11] e., the *CEA* suit]." (C.A. No. 04–1338–KAJ D.I. 147 at 3, P 2.) Honeywell also accurately assesses the several motions to stay and the motion to intervene as an effort by the movants to "re-cast [Honeywell's lawsuits] as a case against LCD suppliers ... ." (C.A. No. 04–1338–KAJ D.I. 167 at 5.) What Honeywell fails to appreciate is that, from the perspective of the host of defendants Honeywell has chosen to sue, and in the interest of judicial economy, dealing with the manufacturers first is the fairest and most efficient way to proceed. It is not a complication to be resisted.

Thus, Honeywell's motions to consolidate will be granted because the cases certainly do involve common questions of law and fact which make sense to handle for certain purposes on a consolidated basis. *See Fed.R.Civ.P. 42(a)*. Whether a single trial against all the non–manufacturer defendants makes sense is a question for another day. For now it is sufficient to order that trial and pretrial activities with respect to the dispute between Honeywell and those manufacturer defendants presently before the court will be handled on a consolidated basis. Any pretrial activities [*12] with respect to Honeywell's claims against the non–manufacturer defendants will also be handled, for the time being, on a consolidated basis. It is likely that the claims against and by the manufacturer defendants will later be separated out for pretrial proceed-

ings as well as a separate trial. As further noted herein, however, there will be some discovery permitted of the non–manufacturer defendants, so all will remain in the case for the time being.

The motion to intervene filed by Seiko Epson will also be granted, because it puts a willing manufacturer defendant in the forefront of litigation aimed squarely at its product. Seiko Epson correctly claims that it has met the test for intervention as of right under *Rule 24(a)*. Its motion is timely; discovery has not even begun in the case and case management issues are only now being addressed. It has a sufficient interest in the litigation; indeed, as a manufacturer of the product component which is at the heart of these cases, it has a compelling interest. It can rightly claim that its interests will be impaired or affected, as a practical matter, by the disposition of the action, unless it is involved in the case directly and able [*13] to make its positions known. Finally, because it is uniquely situated to understand and defend its own product, its interests are not adequately represented by existing parties to the litigation.

For evidently similar reasons, Optrex has taken affirmative steps to insert itself in this litigation and to have the opportunity to have the dispute over its LCDs heard before the suits against the non–manufacturer defendants are permitted to go forward. As stated at the May 16 conference, I agree that the dispute between Honeywell and the manufacturers should go forward first. To that extent, Optrex's request to proceed with its claims on a priority basis will be granted.

As to the several motions to stay, they too are granted to the extent stated in open court. The non–manufacturer defendants will not be given a complete and immediate stay of all proceedings involving them, because I will permit Honeywell certain limited discovery to learn who the suppliers of LCDs are for the various devices that Honeywell must now specifically identify as accused products. n5 I will otherwise stay the litigation against the non–manufacturer defendants, however, since a stay would not unduly prejudice [*14] Honeywell. it will vastly simplify the issues and trial of the case against the manufacturer defendants, and it comes at time when discovery has not even begun and no trial date has been set. *See United Sweetener USA, Inc. v. Nutrasweet Co., 766 F. Supp. 212, 217 (D. Del. 1991)* (setting forth test for propriety of a stay). At the appropriate time, a separation of the suits against the manufacturer and non–manufacturer defendants may well be warranted, for ease of case administration.

> n5 At the case management conference, I granted a defense request that Honeywell be re-

quired to identify the products it is accusing of infringement. To date, it has only stated that "at least some of the LCD screen-containing products manufactured, imported, offered for sale, and/or sold by [the named defendants] infringe the '*371* patent literally and/or under the doctrine of equivalents ... ." (C.A, No. 04–1338–KAJ D.I. 1 at P 53.)

At the close of the case management conference, I instructed the parties to confer **[*15]** and provide me with proposed language respecting permissible discovery activities directed at the non–manufacturer defendants during the stay. A further and separate order will be entered following the parties' filing or filings in that regard.

## Conclusion

For the reasons stated in open court on May 16, 2005 and herein, it is hereby ORDERED that

(1) Honeywell's motions to consolidate (C.A. No. 04–1338–KAJ D.I. 134; C.A. No. 04–1536–KAJ D.I. 14) are GRANTED to the extent that Civil Action Nos. 04–1337–KAJ, 04–1338–KAJ and 04–1536–KAJ are consolidated

for the present for all purposes, with a consolidated case caption to be suggested by the parties by June 17, 2005;

(2) Seiko Epson's motions to intervene (C.A. No. 04–1337–KAJ D.I. 50 and C.A. No. 04–1338–KAJ D.I. 136) are GRANTED;

(3) Optrex's request to proceed with its dispute in advance of Honeywell being permitted to proceed with its litigation against the non–manufacturer defendants (C.A. No. 04–1536–KAJ D.I 23) is GRANTED to the extent described herein; and

(4) the several motions to stay (C.A. No. 04–1337–KAJ D.I. 60, 63, 101 and 112; C.A. No. 04–1338 D.I. 95, 158, 161, 181 and 189) are GRANTED to the extent described **[*16]** herein, with a further order regarding the stay to be proposed by the parties no later than June 17, 2005.

May 18, 2005
Wilmington, Delaware

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

# EXHIBIT B

LEXSEE 1993 US DIST LEXIS 14601

**TERADYNE, INC., Plaintiff, v. HEWLETT–PACKARD COMPANY, Defendant.**

**No. C–91–0344 MHP**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*1993 U.S. Dist. LEXIS 14601*

**January 7, 1993, Decided**
**January 7, 1993, Filed, Entered**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff filed an action charging defendant with patent infringement and defendant counterclaimed that plaintiff had infringed upon three of defendant's patents. Plaintiff sought summary judgment of one counterclaim and filed a motion for reconsideration of a temporary stay of the litigation of a second counterclaim, and defendant filed a motion to stay litigation of the remaining counterclaim pending a reexamination by the Patent Office.

**OVERVIEW:** The court determined that one of plaintiff's prior art references satisfied the literal terms of one claim of defendant's patent that was the subject of the summary judgment motion. Although defendant argued that the circuit tester's patent did not explicitly provide that a computer instruction was explicitly used to facilitate initialization and that deposition testimony could not be used to fill gaps in a patent claim's disclosure, the court found as a matter of law that initialization was covered by the claim in plaintiff's prior art and that the deposition testimony was uncontradicted that the tester's manual listed initialization as one of the iteration program's functions. The court determined that the litigation regarding defendant's remaining counterclaims should be stayed pending completion of the U.S. Patent Office's reexamination process. The court found that the reexamination might narrow or eliminate issues concerning the patents' validity and the reexamination process was intended for use in this situation where defendant discovered evidence of prior art during discovery that was not considered during the initial examination of the patent application.

**OUTCOME:** The court granted plaintiff's motion for summary judgment, denied plaintiff's motion for reconsideration of the temporary stay of litigation involving one of defendant's counterclaims, and granted defendant's motion for the stay of litigation regarding defendant's remaining counterclaim pending reexamination by the U.S. Patent Office.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN1] Under *Fed. R. Civ. P. 56*, summary judgment shall be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Civil Procedure > Summary Judgment > Burdens of Production & Proof*
[HN2] The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, or admissions on file designate specific facts showing that there is a genuine issue for trial.

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN3] The court's function on a motion for summary judgment is not to make credibility determinations. The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion.

*Patent Law > Anticipation & Novelty > Elements*
*Patent Law > Infringement Actions > Summary Judgment > General Overview*
[HN4] Summary judgment is as appropriate in a patent case as in any other.

*Patent Law > Infringement Actions > Defenses > Patent*

Case 1:04-cv-01230-GMS    Document 84-2    Filed 01/12/2006    Page 10 of 35

Page 2
1993 U.S. Dist. LEXIS 14601, *

*Invalidity > Validity Presumption*
*Patent Law > Inequitable Conduct > General Overview*
[HN5] The proof of patent invalidity must be by clear and convincing evidence. Section 282 of the patent statutes, *35 U.S.C.S. § 282,* explicitly provides for a presumption of patent validity. Section 282 places the initial burden of establishing a prima facie case on the party asserting invalidity; it also places the burden of persuasion on the challenging party throughout the litigation.

*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > General Overview*
*Patent Law > Infringement Actions > Defenses > Patent Invalidity > Validity Presumption*
*Patent Law > Infringement Actions > Burdens of Proof*
[HN6] The presumption of validity exists because the patent office is presumed to have performed its job correctly. However, if the Patent Office did not consider the asserted prior art, such deference is not warranted. It is often difficult to discern whether a certain prior art was considered by the patent office. For instance, the failure of a patent examiner to cite a prior art is not conclusive evidence that it was not considered by the patent examiner. In addition, introduction of more pertinent prior art than that considered by the patent office does not shift the basic burden of persuasion from the patent challenger.

*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > General Overview*
*Patent Law > Claims & Specifications > Claim Language > Elements & Limitations*
*Patent Law > Anticipation & Novelty > Elements*
[HN7] A patent claim can only be invalidated on anticipation grounds if all elements and limitations of the claim are found in a single prior art reference.

*Patent Law > Infringement Actions > Infringing Acts > General Overview*
*Patent Law > Infringement Actions > Claim Interpretation > General Overview*
[HN8] A finding of anticipation requires that all aspects of the claimed invention were already described in a single reference, a finding that is not supportable if it is necessary to prove facts beyond those disclosed in the reference in order to meet the claim limitations. The role of extrinsic evidence is to educate the decisionmaker to what the reference meant to persons of ordinary skill in the field of the invention, not to fill in gaps in the reference.

**JUDGES: [*1]** PATEL

**OPINIONBY:** MARILYN HALL PATEL

**OPINION:**

## MEMORANDUM AND ORDER

Plaintiff Teradyne, Inc. ("Teradyne") brought this action against defendant Hewlett–Packard ("HP") for allegedly infringing three of Teradyne's patents. HP brought a counterclaim against Teradyne for allegedly infringing five of HP's patents. The matter was last before the court on May 8, 1992 to consider Teradyne's summary judgment motion of invalidity for three of HP's patents, U.S. Patents Nos. *4,588,945* (" *'945*"); *4,642,561* (" *'561*"); and *4,598,245* (" *'245*"). At the hearing the court ordered that action on the *'245* patent be stayed pending a reexamination by the Patent Office. The court ordered further briefing on the *'561* patent and took the issue of the *'945* patent under submission.

The matter is presently before the court on Teradyne's motion for reconsideration of this court's decision to temporarily stay litigation of the *'245* patent and HP's motion to stay litigation of the *'561* patent pending a reexamination by the Patent Office.

Having considered the submissions and arguments of the parties, and for the following reasons, the court GRANTS Teradyne's summary judgment motion with respect to claim 4 of the *'945* patent. The **[*2]** court DENIES Teradyne's motion with respect to the other contested claims on the *'945* patent. The court DENIES Teradyne's motion to reconsider the stay on the *'245* patent. The court GRANTS HP's motion to stay litigation on the *'561* patent.

### I. BACKGROUND

A. Procedural History

On February 4, 1991 Teradyne filed its original Complaint, charging HP with infringing three of Teradyne's patents, U.S. Patents Nos. *31,828, 4,339,819,* and *4,500,993*. On June 28, 1991 HP filed an Amended Answer and Counterclaim, raising a number of defenses to the three Teradyne patents, and charging Teradyne with infringement of five of HP's patents, the three currently under review, *'945, '561, '245,* as well as U.S. Patents Nos. *4,040,025*; and *4,652,814*. Teradyne filed a reply and counterclaimed that each of HP's five patents–in–suit was invalid and not infringed.

On March 6, 1992 Teradyne filed three motions for summary judgment alleging that various claims of the *'945, '561,* and *'245* patents were invalid as anticipated by the prior art under *35 U.S.C. § 102*(b). Specifically, Teradyne sought a judgment that: (1) claims 1–5, and 7 of the *'945* patent were invalid; **[*3]** (2) claim 1 of the *'561* patent was invalid; and (3) claims 1–11 of the *'245* patent were invalid. HP filed opposition to Teradyne's motions regarding the *'945* and *'561* patents, and sought to

withdraw the '245 patent from this litigation, or in the alternative to stay litigation of the proceedings, because it was submitting the '245 patent for reexamination by the United States Patent and Trademark Office ("the Patent Office").

On May 6, 1992 HP filed a request for reexamination for the '245 patent in the Patent Office, pursuant to 35 U.S.C. § 301 et seq. On July 7, 1992, the Patent Office agreed to reconsider all claims of the '245 patent. Those proceedings are currently pending. At the May 8, 1992 hearing on Teradyne's summary judgment motions, this court stayed the proceedings with respect to the '245 patent pending the outcome of the Patent Office's reexamination of that patent. Teradyne now urges this court to reconsider the stay.

Regarding the '561 patent, the court heard several hours of oral argument concerning Teradyne's contention that claim 1 of the '561 patent was invalid. At the end of the hearing, the court ordered that supplemental [*4] evidence be obtained from GenRad, a firm which manufactured and marketed one of the test devices which Teradyne claimed was an anticipating prior art reference. After obtaining the supplemental GenRad witness's testimony, HP recognized that the test device raised new questions of patentability never considered by the Patent Office and accordingly, on July 6, 1992, submitted the '561 patent for reexamination. HP now requests a stay of the present action with respect to the '561 patent pending the outcome of the reexamination proceedings.

The court took Teradyne's summary judgment motion regarding the '945 patent under submission and that issue is presently ripe for summary adjudication.

## B. Factual Background

HP's '945 patent relates to a relatively new method of testing PCBs, "in-circuit" testing, which tests the components that are mounted on a single PCB. n1 The circuit components are tested directly by applying test signals which have sufficient magnitude to overcome the effect of signals from other devices connected to the circuit component being tested. Joint Statement of Undisputed Facts Submitted with Teradyne's Motion for Partial Summary Judgment of Invalidity of Claims [*5] 1-5 and 7 of U.S. Patent 4,588, '945 ("JS '945") P 13. The tester applies appropriate signals to the input of the circuit component, monitors the output signals from the circuit component, and checks these output signals for accuracy.

      n1 Early generations of circuit testers for printed circuit boards (PCBs) used functional testing, in which test signals were applied only at circuit inputs and output signals were monitored only at circuit outputs. Functional testing suffered from two serious limitations. First, since each circuit was unique, it was difficult to determine the suitable test pattern for a specific circuit. Second, isolating a problem in the PCB required backtracking of the circuit and made diagnosis difficult. '651 Patent, col. 1, lines 18-28.

To test a circuit component, a test signal pattern is applied. However, since circuit components are generally connected to other components, the application of a test signal pattern requires overcoming the effect of circuit components whose output signals constitute [*6] the input for the component under test. The process of overcoming the signals of these "upstream" components is known as "overdriving" or "backdriving." Id. Backdriving the output of upstream circuit components heats up the upstream components. '945 Patent, Col. 2, lines 1-28; col. 3, lines 3-43. Heating is particularly problematic since typical test signal patterns could include thousands of backdriving signals within a short period of time. In addition, since different circuit components that are tested typically have common upstream components which must be backdriven, such common components may never have the opportunity to cool down sufficiently so as not to become damaged.

Claims 1-5 and 7 of the HP's '945 patent involve methods for preventing thermal damage in conjunction with the use of a digital in-circuit tester. Claims 1 and 5 are independent claims. Claim 1 involves a method for introducing between test signals applied to circuit components a predetermined variable length cool-down time predetermined from characteristics of the circuit components under test and the overall characteristics of the circuit. The cool-down time is sufficient to avoid overheating of devices [*7] in the circuit. JS ' 945 P. 15 . Claim 5 involves a means for applying the method of claim 1 in test signal use. Id.

Claims 2 and 3 depend on claim 1, while claim 7 depends on Claim 5. Claim 2 requires that the variable length cool-down time interval be determined by calculating the minimum time duration necessary to avoid damaging the device under test. Id. Claim 3 requires that the variable length cool-down time interval be introduced before application of the test signals to the component for which the time interval was determined. Id. Claim 7 involves a means for introducing the interval described by claim 3. Finally, independent claim 4 involves a method of preventing overheating when test signals are applied during initialization and during the regular period by terminating the application of test signals when a predetermined count has been reached or by limiting the length of the testing

1993 U.S. Dist. LEXIS 14601, *7

periods themselves. Id.

Teradyne asserts that claims 1–5 and claim 7 of the *945 patent are invalid because they were anticipated by three prior art references: (1) GenRad's 2270, 2271, and 2272 testers ("GR2270"); (2) Teradyne's L200 in-circuit tester **[*8]** ("L200"); (3) Schlumberger/Fairchild/Faultfinders' FF303/303S in-circuit testers ("FF303"). HP contends that the claims are not invalid because it invented a novel method of calculating a predetermined variable length cool down time interval based on the characteristics of the devices and the circuit. It asserts that although the prior art may have allowed for cool-down periods, these cool-down periods were set mechanically and were not related to the actual time period necessary to avoid damage.

## II. DISCUSSION

### A. The *945 Patent

#### 1. Legal Standards

[HN1] Under *Federal Rule of Civil Procedure 56*, summary judgment shall be granted:

> against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).* The **[*9]** moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by [its] own affidavits, or by 'depositions, answers to interrogatories, or admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex, 477 U.S. at 324;* see also *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)* (a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

[HN3] The court's function on a motion for summary judgment is not to make credibility determinations. *Anderson, 477 U.S. at 249.* The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv., 809 F.2d at 631.*

In its motion for summary judgment, Teradyne relies upon *35 U.S.C. § 102*(b) which provides that a patent is invalid if "the invention was patented or described in a printed **[*10]** publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."

The federal circuit has repeatedly held that [HN4] "summary judgment is as appropriate in a patent case as in any other." *Avia Group Int'l, Inc. v. L.A. Gear California, Inc., 853 F.2d 1557, 1561 (Fed. Cir. 1988)* (citing cases). In addition, the federal circuit has upheld district court grants of summary judgment on the grounds of anticipation by prior art under *35 U.S.C. § 102*(b). *Constant v. Advanced Micro-Devices, 848 F.2d 1560, 1568–69* (Fed. Cir.), cert. denied, *488 U.S. 892, 102 L. Ed. 2d 218, 109 S. Ct. 228 (1988); Barmag Barmer Maschinenfabrik AG v. Murata Mach. Ltd., 731 F.2d 831 (Fed. Cir. 1984).*

[HN5] The proof of invalidity must be by clear and convincing evidence. *RCA Corp. v. Applied Digital Data Systems, Inc., 730 F.2d 1440, 1444 (Fed. Cir.), cert. denied, 468 U.S. 1228 (1984).* Section 282 of the patent statutes, *35 U.S.C. § 282*, **[*11]** explicitly provides for a presumption of patent validity. Section 282 places the initial burden of establishing a prima facie case on the party asserting invalidity; it also places the burden of persuasion on the challenging party throughout the litigation. *Lear Siegler Inc. v. Aeroquip Corp., 733 F.2d 881 (Fed. Cir. 1984).*

[HN6] The presumption of validity exists because the patent office is presumed to have performed its job correctly. *American Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1359–60* (Fed. Cir.), cert. denied, *469 U.S. 821, 83 L. Ed. 2d 41, 105 S. Ct. 95 (1984).* However, if the Patent Office did not consider the asserted prior art, such deference is not warranted. *American Hoist, 725 F.2d at 1359.* It is often difficult to discern whether a certain prior art was considered by the patent office. For instance, the failure of a patent examiner to cite a prior art is not conclusive evidence that it was not considered by the patent examiner. *Lear Siegler, 733 F.2d at 885.* In addition, introduction of more pertinent prior art than that considered **[*12]** by the patent office does not shift the basic burden of persuasion from the patent challenger. Id. (citing *Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1534 (Fed. Cir. 1983)*).

[HN7] A patent claim can only be invalidated on anticipation grounds if all elements and limitations of the claim are found in a single prior art reference. *Hybritech*

*Inc. v. Monoclonal Antibodies, Inc.,* 802 F.2d 1367, 1379 *(Fed. Cir. 1986),* cert. denied, *480 U.S. 947, 94 L. Ed. 2d 792, 107 S. Ct. 1606 (1987).*

The so-called "doctrine of inherency" provides that the prior source need not expressly anticipate the claimed invention. Prior art can challenge a patent claim if it inherently possesses the patented property. See *Verdegaal Bros., Inc. v. Union Oil Co.,* 814 F.2d 628, 633 (Fed. Cir.), cert. denied, *484 U.S. 827, 98 L. Ed. 2d 56, 108 S. Ct. 95 (1987).* The existence of the inherent qualities of the prior art is sufficient; the inventor need not recognize these inherent qualities. Id. On the other hand, extrinsic evidence is of limited applicability in proving inherency. As the Federal Circuit noted in *Scripps Clinic, 927 F.2d 1565 (Fed. Cir. 1991):* **[*13]**

[HN8] a finding of anticipation requires that all aspects of the claimed invention were already described in a single reference: a finding that is not supportable if it is necessary to prove facts beyond those disclosed in the reference in order to meet the claim limitations. The role of extrinsic evidence is to educate the decisionmaker to what the reference meant to persons of ordinary skill in the field of the invention, not to fill in gaps in the reference.

*Id. at 1576* (citation omitted). In addition, inherency may not be established by possibilities or probabilities. The fact that a particular result may occur in a given set of circumstances is not sufficient to prove anticipation. *Continental Can Co. v. Monsanto Co.,* 948 F.2d 1264, 1269 (Fed. Cir.), reh'g denied, *1991 U.S. LEXIS 29979 (1991)* (citing cases).

Finally, the question of anticipation also turns on claim interpretation. When dealing with anticipation, proper claim construction requires reference to both the specifications and to the prosecution history. See *Lewmar Marine, Inc. v. Barient Inc.,* 827 F.2d 744, 750 (Fed. Cir. 1987), **[*14]** cert. denied, *484 U.S. 1007, 98 L. Ed. 2d 653, 108 S. Ct. 702 (1988); McGill v. John Zink Co.,* 736 F.2d 666, 673 (Fed. Cir.), cert. denied, *469 U.S. 1037, 83 L. Ed. 2d 404, 105 S. Ct. 514 (1984).* The purpose of referring to the specification and prosecution history is to ascertain the scope and meaning of the claims. Id. However, extraneous limitation cannot be added to the claim through the use of specification language. *Sjolund v. Musland, 847 F.2d 1573 (Fed. Cir. 1988).*

With these standards in mind, the court considers Teradyne's summary judgment motion.

**2. Only Claim 4 of the *'945* Patent is Invalid as Anticipated By the Prior Art**

Teradyne claims that claims 1–5 and claim 7 of the *'945* patent are invalid because they were anticipated by three prior art references, GenRad's GR2270 in-circuit tester, Teradyne's L200 tester, and Schlumberger/Fairchild/Faultfinders' FF303 in-circuit testers.

**a. The Three Prior Art References**

The GR2270 in-circuit tester and user manual were commercially available more than a year prior to the grant of the *'945* patent. JS ' 945 P. 32 . The GR2270 had features **[*15]** which controlled the timing of test signals. One of the commands in the GR2270 test language was the BURST/END BURST command pair construct. The BURST command included the control parameter MAXTIME, which gave the user control of the maximum time that a burst test sequence could last. The user could specify 10, 40, 160 or 640 milliseconds. If no time was specified for MAXTIME, the GR2270 system would automatically select 640 milliseconds. Husser Dep. at 101:17–104:3. The test burst would be terminated when the actual elapse time reached the MAXTIME parameter. *Id. 94:*11–98:5. One of the purposes for the MAXTIME parameter was to protect the circuit under test from overheating due to backdriving during the test period. *Id. at 99:*1–19.

The GR2270 system also included the LOOP/END LOOP instruction pair. Id. at 119:4-14. In the LOOP/ENDLOOP command pair, a loop count could be specified such that if a count were given, the loop would run until the count was met. If no count were given, the loop would run continuously until either a conditional exit condition was satisfied or the MAXTIME limit was reached. Id. at 108:10–110:4. **[*16]**

The L200 Board Test system was commercially available by 1981, more than a year before the grant of the *'945* patent. Wrinn Dec. P 5. The L200 provided for a test language that contained instructions for generating loop sequences to repeat a set of test patterns. The L200 system incorporated a LOOP/ENDLOOP instruction pair construct, which terminated the loop when a user-specified maximum count was used. Wrinn Dec. PP 17–19; Hansen Dec., PP 3–5 and 7.

The FF303 existed more than one year before the filing of the HP *'945* patent. Bish Dep. at 9:8–12. The FF303 had a CYCLE(N) command that was used for initializing sequential devices. The CYCLE command provided for a specified number of iterations N through the programmed test pattern for the cycle. The CYCLE command allowed test patterns for initializing a device to be repeated a spec-

1993 U.S. Dist. LEXIS 14601, *16

ified number of times while looking for the starting state of the device before continuing on with the test. Id. at 56:13–60:9; 66:17–67:23.

The FF303 also provided for cool–down time between bursts of test patterns. A cool–down time was programmable by the user. If the user failed to program an inter–test time interval, the system would choose one automatically. **[*17]** Id. at 47:5–14; 50:25–51; 146:13–148:1. To adjust the cool–down time interval, a user would select a command called LDELAY. The user would specify the number of milliseconds that the tester should wait between each test sequence.

b. Claim 4 and the Prior Art References

Teradyne claims that every limitation of Claim 4 is met by each of the prior art references, the GR 2270, the L200, and the FF303. Claim 4 states:

> A method for preventing the overheating of an electronic device under test with initialization test signals during an initialization period or regular test signals during a testing period, the method comprising: counting the number of times the initialization test signals are applied to the electronic device under test, measuring the duration of the testing period, and terminating the application of test signals when a predetermined count or a predetermined period has been reached.

Teradyne admits that of the three prior art references provided by Teradyne, only the GR2270 satisfies the literal terms of claim 4. GR2270 is the only one which sets time limits through iteration loops and time limits through predetermined periods. The other two references do **[*18]** not perform both limiting conditions. Teradyne argues, however, that the claim should be read in the alternative, to encompass any device which either sets time limits through iteration loops or sets time limits through predetermined periods. Teradyne's construction is clearly contrary to the plain language of claim 4, which says that the method must set time limits through a predetermined number of iterations and through a predetermined time period.

HP asserts that the GR2270 system does not anticipate Claim 4 of the '945 patent. According to HP, it is not clear whether the LOOP/ENDLOOP computer instruction was explicitly used to facilitate initialization. HP notes that GenRad's Dean Hussar merely stated that the instruction "could" be used to facilitate initialization of a circuit under test. Husser Dep. at 108:14–19.

However, in his deposition testimony, Husser repeatedly agreed that initialization testing was a valid use of the GR2270's iteration programming. Id. at 120:9–21; 121:21–122:9. Admittedly, as HP points out, Husser responded to some leading questions. HP also points out that Husser's extrinsic testimony cannot be used to fill in gaps in the GR2270 disclosure. **[*19]** However, Husser's testimony is corroborated by disclosure in the 1980 manual for the GR2270, which apparently listed initialization as one of the functions of the iteration programming. Id. at 120:3–8. HP does not argue that there was no such disclosure in the GR2270 manual.

HP also argues that particular specifications in the '945 patent militate against anticipation of claim 4 by the GR2270. In particular, HP contends that the tester of the '945 patent determines the exact number of iteration loops needed to initialize the circuit and exits the loop once this initialization is complete. '945 Patent, col. 7, lines 16–31. The GR2270, on the other hand, continues the iteration process until the number of iterations picked by the user is exhausted. However, reading this specification into claim 4 places an extraneous limitation on the claim which goes substantially beyond its plain language. HP's argument that the predetermined time and number of iterations selected by the tester needs to be related to the characteristics of the circuit also places extraneous limitations on claim 4. Unlike other claims made in connection with the '945 patent, claim 4 specifically does not **[*20]** discuss the tester's analysis of the characteristics of the circuit. In addition, contrary to HP's argument, there is no reason to believe that Claim 4 requires termination of all test signals once a predetermined count has been reached. For these reasons, the court finds that, as a matter of law, claim 4 of the '945 patent is invalid as being anticipated by a prior art.

c. Claims 1–3, 5 and 7 and the Prior Art

According to Teradyne, the FF303 anticipates claims 1 through 3, 5, and 7 of the '945 patent. Teradyne asserts that the FF303 provides for variable cool–down test intervals. In making this assertion, however, Teradyne completely ignores the fact that independent claims 1 and 5 of the '945 patent require a variable length cool down time interval that is predetermined from characteristics of the devices and the circuit. Teradyne makes no assertion that the FF303 makes any such calculation of cool down times. As independent claims 1 and 5 are not anticipated by the FF303, dependent claims 2–3 and 7 are likewise not anticipated.

B. Litigation Involving Both the '245 and the '561 Patents is Stayed Pending the Outcome of the Patent Office's Reexamination

As set **[*21]** forth above, Teradyne urges this court to reconsider its previous order staying the proceedings

concerning the *'245* patent to allow the Patent Office to reexamine all the patent's claims. Teradyne also opposes HP's motion to stay the *'561* patent proceedings pending the outcome of reexamination. For the following reasons, Teradyne's efforts are unavailing.

This circuit has held that the district court has the authority to stay actions in order to:

> control the disposition of the cases on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants. The exertion of this power calls for the exercise of a sound discretion. Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

**[*22]**

*Filtrol Corp. v. Kelleher, 467 F.2d 242, 244 (9th Cir. 1972),* cert. denied, *409 U.S. 1110, 34 L. Ed. 2d 691, 93 S. Ct. 914 (1973)* (citations omitted). n2

> n2 Teradyne's reliance on *Wayne Automation Corp v. R. A. Pearson Co., 782 F. Supp. 516 (E.D. Wash. 1991)* for the proposition that the party requesting a stay must show that it would suffer hardship if the case were to go forward is not persuasive. In *Wayne Automation* the court refused to stay the litigation (with trial just six months away) because substantial discovery had already been completed and the stay request was the latest in a long series of the plaintiff's delaying tactics.

These competing interests weigh in favor of staying the action and denying Teradyne's motion for reconsideration. The court's interest in efficiently managing its docket is served by a stay. Many, if not all, of the eleven challenged claims of the *'245* patent and the single claim of the *'561* patent may be modified or **[*23]** eliminated altogether during reexamination, thereby eliminating issues raised in Teradyne's motion for summary judgment. It has been estimated that in 77 percent of all reexamination applications, the claims are either amended or cancelled during reexamination. *Output Technology Corp. v. Data*

*Products Corp., 22 U.S.P.Q.2d (BNA) 1072, 1074 (W.D. Wash. 1991).* Moreover, counsel for both parties have suggested that at least some of the claims will be amended during reexamination. See Reporter's Transcript of May 8, 1992 Hearing at 7–9. Since the reexamination process may narrow and perhaps eliminate issues concerning the patents' validity, the court should not expend unnecessary judicial resources by trying to resolve these claims now. See *Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir.),* cert. denied, *464 U.S. 935, 78 L. Ed. 2d 310, 104 S. Ct. 343 (1983)* (purpose of the reexamination procedure is to eliminate the need for a trial if the claim is canceled or to provide the district court with the expert view of the Patent Office if the claim survives reexamination); *Filtrol, 467 F.2d at 244* **[*24]** (noting that if the decision in the pending proceeding were to go against the party claiming the patent, a trial would not be necessary).

Congress has expressly stated that the reexamination process was intended for use in situations where a party discovers new evidence of prior art which was not considered during the initial examination of the patent application:

> The new procedure will permit any party to petition the patent office to review the efficacy of a patent, subsequent to its issuance, on the basis of new information about preexisting technology which may have escaped review at the time of the initial examination of the patent application. Reexamination will permit efficient resolution of questions about the validity of issued patents without recourse to expensive and lengthy infringement litigation.

H.R. Rep. No. 1307, 96th Cong. 2d Sess. (1980). Early versions of what became the reexamination statute, *35 U.S.C. §§ 301–307,* expressly provided for a stay of court proceedings during reexamination. See *35 U.S.C. § 310 (1979).* When Congress amended the reexamination statute in 1981 it determined **[*25]** that an express provision was unnecessary. However, as explained in the House Report:

> The bill does not provide for a stay of court proceedings. It is believed by the committee that stay provisions are unnecessary in that such power already resides with the Court to prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure. It is anticipated that these measures provide a useful and necessary alternative for challengers and for patent owners to test the

validity of the United States patents in an efficient and relatively inexpensive manner.

H.R. Rep. No. 1307 Part I, 96th Cong., 2d Sess. at 4 (1980), reprinted in 1980 U.S.C.C.A.N. 6460, 6463.

In accordance with clearly expressed congressional intent, district courts often stay patent proceedings pending reexamination. See, e.g., *Ingro v. Tyco Industries, Inc., 227 U.S.P.Q. (BNA) 69, 71* (N.D. 111. 1985) ("legislative history indicates Congress . . . approved of courts liberally granting stays within their discretion."); *Digital Magnetic Systems, Inc. v. Ansley, 213 U.S.P.Q. (BNA) 290 (W.D. Okla. 1982)* ("Congress enacted the [*26] reexamination procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts.").

Since a Patent Examiner who is familiar with the technology will conduct the reexamination, it is appropriate to stay the proceedings on the *'245* and *'561* patents so that the court can take advantage of the Patent Office's expertise. See *Grayling Industries v. GPAC, Inc., 1991 U.S. Dist. LEXIS 16750, 19 U.S.P.Q.2d (BNA) 1872, 1873 (N.D. Ga. 1991); Brown v. Shimano American Corp., 18 U.S.P.Q.2d (BNA) 1496 (C.D. Cal. 1991).*

Teradyne argues that it has conducted extensive discovery to prepare its summary judgment motions and would be prejudiced if the stay is left in place. Clearly, a party should not be allowed to use the reexamination procedure as delaying tactic after discovery and trial preparation are well under way. See *Enprotech Corp. v. Autotech Corp., 1990 U.S. Dist. LEXIS 2926, 15 U.S.P.Q.2d (BNA) 1319 (N.D. Ill. 1990); E. I. Dupont de Nemours & Co. v. Phillips Petroleum Co., 711 F. Supp. 1205 (D. Del. 1989).* In this case, however, the court's [*27] order staying litigation of the *'245* patent was entered in May 1992, one month before the parties agreed on a discovery schedule. According to that schedule, discovery will last through November 1993, almost a year from now, and trial is set to begin in January 1994. Discovery concerning the *'561* patent is governed by the same schedule. Accordingly, both the *'245* and *'561* patent proceedings are still in the initial stages of litigation and the reexamination procedure should be used. See *Digital Magnetic Systems, 213*

*U.S.P.Q. at 290.* n3

n3 If the claims are invalid, the Patent Office will likely eliminate or amend them and Teradyne will suffer no prejudice at all.

Finally, Teradyne contends that the stay will delay and disrupt efficient prosecution of this case. To the contrary, lifting the stay would compel the court to examine the validity of claims which are subject to modification during reexamination. As a result of the reexamination, the parties and the court may be required to [*28] revisit many of the same issues on a different record or the parties and the court may find they have engaged in this litigation effort for naught. Teradyne estimates that reexamination will take one year and be concluded by May 1993 for the *'245* patent and July 1993 for the *'561* patent. Therefore, the parties will have between four and six months after the Patent Office is finished reexamining the patents' claims to complete discovery. This leaves enough time for the parties to finish discovery and prepare for trial. If reexamination is protracted, the court can explore other avenues for proceeding on the remaining patents.

**III. CONCLUSION**

For the foregoing reasons it is HEREBY ORDERED THAT:

1. The court GRANTS plaintiff Teradyne's summary judgment motion with respect to claim 4 of the *'945* patent.

2. The court DENIES Teradyne's motion with respect to the other contested claims on the *'945* patent.

3. The court DENIES Teradyne's motion to reconsider the stay of the *'245* patent.

4. The court GRANTS defendant Hewlett–Packard's motion to stay litigation of the *'561* patent.

IT IS SO ORDERED.

Dated: January 7, 1993

MARILYN HALL PATEL

United States District Judge [*29]

EXHIBIT C

Not Reported in F.Supp.                                                                          Page 1
Not Reported in F.Supp., 1993 WL 625509 (E.D.Cal.), 29 U.S.P.Q.2d 1718
**(Cite as: 1993 WL 625509 (E.D.Cal.))**

**C**

**Motions, Pleadings and Filings**

United States District Court, E.D. California.
Captain William C. GLADISH, an individual, Plaintiff,
v.
TYCO TOYS, INC., a Delaware corporation; et al.,
Defendants.
**CIV. No. S-92-1666WBS/JFM.**

Sept. 15, 1993.

Richard P. Doyle, Laura Lillian Kulhanjian, David J. Brezner, Michael L. Louie, Flehr Hohbach Test Albritton and Herbert, San Francisco, CA, for William C. Gladish.

Peter F. Samuel, Samuel Shafie and Samuel, Fair Oaks, CA, Christopher Darrow, Michael B. Lachuk, Breton A. Bocchieri, Poms Smith Lande and Rose, Los Angeles, CA, for Tyco Toys Inc., Bob's Toyland/Carousel Toys.

Sharon Kay Sandeen, Downey Brand Seymour and Rohwer, Bruce Edward Leonard, Caulfield Davies and Donahue, Sacramento, CA, for Toys R Us.

*ORDER*

SHUBB, District Judge.

**\*1** Plaintiff William Gladish moves to stay this action pending reexamination of his patent by the Patent and Trademark Office ("PTO").

BACKGROUND

In this action, plaintiff asserts that certain instructional toy cars sold by defendants (collectively, "Tyco") infringe his U.S. Patent No. 5,100,327 (the " '327 patent"). In investigating plaintiff's claims, Tyco discovered several prior art references not considered by the PTO during the examination process of the '327 patent application, which, Tyco asserts, indicate that the patent was improvidently granted. *See* Brezner Decl., ¶ II.

The reexamination process is provided for by 35 U.S.C. § 301 *et seq.* Section 302 provides that "[a]ny person at any time may file a request for reexamination by the [PTO] of any claim of a patent on the basis of any prior art ..." 35

U.S.C. § 302. The request must set forth the "pertinency and manner of applying cited prior art to every claim for which reexamination is requested." *Id.* The Commissioner must determine within three months of the request whether it raises a "substantial new question of patentability affecting any claim of the patent ..." 35 U.S.C. § 303(a). The determination is made on the basis of printed publications and patents cited under § 301. 37 C.F.R. section 1.552(a). If a substantial new question of patentability is raised, the patent will be reexamined. 35 U.S.C. § 304. Section 305 then provides that all reexamination proceedings "will be conducted with special dispatch."

*LEGAL STANDARD*

Determining the appropriateness of a stay of district court proceedings pending the outcome of the reexamination proceeding rests in the sound discretion of the district court. *Gould v. Control Laser Corp.,* 705 F.2d 1340 (Fed.Cir.), *cert. denied,* 464 U.S. 935 (1983) (stay pending reexamination not a reviewable final decision); *Hewlett-Packard Co. v. Acuson Corp.,* 1993 WL 149994 at *1 (N.D.Cal.1993); *Emhart Industries, Inc. v. Sankyo Seiki Mfg. Co., Ltd.,* 3 U.S.P.Q.2d 1889 (N.D.Ill.1987). The court must weigh the competing interests presented by a particular set of facts. *See Acuson Corp.,* 1993 WL 149994 at *1. Among the considerations to be balanced are hardships to the parties resulting from the granting or denial of the stay as well as "the orderly course of justice measured in terms of simplifying or complicating of issues, proof, and questions of law which could be expected to result in a stay." *Id.* (citing *Filtrol Corp. v. Kelleher,* 467 F.2d 242, 244 (9th Cir.1972), *cert. denied,* 409 U.S. 1110 (1973)).

One of the purposes of the reexamination procedure is to conserve judicial resources. The procedure serves to "eliminate trial [of the issue of patent claim validity] (when the claim is canceled) or to facilitate trial of the issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Ingo v. Tyco Industries, Inc.,* 227 U.S.P.Q. 69, 71 (N.D.Ill.1985) (quoting *Gould,* 705 F.2d at 1342).

**\*2** Courts which have denied stays pending reexamination of the patent's validity have generally done so where the request for reexamination came late in the litigation

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                        Page 2
Not Reported in F.Supp., 1993 WL 625509 (E.D.Cal.), 29 U.S.P.Q.2d 1718
**(Cite as: 1993 WL 625509 (E.D.Cal.))**

proceedings, after extensive discovery or trial preparation. *See, e.g., Freeman v. Minnesota Mining & Manufacturing Co., 4 U.S.P.Q.2d 1574 (D.Del.1987)* (stay inappropriate where discovery had been concluded and reexamination would center on the issue of whether certain documents constituted publications rather than on issues involving the special expertise of the PTO); *Toro Co. v. L.R. Nelson Corp., 223 U.S.P.Q. 636, 638 (C.D.Ill.1984)* (stay denied where suit had been pending for almost 3 1/2 years and the court had under advisement a motion by defendant for summary judgment possibly dispositive of the issue of validity).

## DISCUSSION

Defendants object to a stay of the proceedings on numerous grounds. Tyco raises serious questions about plaintiff's good faith in requesting reexamination, maintaining that the prior art which is the basis of plaintiff's request for reexamination has been known to plaintiff's counsel since April, 1992. Instead of requesting a reexamination at that point, plaintiff chose to file this action six months later, in October of 1992. Plaintiff additionally filed a motion for preliminary injunction, on October 22, 1992, seeking to restrain further production, sales, and advertising of Tyco's "Incredible Crash Dummies" product line. That motion raised issues of the patent's validity in light of three prior art references, the same references plaintiff now seeks to have considered in his request for reexamination. [FN1] The preliminary injunction motion subsequently was withdrawn pursuant to stipulation.

Tyco has shown that it would suffer prejudice in its discovery efforts should the stay be granted. Plaintiff has engaged in extensive discovery of Tyco. Tyco's discovery has developed to the point that it is necessary to take depositions. With much of the evidence sought, the issue of dates is critical, and Tyco contends that witnesses may become unavailable, their memories may fade, and evidence may be lost while the PTO proceeding takes place. Further, the case is nearing the discovery cutoff date of December 1, 1993, and Tyco represents that a summary judgment motion will be forthcoming.

The reexamination proceeding will not finally resolve all the issues in the litigation. Tyco has uncovered evidence of

prior public use and prior conception which is material to a court's determination of validity, but which does not fall into the narrow categories the PTO considers on a request for reexamination, namely prior publications and patents. As a result, this court is the only forum for a complete consideration of Tyco's evidence of invalidity. Unless all claims of the patent were cancelled as a result of the reexamination, validity would remain a contested issue in this action, as not all the prior references material to a determination of validity would have been considered by the PTO. Two additional issues would remain: (1) infringement, and (2) whether the case is exceptional such that defendants are entitled to fees and costs. Accordingly, issuance of a stay pending reexamination would not serve Congress' intent of simplifying the issues and reducing the complexity of the trial. *See Enprotech Corp. v. Autotech Corp., 15 U.S.P.Q.2d 1319 (N.D.Ill.1990)* (stay denied where reexamination would not resolve all issues in the litigation). After the reexamination, the parties would be right back in this court.

**\*3** Tyco has a strong interest in concluding this lawsuit without delay. The reexamination procedure can take a year and involve appeals before appellate tribunals of the PTO and the Court of Appeals for the Federal Circuit. Tyco's customers apparently are informed that plaintiff claims infringement; its biggest customer, Toys R Us, is also named as a defendant.

Plaintiff chose this forum, forced Tyco to expend time and money in responding to a motion for preliminary injunction and a motion for sanctions, and now, after the litigation has progressed almost a year and Tyco's discovery efforts are bearing fruit, seeks reexamination of his patent based on prior references known to plaintiff since April of 1992. Plaintiff has not set out a case of hardship should the stay be denied. Under the circumstances, the court concludes that the issuance of a stay would be unfair to defendants. *See Wayne Automation Corp. v. R.A. Pearson Co., 782 F.Supp. 516 (E.D.Wash.1991)* (stay unwarranted because plaintiff instituted action, notified customers of the suit, allowed defendant to conduct extensive discovery).

IT IS THEREFORE ORDERED that plaintiff's motion for a stay of this action pending reexamination of the validity of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                                           Page 3
Not Reported in F.Supp., 1993 WL 625509 (E.D.Cal.), 29 U.S.P.Q.2d 1718
**(Cite as: 1993 WL 625509 (E.D.Cal.))**

his patent by the PTO be, and the same is, hereby DENIED.

> FN1. Plaintiff has requested reexamination of his '327 patent in light of three prior art references: Barbie, Crash Kramer and Iowa DOT. Reply, p. 7 n. 6.

Not Reported in F.Supp., 1993 WL 625509 (E.D.Cal.), 29 U.S.P.Q.2d 1718

**Motions, Pleadings and Filings (Back to top)**

• 2:92cv01666 (Docket) (Oct. 09, 1992)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT D

Westlaw.

Not Reported in F.Supp.2d                                                                                                Page 1
Not Reported in F.Supp.2d, 2001 WL 125340 (D.Del.)
**(Cite as: 2001 WL 125340 (D.Del.))**

C

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
GIOELLO ENTERPRISES LTD., Plaintiff,
v.
MATTEL, INC., Defendant.
**No. C.A. 99-375 GMS.**

Jan. 29, 2001.

Philip A. Royner, Potter, Anderson & Corroon LLP,
Wilmington, DE, James G. Goggin, Verrill & Dana LLP,
Portland, Maine, for Plaintiff, of counsel.

Robert W. Whetzel, Chad M. Shandler, Richards, Layton &
Finger, Wilmington, DE, Peter E. Heuser, David A.
Fanning, Charles H. DeVoe, Kolisch, Hartwell, Dickinson,
McCormick, & Heuser, Portland, Oregon, for Defendants,
of counsel.

*ORDER*

SLEET, J.

**\*1** On June 11, 1999, the plaintiff, Gioello Enterprises Ltd.
("Gioello"), filed a complaint against Mattel, Inc. ("Mattel")
claiming infringement of U.S. Patent 4,546,434 (the " '434
patent"). Mattel answered and filed a counterclaim which
Gioello, in turn, answered. Both parties filed motions which
are currently pending. Mattel filed a request with the U.S.
Patent and Trademark Office (the "PTO") on November 9,
2000 for an reexamination of claims 1-3 of the '434 patent.
The PTO granted Mattel's request on December 21, 2000,
and issued a schedule for statements from the parties
(D.I.104). Currently before the court is Mattel's motion to
stay proceedings pending reexamination (D.I.84). [FN1]
Upon consideration of the parties' submissions, the court
will grant Mattel's motion and stay the proceedings until
further notice.

> **FN1.** Although Mattel filed its motion before the
> PTO granted its request, the court will consider the
> PTO's actions.

In deciding whether to stay the proceedings, the court's
discretion is guided by the following factors: (1) whether a
stay would unduly prejudice Gioello or present a clear

tactical advantage for Mattel, (2) whether a stay will
simplify the issues, and (3) whether discovery is complete
and whether a trial date has been set. See Xerox Corp v.
3Comm Corp., 69 F.Supp.2d 404, 406 (W.D.N.Y.1999)
(citing cases); cf. United Sweetner USA, Inc. v. Nutrasweet
Co., 766 F.Supp. 212, 217 (D.Del.1991) (stating a similar
test).

The PTO's recent decision to reexamine the '434 patent will
simplify the issues in this case and focus the litigation.
Numerous courts have cited a number of advantages of
granting a stay pending PTO reexamination: (1) all prior art
presented to the court at trial will have been first considered
by the PTO with its particular expertise, (2) many discovery
problems relating to the prior art can be alleviated, (3) if
patent is declared invalid, the suit will likely be dismissed,
(4) the outcome of the reexamination may encourage a
settlement without further involvement of the court, (5) the
record of the reexamination would probably be entered at
trial, reducing the complexity and the length of the
litigation, (6) issues, defenses, and evidence will be more
easily limited in pre-trial conferences and (7) the cost will
likely be reduced both for the parties and the court. See, e.g.,
Braintree Laboratories, Inc., Civ. A. No. 96-2459-JWL,
1997 WL 94237, at *9 (D.Kan. Feb. 26, 1997); Hamilton
Indus. v. Midwest Folding Products Mfg., Civ. A. No.
89-C-8689, 1990 WL 37642, at *1- *2 (N.D.Ill. March 20,
1990) (citing cases). All of these potential advantages are
present, to some degree, if the court imposes a stay of the
proceedings pending the outcome of the PTO's
reexamination.

Not staying the proceedings runs the risk of inconsistent
adjudications or issuance of advisory opinions. Presently,
this case is scheduled for trial on April 13, 2001. According
to the PTO's order granting the request for reexamination, it
is possible that submission of statements will not be
complete until April 12, 2001. [FN2] Additionally, the
outstanding motions for summary judgment by Mattel claim
invalidity and non-infringement--two issues the PTO's
decision could render moot. Since the court must decide the
summary judgment motions well in advance of trial, it
would have to address the arguments raised before the PTO.
Such a situation raises resource questions. As one court

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 2
Not Reported in F.Supp.2d, 2001 WL 125340 (D.Del.)
**(Cite as: 2001 WL 125340 (D.Del.))**

noted:

> FN2. The PTO's order of December 21, 2000 states that Gioello has up to two months to submit an optional response. If Gioello submits a response, Mattel has up to two months to submit a reply. Since no extensions will be granted, the court believes April 12, 2001--16 weeks from the date of the order is the maximum time allowable for written submissions to the PTO.

**\*2** ... if the parties continue to litigate the validity of the claims in this Court [sic], and the PTO subsequently finds that some or all of the claims in issue here are invalid, the Court [sic] will have wasted time and the parties will have spend additional funds addressing an invalid claim or claims. Thus, although the denial of a stay can have no effect whatsoever on past events, the grant of a stay will maximize the likelihood that neither the Court [sic] nor the parties expend their assets addressing invalid claims. *Softview Computer Products Corp. and Ergo View Technologies Corp. v. Haworth, Inc.,* No. 97 Civ. 8815 KMW HBP, 2000 WL 1134471, at \*3 (S.D.N.Y. Aug. 10, 2000). Since the PTO cannot stay the reexamination once a request has been granted, the court's issuance of a stay is the only way to avoid the potential for conflict. *See Hamilton,* 1990 WL 37642, at \*2 (citing *Ethicon, Inc. v. Quigg,* 849 F.2d 1422 (Fed.Cir.1988).

The court finds the prejudice to Gioello is slight, if any. Gioello claims it is prejudiced both by Mattel's dilatory tactics in not requesting an examination earlier and by it spending money on discovery that is nearly complete. Leaving aside timing arguments, the court finds no merit in this position. First, Gioello is not selling or actively licensing goods or services related to the '434 patent; money damages is an adequate remedy for any delay in redress. Second, both Mattel and Gioello have spent money on discovery. Third, Mattel is entitled by law to request a reexamination. *See* 35 U.S.C. §§ 302-307; 37 C.F.R. § 1.525. The fact that the request was granted means the PTO deems the '434 patent worthy of reexamination. It is not for the court to second guess the PTO's decision to reassess the prior art.

Given the possibility that the PTO's reexamination could materially affect the issues in this case, the court will deny Mattel's motions for summary judgment and Gioello's motion to strike without prejudice. [FN3] Although the could will hold a status conference in late April or early May, 2001, the parties should advise the court of any earlier developments in the PTO's reexamination.

> FN3. Upon the entry of a new scheduling order, the parties are free to re-file their motions.

Therefore, IT IS HEREBY ORDERED that:
1. Mattel's motion to stay the proceeding pending reexamination (D.I.84) is GRANTED. The proceedings are stayed from the date of this order until further notice.
2. Mattel's motion for summary judgment on invalidity (D.I.87) is DENIED without prejudice.
3. Mattel's motion for summary judgement on noninfringement (D.I.89) is DENIED without prejudice.
4. Gioello's motion to strike (D.I.91) is DENIED without prejudice.
5. The parties shall advise the court of any decision that results from the PTO's reexamination of the '434 patent.

Not Reported in F.Supp.2d, 2001 WL 125340 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT E

Not Reported in F.Supp.2d                                                          Page 1
Not Reported in F.Supp.2d, 2001 WL 34368283 (D.Del.)
**(Cite as: 2001 WL 34368283 (D.Del.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
COGNEX CORPORATION, Plaintiff,
v.
NATIONAL INSTRUMENTS CORPORATION,
Defendant.
**No. Civ.A. 00-442-JJF.**

June 29, 2001.

Neal C. Belgam, and Dale R. Dube, of Blank Rome Comisky & McCauley LLP, Wilmington, Delaware, George M. Sirilla, G. Paul Edgell, and William P. Atkins, of Pillsbury Winthrop LLP, Washington, D.C., for Plaintiff, of counsel.

William J. Marsden, Jr., and John T. Meli, Jr., of Fish & Richardson P.C., Wilmington, Delaware, Frank E. Scherkenbach, David M. Barkan, and John V. Picone III, of Fish & Richardson P.C., Menlo Park, California, for Defendant, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

**\*1** Pending before the Court in this patent infringement action is Cognex Corporation's Motion To Stay Or, In The Alternative, For An Extension Of The Deadlines In This Case (D.I.84). By its Motion, Plaintiff, Cognex Corporation ("Cognex"), requests a stay or, in the alternative, a three month delay in the proceedings in this case, because it has requested a reexamination of the patent in suit by the United States Patent and Trademark Office ("PTO"). By letter dated May 29, 2001, Cognex advised the Court that the PTO granted Cognex's request for reexamination of United States Patent No. 5,481,712 (the " '712 Patent"). Cognex contends that reexamination of the '712 Patent will narrow and/or resolve the issues in this case. Specifically, Cognex contends that if the '712 Patent is declared unpatentable, it is likely that the patent litigation will be dismissed. On the other hand, if the PTO finds the '712 Patent patentable over

the prior art, Cognex contends that the PTO decision might encourage the parties to settle this action.

Defendant, National Instruments Corporation ("National Instruments"), opposes any stay in this case. Specifically, National Instruments contends that a stay would cause National Instruments severe prejudice because: (1) the litigation schedule and trial date would be delayed causing National Instruments additional expense; (2) Cognex would be able to continue to hold the specter of litigation over National Instruments and its customers; and (3) Cognex has already forced National Instruments to spend over a million dollars defending itself in this action before requesting the stay, despite the fact that Cognex had the materials necessary to seek reexamination earlier.

After reviewing the parties' positions with respect to the instant motion and the applicable law, the Court concludes that a stay and/or extension is not warranted in this case. Accordingly, for the reasons discussed, the Court will deny Cognex's Motion To Stay Or, In The Alternative, For An Extension Of The Deadlines In This Case.

DISCUSSION

The decision to grant or deny a stay is within the court's broad range of discretionary powers. *Dentsply International, Inc. v. Kerr Manufacturing Co.,* 734 F.Supp. 656, 658 (D.Del.1990) (citations omitted). In determining whether a stay is appropriate, the court should "weigh the competing interests of the parties and attempt to maintain an even balance." *Id.* In weighing the interests involved, courts are generally guided by such factors as (1) whether a stay would unduly prejudice or present a clear tactical advantage to the non-movant; (2) whether a stay will simplify the issues raised by the parties; and (3) whether discovery is complete and a trial date has been set. *Gioello Enterprises Ltd. v. Mattel, Inc.,* 2001 WL 125340 (D.Del. Jan.29, 2001); *United Sweetener USA, Inc. v. Nutrasweet Co.,* 766 F.Supp. 212, 217 (D.Del.1991). In balancing these factors, courts must be particularly mindful of the consequences of the stay on other parties. *Dentsply International,* 734 F.Supp. at 658 (recognizing that Court must consider whether "there is 'even a fair possibility' that the stay would work damage on another party") (citations omitted). Where a stay will forestall the trial date agreed upon by the parties, this Court

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                Page 2
Not Reported in F.Supp.2d, 2001 WL 34368283 (D.Del.)
**(Cite as: 2001 WL 34368283 (D.Del.))**

has required the party requesting the stay to "make a showing of 'a clear case of hardship or inequity' before the Court can enter a stay order." *Id.* (citing *Gold v. Johns-Manville Sales Corp.,* 723 F.2d 1068, 1076 (3d Cir.1983)).

**\*2** In this case, discovery was scheduled to close on May 4, 2001, less than three weeks before Cognex filed the instant Motion To Stay, and trial is scheduled for October 23, 2001. [FN1] Accordingly, Cognex must demonstrate a clear case of hardship or inequity before the Court will enter an order staying this action.

> FN1. Although discovery has since been extended until July 2001 by stipulation between the parties (D.I.106), the trial date in this case has not been changed.

After reviewing the parties' arguments, the Court concludes that Cognex cannot demonstrate a clear case of hardship or inequity, and that National Instruments would be prejudiced if the Court were to grant a stay in this case. Cognex primarily contends that reexamination will simplify the issues in this case such that the litigation may be settled or dismissed and the parties' expenses significantly reduced. However, as National Instruments points out, Cognex's complaint alleges a variety of claims which are not linked to the patent infringement claim, including claims of copyright and trademark infringement and unfair competition, all of which will require a trial.

In addition, Cognex contends that the reexamination may result in changed claims, which would cause this action to be litigated twice, wasting the Court's and the parties' resources. However, the Court is unpersuaded by Cognex's contention. The trial in this case is scheduled for October 2001, and the PTO granted Cognex's request for reexamination in May 2001. Although Cognex disputes the figures provided by National Instruments concerning the pendency of applications in the PTO because National Instruments relies on original applications rather than reexamination applications, even Cognex's figures suggest that the median reexamination time is 16 months. Thus, given the current time tables for action in the PTO, the Court believes that the trial in this case will likely be

completed prior to any action by the PTO. (D.I. 87 at Exh. G; D.I. 94, Exh. D).

Further, any hardship incurred by Cognex as a result of its request for reexamination is, in part, a result of Cognex's own making. National Instruments contends and Cognex has not disputed, that Cognex has had at least some of the documents it presented to the PTO in its request for reexamination for quite some time. National Instruments identified specific prior art references in its Answer to the Complaint in June 2000, yet Cognex waited until six months before the scheduled trial date in this case to seek reexamination of the '712 Patent. [FN2] Accordingly, the Court cannot conclude that Cognex has demonstrated a clear case of hardship or inequity justifying a stay in this case. *Dentsply,* 734 F.Supp. at 659 ("The Court will not elevate [a party's] failure to address its concerns in a timely fashion to an example of hardship warranting a stay."); *see also Remington Arms Company, Inc. v. Modern Muzzleloading, Inc., 1998 WL 1037920 (D.N.C. Dec.17, 1998)* (denying stay where trial date set and defendant's delay in requesting reexamination with PTO was unjustified given that defendant knew of the prior art forming its request for reexamination well prior to its reexamination request).

> FN2. Although Cognex contends that National Instruments did not produce many of these documents until much later, National Instruments also contends and Cognex has not disputed, that some of the documents Cognex presented to the PTO were in Cognex's possession as early as 1990, well before the inception of this litigation. Thus, it appears to the Court that Cognex still could have filed its request for reexamination at an earlier date.

**\*3** Moreover, given the late stage of Cognex's request, the Court finds that any delay in the trial date scheduled for this case would severely prejudice National Instruments. The parties have conducted extensive discovery in Delaware, California, Texas, Washington, D.C. and Massachusetts based on a schedule coinciding with the October 23 trial date. National Instruments has scheduled its experts and made trial support accommodations in Delaware based upon the October 23 trial date. Any deviation from the October trial date at this late stage in the litigation would necessarily

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                  Page 3
Not Reported in F.Supp.2d, 2001 WL 34368283 (D.Del.)
**(Cite as: 2001 WL 34368283 (D.Del.))**

prejudice National Instruments. *See Wayne Automation Corp. v. R.A. Pearson Co., 782 F.Supp. 516 (E.D.Wash.1991)* (denying plaintiff's motion for stay where parties conducted extensive discovery and trial date was set). Accordingly the Court will deny Cognex's request for a stay.

As for Cognex's request for alternative relief in the form of a three month extension, the Court notes that the discovery deadlines in this case have been extended by stipulation of the parties. This scheduling extension should address Cognex's time concerns without necessitating a change in the October 2001 trial date. Accordingly, at this time, the Court will deny Cognex's request for a three month extension.

CONCLUSION

For the reasons discussed, Cognex Corporation's Motion To Stay Or, In The Alternative, For An Extension Of The Deadlines In This Case will be denied.

An appropriate Order will be entered.

Not Reported in F.Supp.2d, 2001 WL 34368283 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:00CV00442 (Docket) (May. 02, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT F

Slip Copy                                                                    Page 1

Slip Copy, 2005 WL 2397041 (E.D.Cal.)
**(Cite as: 2005 WL 2397041 (E.D.Cal.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. California.
Vinoo JAIN, Plaintiff,
v.
TRIMAS CORPORATION, Defendant.
**No. Civ.S-04-0889 FCDPAN.**

Sept. 27, 2005.

Theodore J. Bielen, Jr., Bielen Lampe and Thoeming, Concord, CA, for Plaintiff.

David B. Cupar, McDonald Hopkins Company LPA, Cleveland, OH, Illya Hooshang Broomand, Mark Saul Posard, Gordon and Rees LLP, Sacramento, CA, for Defendant.

*MEMORANDUM AND ORDER*

DAMRELL, J.

**\*1** This matter is before the court on plaintiff's motion to stay proceedings pending the outcome of a reexamination proceeding in the United States Patent and Trademark Office. For the reasons set forth below, [FN1] plaintiff's motion is DENIED.

> FN1. Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78- 230(h).

BACKGROUND

On May 5, 2004, plaintiff Vinoo Jain ("Jain") sued defendant TriMas Corporation ("TriMas") alleging patent infringement of Patent. No. 6,390,343 ("the '343 patent"). (Compl., filed May 5, 2004, ¶ 1). On July 22, 2004, TriMas filed an answer and counterclaim for a declaratory judgment declaring '343 invalid, unenforceable, and not infringed by TriMas. (Countercl., filed July 22, 2004, ¶ 1).

On August 9, 2005, Jain filed a Request for Reexamination of '343 with the United States Patent Trademark Office ("USPTO") to reconsider the claims issued with the '343

patent and to determine the true scope of the '343 patent. (Mot. to Stay, filed August 12, 2005, ¶¶ 3, 7). Subsequently, on August 12, 2005, Jain filed with this court a Motion to Stay Proceedings pending the outcome of a reexamination in the USPTO. Jain alleges that a prior art, TriMas' Hitch-Haul carrier, "may read on one or more of the claims of the ['343] patent and may invalidate such claims." (*Id.* ¶ 6).

TriMas disclosed the potentially invalidating prior reference to Jain in a letter dated July 19, 2004, before filing its answer. (Def.'s Opp'n to Mot. to Stay ("Opp'n"), filed Sept. 9, 2005, Ex. 1). Jain filed for reexamination of his patent with the USPTO on August 9, 2005, more than a year after he received TriMas' Letter. (*Id.*).

On September 7, 2005, TriMas filed a motion for summary judgment asking the court to adjudicate the issue of infringement and grant its crossclaim for a declaratory judgment of non-infringement of the '343 patent. (Mot. for Summ. J., filed Sept. 7, 2005, at 2). TriMas claims that the motion for summary judgment would dispose of Jain's only claim of patent infringement and render Jain's motion to stay moot. (Opp'n at 1).

STANDARD

The district court has the inherent authority to order a stay pending the outcome of reexamination by the USPTO. *Ethicon v. Quigg*, 849 F.2d 1422, 1426 (Fed.Cir.1988). The court must weigh the competing interests presented by a specific set of facts. *Gladish v. Tyco Toys*, 29 U.S.P.Q.2d 1718, 1719 (E.D.Cal.1993). In weighing the interests of the parties, the court may consider: 1) whether the non-moving party will suffer prejudice; 2) whether there is a clear tactical disadvantage to the non-moving party; 3) the stage in litigation, 4) whether discovery is or will almost be completed; and 5) whether a trial date has been set. *ASCII Corp. v. STD Entm't USA, Inc.*, 844 F.Supp. 1378, 1380 (N.D.Cal.1994) (citing *GPAC, Inc. v. DWW Enter., Inc.*, 144 F.R.D. 60, 66 (D.N.J.1992)).

"There is a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings." *ASCII Corp.*, 844 F.Supp. at 1381. Reexamination by the USPTO may further the goal of

Slip Copy                                                                                                    Page 2
Slip Copy, 2005 WL 2397041 (E.D.Cal.)
**(Cite as: 2005 WL 2397041 (E.D.Cal.))**

judicial economy by eliminating the need for discovery and trial of certain issues, and by helping the court focus on pertinent issues. Methode Elecs., Inc. v. Infineon Techs. Corp., 2000 U.S. Dist. LEXIS 20689, at *6-7 (N.D.Cal., Aug. 7, 2000). However, courts have denied stays where the request for reexamination came late in the litigation proceedings, after discovery and trial preparation. *Gladish v. Tyco Toys, Inc.,* 29 U.S.P.Q.2d at 1719; *see Freeman v. Minnesota Mining & Mfg. Co.,* 661 F.Supp. 886 (D.Del.1987); *Toro Co. v. L.R. Nelson Corp.,* 223 U.S.P.Q.2d 636 (C.D.Ill.1984).

ANALYSIS

1. Whether the non-moving party will suffer prejudice

**\*2** Defendant will suffer prejudice as a result of an order to stay proceedings because it has continued to prosecute this case for over a year, including filing a dispositive motion for summary judgment. Moreover, defendant would be forced to await resolution of this matter until the USPTO conducts its reexamination procedure. *See Toro Co. v. L.R. Nelson Corp.,* 223 U.S.P.Q.2d 636 (C.D.Ill.1984) (denying patentee's motion for stay where suit had been pending for three and one-half years and defendant had filed motion for summary judgment on invalidity).

Plaintiff filed his action for patent infringement on May 5, 2004. On July 19, 2005, defendant notified plaintiff of invalidating prior art references. (Opp'n, Ex. 1). Plaintiff did not respond, and defendant continued to prosecute this action, conduct discovery, and file a motion for summary judgment. Plaintiff, however, failed to request any discovery from defendant during the eight-month discovery period. (Opp'n at 3). Rather, on August 9, 2005, more than a year after being notified of the invalidating prior art references, plaintiff brought this motion to stay the proceedings, alleging that the prior art disclosed by defendant may invalidate one or more of the claims of his patent. (Mot. to Stay at 2).

Reexamination by the USPTO will further prolong this matter for defendant. The reexamination procedure can take over a year and involve appeals before appellate tribunals of the USPTO and Court of Appeals for the Federal Circuit. *Gladish,* 29 U.S.P.Q.2d at 1720. Furthermore, defendant has

filed a motion for summary judgment that it alleges will be dispositive of this matter. *See Toro Co. v. L.R. Nelson Corp.,* 223 U.S.P.Q.2d 636. Subjecting defendant to additional litigation efforts and expenses while plaintiff seeks resolution of issues that were brought to his attention more than a year ago would be prejudicial. *Gladish,* 29 U.S.P.Q.2d at 1720.

2. Whether there is a clear tactical disadvantage to TriMas

If this court grants plaintiff's motion to stay, defendant will suffer a clear tactical disadvantage because plaintiff would be allowed to forestall a potential adverse decision on defendant's motion for summary judgment. See Toro Co. v. L.R. Nelson Corp., 223 U.S.P.Q.2d at 637. Plaintiff has failed to diligently prosecute his claim. Defendant thus alleges that plaintiff, "faced with no claim of infringement, an invalid patent, and no evidence to rebut non-infringement or validity," filed this motion as a dilatory tactic employed to reach a settlement agreement. The court agrees. *See Freeman v. Minnesota Mining & Mfg. Co.,* 661 F.Supp. 886 (stating that stay would be inappropriate where discovery was concluded and grant of stay would allow the alleged infringer to use reexamination purely as dilatory tactic).

Defendant's situation mirrors that of the defendants in *Gladish v. Tyco Toys, Inc.,* 29 U.S.P.Q.2d 1718 (E.D.Cal.1993). In *Gladish,* the defendants objected to the plaintiff's motion to stay because the plaintiff showed a lack of good faith in requesting reexamination six months after he was put on notice of the prior art that was the basis of his request for reexamination. Id. at 1719. The court denied the motion to stay, stating that the defendants

> **\*3** ha[d] a strong interest in concluding [the] lawsuit without delay.... Plaintiff chose [the] forum, forced [defendant] to expend time and money ... and now, after the litigation has progressed almost a year and [defendant's] discovery efforts are bearing fruit, seeks reexamination of his patent based on prior references known ... since April of 1992.

*Id.* at 1720. The court concluded that the plaintiff had not presented any evidence of hardship such that the stay should be granted. *Id.*

Here, plaintiff attempts to engage in dilatory tactics. As in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 3
Slip Copy, 2005 WL 2397041 (E.D.Cal.)
**(Cite as: 2005 WL 2397041 (E.D.Cal.))**

*Gladish,* plaintiff chose the forum, forced defendant to expend time and money, and now, after the litigation has progressed for over a year, seeks reexamination of his patent based on prior references known since July of 2004. *Gladish,* 29 U.S.P.Q.2d at 1720. Furthermore, defendant "has a strong interest in concluding [this] lawsuit without delay." *See id.* Thus, allowing plaintiff to engineer the course of this lawsuit when he has failed to diligently prosecute his claim would put defendant at a clear tactical disadvantage.

3. The stage in litigation, completion of discovery, and set trial date

Because this case is no longer in its incipient stages, the scales tip heavily in favor of denying plaintiff's motion to stay. *See Wayne Auto. Corp. v. Pearson Co.,* 782 F.Supp. 516 (E.D.Wash.1991) (denying plaintiff's motion to stay where discovery was almost completed and a trial date had been set). Discovery ended on June 13, 2005. Moreover, on October 25, 2004, this court set a jury trial date of December 5, 2005. Plaintiff has presented no evidence of hardship or inequity in being required to go forward with the suit as previously agreed in the status conference. *See id.* Due to plaintiff's unjustified delay in bringing this motion, this matter is "too far along the road to justify halting the journey." *Id.*

CONCLUSION

For the foregoing reasons, plaintiff's motion to stay proceedings pending a patent reexamination in the United States Patent and Trademark Office is DENIED.

IT IS SO ORDERED.

Slip Copy, 2005 WL 2397041 (E.D.Cal.)

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 2657234 (Trial Motion, Memorandum and Affidavit) Motion for Summary Judgment of Non-Infringement and Memorandum in Support (Sep. 07, 2005)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT G

UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
P.O. BOX 1450
ALEXANDRIA, VA 22313-1450
www.uspto.go

### _Ex Parte_ Reexamination Filing Data  - September 30, 2005

1.  Total requests filed since start of ex parte reexam on 07/01/81 .......................................7743

    a.  By patent owner                                   3221   42%
    b.  By other member of public                  4357   56%
    c.  By order of Commissioner                  165    2%

2.  Number of filings by discipline

    a.  Chemical Operation                            2420   31%
    b.  Electrical Operation                        2457   32%
    c.  Mechanical Operation                     2866   37%

3.  Annual Ex Parte Reexam Filings

| Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. |
|---|---|---|---|---|---|---|---|
| 1981 | 78 (3 mos.) | 1989 | 243 | 1997 | 376 | 2005 | 524 |
| 1982 | 187 | 1990 | 297 | 1998 | 350 | | |
| 1983 | 186 | 1991 | 307 | 1999 | 385 | | |
| 1984 | 189 | 1992 | 392 | 2000 | 318 | | |
| 1985 | 230 | 1993 | 359 | 2001 | 296 | | |
| 1986 | 232 | 1994 | 379 | 2002 | 272 | | |
| 1987 | 240 | 1995 | 392 | 2003 | 392 | | |
| 1988 | 268 | 1996 | 418 | 2004 | 441 | | |

4.  Number known to be in litigation................................................................1705   22%

5.  Determinations on requests ........................................................................................7510

    a.  No. granted.......................................................................... 6846 ................. 91%

        (1)  By examiner                            6740
        (2)  By Director (on petition)             106

    b.  No. denied ........................................................................... 664 ................. 9%

        (1)  By examiner                            629
        (2)  Order vacated                     35

6.  Total examiner denials (includes denials reversed by Director).....................................735

    a.  Patent owner requester                                    419        57%
    b.  Third party requester                                     316        43%


7.  Overall reexamination pendency  (Filing date to certificate issue date)

    a.  Average pendency                                      21.9  (mos.)
    b.  Median pendency                                       17.2  (mos.)


8.  Reexam certificate claim analysis:

| | Owner Requester | 3rd Party Requester | Comm'r Initiated | Overall |
|---|---|---|---|---|
| a.  All claims confirmed | 23% | 29% | 13% | 26% |
| b.  All claims cancelled | 7% | 12% | 19% | 10% |
| c.  Claims changes | 70% | 59% | 68% | 64% |


9.  Total ex parte reexamination certificates issued (1981 - present)....................................5209

    a.  Certificates with all claims confirmed               1363       26%
    b.  Certificates with all claims canceled                 526       10%
    c.  Certificates with claims changes                     3320       64%


10.  Reexam claim analysis - requester is patent owner or 3rd party; or Comm'r initiated.

    a.  Certificates _ PATENT OWNER REQUESTER....................................................2272

        (1)  All claims confirmed                             527       23%
        (2)  All claims canceled                              164        7%
        (3)  Claim changes                                   1581       70%

    b.  Certificates _ 3rd PARTY REQUESTER.............................................................2803

        (1)  All claims confirmed                             819       29%
        (2)  All claims canceled                              332       12%
        (3)  Claim changes                                   1652       59%

    c.  Certificates _ COMM'R INITIATED REEXAM .....................................................134

        (1)  All claims confirmed                              17       13%
        (2)  All claims canceled                               26       19%
        (3)  Claim changes                                     91       68%

 UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
P.O. BOX 1450
ALEXANDRIA, VA 22313-1450
www.uspto.gov

_Inter Partes_ Reexamination Filing Data  - September 30, 2005

1.  Total requests filed since start of _inter partes_ reexam on 11/29/99 ................................. 112

2.  Number of filings by discipline

    a.  Chemical Operation          29    26%
    b.  Electrical Operation         34    30%
    c.  Mechanical Operation     49    44%

3.  Annual Reexam Filings

| Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. |
|---|---|---|---|---|---|
| 2000 | 0 | 2002 | 4 | 2004 | 27 |
| 2001 | 1 | 2003 | 21 | 2005 | 59 |

4.  Number known to be in litigation.............................................29...............26%

5.  Decisions on requests ............................................................................. 104

    a.  No. granted.........................................................99................95%

        (1)  By examiner                   99
        (2)  By Director (on petition)      0

    b.  No. not granted................................................5.,.................. 5%

        (1)  By examiner                   3
        (2)  Reexam vacated          2

6.  Overall reexamination pendency  (Filing date to certificate issue date)

    a.  Average pendency                  29.5 (mos.)
    b.  Median pendency                   31.2 (mos.)

7.  Total inter partes reexamination certificates issued (1999 - present)......................................3

    a.  Certificates with all claims confirmed           0        0%
    b.  Certificates with all claims canceled          3        100%
    c.  Certificates with claims changes             0        0%